## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| **Joleen K. Youngers**, as the Personal Representative of the Wrongful Death Estate of Roxsana Hernandez,<br><br>           Plaintiff,<br><br>vs.<br><br>**Management & Training Corporation,**<br>**LaSalle Corrections Transport LLC,**<br>**LaSalle Corrections West LLC,**<br>**LaSalle Management Company LLC,**<br>**Global Precision Systems LLC,**<br>**TransCor America LLC,**<br>**CoreCivic, Inc.,**<br><br>           Defendants. | NO. 20-cv-00465-SCY-JHR |

### DEFENDANTS TRANSCOR'S AND CORECIVIC'S MOTION FOR PARTIAL DISMISSAL

Defendants TransCor America, LLC ("TransCor") and CoreCivic, Inc. ("CoreCivic"), through counsel, move to dismiss Counts One, Two, Fourteen, and Sixteen as against them for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). TransCor and CoreCivic are filing an Answer to the remaining claims against them concurrently with this Motion to Dismiss.

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.      Factual Background**

Plaintiff, Joleen K. Youngers ("Plaintiff"), is the Personal Representative of the Wrongful Death Estate of Roxsana Hernandez ("Hernandez"), a transgender immigration detainee who passed away on May 25, 2018 at Lovelace Medical Center in Albuquerque,

3781373

1

New Mexico while in the physical custody of CoreCivic. (Doc. 9, ¶¶ 1, 118, 137, 140.) As relevant to this Motion, Plaintiff alleges the following as to TransCor and CoreCivic:

As to TransCor, Plaintiff alleges that TransCor contracted with either CoreCivic or ICE to transport immigration detainees like Hernandez to and from CoreCivic's Cibola County Correctional Center ("CCCC"), for which services it received federal funds. (Id. at ¶¶ 40–42.) Pursuant to these contracts, TransCor transported Hernandez from Albuquerque to CCCC on May 16, 2018, the last leg in a four-day journey that started at the San Ysidro Port-of-Entry on May 14, 2018. (Id. at ¶¶ 41, 47–117.)[1]

TransCor picked up Hernandez and 28 other transgender immigration detainees at the ICE Criminal Alien Program facility in Albuquerque on May 16, 2018, and arrived at CCCC at approximately 8:13 p.m. local time that same day. (Id. at ¶ 111.) Plaintiff alleges that Hernandez was "visibly and gravely ill and suffering" and unable to eat during the trip, and required immediate medical care. (Id. at ¶¶ 112–114.) Plaintiff further alleges that Hernandez remained in TransCor's custody from 8:13 p.m. until 1:15 a.m. on May 17, 2018, when she was booked into CCCC, and that she continued to demonstrate "obvious, serious, and emergent medical needs" during this time, but that TransCor failed to provide adequate medical care. (Id. at ¶¶ 115–116.)

As to CoreCivic, Plaintiff alleges that CoreCivic contracted with ICE to "manage" CCCC, for which services it received federal funds. (Id. at ¶¶ 44, 46.) Pursuant to this contract, CoreCivic maintained custody over Hernandez from May 16, 2018, when she arrived at CCCC, until May 25, 2018, when she passed away at Lovelace Medical Center. (Id. at ¶ 45.)

---

[1] Hernandez spent approximately five days in a "CBP lockup" in San Ysidro, California from May 9 to May 14, 2018 before beginning the trip to CCCC. (Doc. 9 at ¶¶ 51, 61.)

3781373

CoreCivic booked Hernandez into CCCC at approximately 1:15 a.m. on May 17, 2018. (Id. at ¶ 118.) Shortly thereafter, CoreCivic placed Hernandez and other detainees in a medical waiting room to spend the night, where Hernandez slept on the floor, allegedly unable to get up except to get a drink and use the bathroom at approximately 4:00 a.m., "beginning to lose her mental capacity." (Id. at ¶¶ 119–122.)

At approximately 7:25 a.m., CoreCivic "presented" Hernandez to a medical provider for an intake screening, after which she was given electrolytes and Ensure. (Id. at ¶¶ 124–125.) Hernandez was noted to have a fever of 102 degrees at approximately 9:00 a.m. and was transferred to a medical isolation room. (Id. at ¶¶ 126–128.) At approximately 10:00 a.m., the onsite physician examined Hernandez, who was noted to weigh 89 pounds at the time. (Id. at ¶¶ 129–130.) The physician diagnosed Hernandez with dehydration, starvation, extreme weight loss, muscle wasting, untreated HIV, fever, and cough, among other physical conditions, and ordered her to be transported immediately to the Cibola General Hospital Emergency Room. (Id. at ¶¶ 131–133.) CoreCivic transported Hernandez to the hospital at approximately 11:08 a.m.; she arrived at the hospital at approximately 11:44 a.m. (Id. at ¶¶ 134–135.) Hernandez was airlifted from Cibola General Hospital to Lovelace Medical Center at approximately 9:38 p.m. that night due to her low blood pressure, low bodyweight, and septic shock. (Id. at ¶¶ 137–138.) Hernandez passed away on May 25, 2018. (Id. at ¶ 140.)

Plaintiff claims that CoreCivic delayed getting Hernandez proper medical care "for over 10 hours" despite its knowledge of her "obvious, serious, and emergent medical needs." (Id. at ¶ 149.) Plaintiff concedes, however, that Hernandez was already "way beyond" physicians' ability to provide her with "meaningful care" by the time she arrived at CCCC. (Id. at ¶ 142.)

## II.     Legal Argument

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should … be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (citations and internal quotations omitted). Thus, a motion to dismiss for failure to state a claim must be granted when a plaintiff has not "nudged his claims across the line from conceivable to plausible." *Id*. at 569.

The allegations in Counts One, Two, Fourteen, and Sixteen of the First Amended Complaint fail to meet this standard as to TransCor and CoreCivic. As such, these claims should be dismissed as to these Defendants.

### A.     Plaintiff Fails to State a Claim for Violation of the Rehabilitation Act (Count One).

Section 504 of the Rehabilitation Act provides: "No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity *receiving Federal financial assistance* or under any program or

activity conducted by any Executive agency...." 29 U.S.C. § 794(a) (emphasis added). "The Department of Health, Education and Welfare, the agency charged by the Executive with coordinating the issuance of regulations under the Rehabilitation Act, *see* Exec. Order No. 11914, 41 Fed. Reg. 17871 (1976), has interpreted the term 'Federal financial assistance' not to include government procurement contracts—i.e., contracts in which goods or services are sold or purchased by the government at fair market value." *Jacobson v. Delta Airlines, Inc.*, 742 F.2d 1202, 1209–10 (9th Cir. 1984) (citing 45 C.F.R. § 84.3(h) (1983)). Moreover, "[c]ourts interpreting [section] 504 of the Rehabilitation Act have consistently construed 'Federal financial assistance' to mean the federal government's provision of a subsidy to an entity, not the federal government's compensation of an entity for services provided." *Abdus-Sabur v. Hope Village, Inc.*, 221 F. Supp. 3d 3, 9–11 (D. D.C. 2016) (quoting *Lee v. Corr. Corp. of Am.*, 61 F. Supp. 3d 139, 144 (D.D.C. 2014)); *Shotz v. Am. Airlines, Inc.*, 420 F.3d 1332, 1335 (11th Cir. 2005) ("Generally, 'to determine the applicability of [the Rehabilitation Act], [a court] must determine whether the government intended to give [the defendant] a subsidy,' as opposed to compensation.") (quoting *DeVargas v. Mason & Hanger–Silas Mason Co.*, 911 F.2d 1377, 1382 (10th Cir. 1990), *cert. denied*, 498 U.S. 1074 (1991)); *Moreno v. Consolidated Rail Corp.*, 99 F.3d 782, 787–88 (6th Cir. 1996) (finding defendant received federal financial assistance for purposes of Rehabilitation Act liability after finding that defendant's receipt of federal money was subsidized assistance rather than a "*quid pro quo* for its services as a contractor"); *Nolley v. Cty. of Erie*, 776 F. Supp. 715, 742–43 (W.D.N.Y. 1991) (collecting cases for the proposition that "several courts have held that an entity receives financial assistance when it receives a subsidy") (internal citations and quotations omitted); *Bachman v. Am. Soc. Of Clinical Pathologists*, 577 F. Supp. 1257, 1264 (D.N.J. 1983) (holding the term "assistance" connotes a transfer of

3781373

5

government funds by way of subsidy); *Cook v. Budget Rent-A-Car Corp.*, 502 F. Supp. 494, 497 n.6 (S.D.N.Y. 1980) (concluding that contracts in which goods or services are purchased by the government for its own account at fair market value are exempted from definition of "federal financial assistance").

Here, TransCor and CoreCivic do not dispute that they receive federal funds to transport and house immigration detainees at CCCC. Nor, it appears, does Plaintiff, who concedes that both entities "receive[ ] federal funds for [their] services pursuant to [their] contracts with ICE." (Doc. 9 at ¶¶ 41, 46.) But contractual arrangements, such as those between ICE, CoreCivic, and TransCor, by which TransCor and CoreCivic transport and/or house immigration detainees at CCCC in exchange for agreed-upon rates, are not subsidies. *See Jacobson*, 742 F.2d at 1210 ("[I]n determining which programs are subject to the civil rights laws courts should focus not on market value but on the intention of the government. Courts should determine whether the government intended to provide assistance or merely to compensate."); *see also Lee*, 61 F. Supp. 3d at 144 (finding that CoreCivic's receipt of federal funding through its contracts with the Federal Bureau of Prisons and the United States Marshals Service to house inmates at the Correctional Treatment Facility did not constitute "Federal financial assistance" within the meaning of the Rehabilitation Act).

Because Plaintiff has not alleged facts that plausibly demonstrate that TransCor and CoreCivic receive federal financial assistance with regard to CCCC, her claims for violation of the Rehabilitation Act against these Defendants fail as a matter of law. *See Nelson v. Miller*, 170 F.3d 641, 653. n.8 (6th Cir. 1999) (affirming dismissal of the plaintiffs' Rehabilitation Act claim in part because they did not sufficiently plead the "financial assistance jurisdictional prerequisite contained therein"); *see also Logan v. Corr. Corp. of Am.*, No. 1:12–cv–0003, 2012 WL 2160276, at *7 (M.D. Tenn. June 12,

2012) (dismissing the plaintiff's Rehabilitation Act claim where the plaintiff failed to allege that the defendant received federal financial assistance); *Williams v. Smith*, 1:10CV501, 2010 WL 2816714, at *2 (M.D.N.C. July 15, 2010) ("Because the Complaint contains no allegations regarding receipt of federal funds by that state agency, Plaintiff's Rehabilitation Act claim against Defendant Smith in his official capacity fails as a matter of law.") (citation omitted); *Paulone v. City of Frederick*, 718 F. Supp. 2d 626, 634 (D. Md. 2010) (dismissing the plaintiff's Rehabilitation Act claim where she "failed to allege that any program or activity implicated by the complaint received federal funds"). Unless Plaintiff can articulate a good-faith basis to allege otherwise, Count One should be dismissed as to both TransCor and CoreCivic with prejudice. *See Phillips v. Tiona*, No. 10-CV-00334-PAB-KMT, 2011 WL 2198493, at *2 (D. Colo. June 7, 2011) (dismissing the plaintiff's Rehabilitation Act claim with prejudice for failing to allege the defendant received federal funds for a program or activity and for also failing to argue that the deficiency could be cured by amendment).

  **B.**  **Plaintiff Fails to State a Claim for Negligence Per Se (Count Two).**

To state a claim for negligence per se against TransCor and CoreCivic, Plaintiff must allege: (1) the existence of a statute or regulation that prescribes certain actions or defines a standard of conduct, either explicitly or implicitly; (2) that these Defendants violated the statute or regulation; (3) that Hernandez was in the class of persons sought to be protected by the statute or regulation; and (4) that the harm or injury to Hernandez was generally of the type the legislature sought to prevent by passing the statute or regulation. *Cobb v. Gammon*, 2017-NMCA-022, ¶ 43, 389 P.3d 1058. "Negligence per se exists only where a statutory or regulatory provision imposes an absolute duty to comply with a specific requirement." *Id*. "[T]he statute or regulation at issue must define with specificity what is reasonable in a particular circumstance, such that the jury does not have to

undertake that inquiry." *Thompson v. Potter*, 2012-NMCA-014, ¶ 32, 268 P.3d 57 (internal citation and quotation omitted); *See also Parker v. E.I. DuPont de Nemours & Co., Inc.*, 1995-NMCA-086, ¶ 40, 909 P.2d 1 ("In order to hold a defendant liable under a claim of negligence per se, the defendant must be shown to have violated a specific statute."). The duty specified by the statute or regulation must be "distinguishable from the ordinary standard of care." *Cobb*, 2017-NMCA-022 at ¶ 43.

Negligence per se is not applicable to "an entity's alleged failure to comply with internal rules or policies." *See Valdez-Barela v. Corr. Corp. of Am. and Corizon Health, Inc.*, No. A-1-CA-37384, 2019 WL 3766391, at *9 (N.M. App. July 16, 2019). Similarly, violation of the terms of a contract does not establish negligence per se. *See Grassie v. Roswell Hosp. Corp.*, 2011-NMCA-024, ¶ 77, 258 P.3d 1075 ("We doubt that the Agreement by itself can or should be used to set the definitive standard of conduct against which the Hospital's action must be measured.") (citing cases); *see also Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A.*, 1988-NMSC-014, ¶ 21 750 P.2d 757 (holding that "[a] private action for the breach of [the Code of Professional Conduct and Attorney's Oath] by an attorney will also not lie," and rejecting the plaintiff's analogy that "a civil action will lie for the breach of a statutory duty as negligence per se"). Violation of internal rules or policies, contracts, licensing or accreditation standards, and similar documents will—at most—be *evidence* of negligence, but does *not* constitute negligence per se. *See Grassie*, 2011-NMCA-024 at ¶ 7 ("The Agreement is evidence of a standard the Hospital set for itself. But a failure to follow it may or may not be negligent when viewed in the context of the entire screening process actually undertaken."); *see also*[2] *Titchnell v. United States*, 681 F.2d 165, 173 (3rd Cir. 1982) ("Mere failure to act in accordance with one's own internal procedures, however, will not

---

[2] The following cases were all cited by the *Grassie* court in support of its ruling.

3781373

8

automatically thereby render a health care facility negligent."); *FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 92 (Tex. 2004) (noting that self-imposed or internal policies by themselves do not determine the governing standard of care); *Pedroza v. Bryant*, 677 P.2d 166, 170–71 (Wash. 1984) (noting that the accreditation standards of the Joint Commission on Accreditation of Hospitals and the hospitals' own by-laws could serve as sources of the standard of care applicable to the hiring of doctors); *Sapp v. W.T. Grant Co.*, 341 P.2d 826, 828 (Cal. App. 1959) (noting that internal operating rules of a railway company would be used as evidence bearing on the standard of care appropriate for truck crossings); *Bryan v. S. Pac. Co.*, 86 P.2d 761, 765 (Ariz. 1955) (noting that internal rules have probative value in establishing negligence, but that violation of internal rules would not constitute negligence per se).

Here, Plaintiff alleges only that TransCor and CoreCivic violated ICE's Performance-Based National Detention Standards, IHSC Directives, the DHS Directive on compliance with § 504 of the Rehabilitation Act, their contracts with ICE, and unspecified "licensing standards." (Doc. 9 at ¶¶ 152–63.) She fails, however, to identify any statutes these Defendants are alleged to have violated. And although she references unspecified "regulations" (Doc. 9 at ¶ 163), she fails to identify the particular regulations at issue. As such, it is impossible for either these Defendants or the Court to determine whether the "regulations" "impose[ ] an absolute duty to comply with a specific requirement," *Cobb*, 2017-NMCA-022 at ¶ 43, and whether they are sufficiently specific as to "what is reasonable in a particular circumstance, such that the jury does not have to undertake that inquiry," *Thompson*, 2012-NMCA-014 at ¶ 32. The Court should therefore dismiss Plaintiff's negligence per se claim as to TransCor and CoreCivic.[3]

---

[3] Plaintiff's negligence per se claim is also unnecessary, as "negligence per se is not technically a separate cause of action." *Rawers v. United States*, No. CIV 19-0034 JB\CG, 2020 WL 5663427, at *39 (D.N.M. Sept. 23, 2020) (internal citation quotation

### C. Plaintiff Fails to State Claims for Negligent Hiring, Retention, Training, and Supervision (Counts Fourteen and Sixteen).

To state a claim for negligent hiring or retention, Plaintiff must allege "that the employee was unfit, considering the nature of the employment and the risk he posed to those with whom he would foreseeably associate, and that the employer knew or should have known that the employee was unfit." *Lessard v. Coronado Paint & Decorating Center, Inc.*, 2007-NMCA-122, ¶ 28, 168 P.3d 155 (quoting *Valdez v. Warner*, 1987-NMCA-076, ¶ 11, 742 P.2d 517). Similarly, to state a claim for negligent training or supervision, Plaintiff must allege that the harm to Hernandez "was caused by the [employer's] negligence in . . . training, . . . supervising, or otherwise controlling the [employee]." *Lessard*, 2007-NMCA-122 at ¶ 28 (quoting Restatement (Third) of Agency § 7.05(1) (2006)). Such claims, however, require more than an allegation of a single incident in which a single plaintiff was harmed. *See, e.g., Linkewitz v. Robert Heath Trucking, Inc.,* No. CV 13-0420 WPL/RHS, 2013 WL 12138884, at *6 (D.N.M. Aug. 13, 2013) (the plaintiff's allegations of a single accident involving one employee were insufficient to state a claim for negligent training and supervision against the corporate defendant even where the plaintiff alleged other accidents involving other employees of the defendant); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989) (holding, in the context of a § 1983 failure to train claim, that "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.")

In *Linkewitz*, the plaintiff alleged that the defendant trucking company negligently hired and retained the defendant driver. Specifically, the plaintiff alleged that the driver

---

omitted). Instead, it is "a method of proving negligence where a cause of action already exists." *Garcia*, 1988-NMSC-014 at ¶ 21.

had numerous motor vehicle violations on her record prior to the subject collision, and that these violations "should have alerted [the trucking company] that [the driver] [was] unsafe." *Linkewitz*, 2013 WL 12138884 at *5. Ruling on a motion for judgment on the pleadings, the district court found that the allegations made it plausible that the trucking company should have known that the driver was unfit to drive for the company, and that it would have known if it had followed the regulations requiring it to check the driver's driving history. *Id*.

Here, because no such allegations exist, the opposite outcome should result. Plaintiff does not allege that the TransCor and CoreCivic employees involved in transporting and housing Hernandez were unfit in any way. Rather, Plaintiff appears to assume that because Hernandez was injured, the employees must have been unfit, a proposition for which no authority exists. Even "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." *City of Canton*, 489 U.S. at 391. The same argument applies to hiring and retention claims—even employees who are otherwise fit for duty occasionally make mistakes; the fact that they do says little about whether they were fit to be hired or retained. Because Plaintiff failed to allege a basis for either TransCor or CoreCivic to know that the employees involved in the transportation and housing of Hernandez at CCCC were unfit for duty, her claims for negligent hiring and retention should be dismissed.

The *Linkewitz* plaintiff further alleged that the trucking company negligently trained and supervised the driver. There, as here, the plaintiff made only conclusory allegations that the employer failed to properly train, monitor, and supervise the defendant driver, and that this breach of duty was a proximate cause of the plaintiff's injuries. *Linkewitz*, 2013 WL 12138884 at *6. The plaintiff did not allege what the

purported deficiencies were, only that the training and supervision were deficient. *Id*. The district court found that "[t]hese conclusory statements cannot suffice on their own to state a claim." *Id*. (citing *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 555.)

The *Linkewitz* court also rejected the plaintiff's argument that the fact that the trucking company as a whole had 16 reported crashes over a 24-month period supported the negligent training and supervision claim. *Id*. The court agreed with the trucking company that those crashes were not relevant to a claim that the trucking company did not properly train or supervise the particular driver at issue, stating that: "any purported connection between a history of accidents not involving [the driver] and the accident in question is, without more, too attenuated for purposes of stating a claim of negligent training." The court further rejected the plaintiff's argument that the fact that the driver was allegedly negligent in the subject collision meant that the trucking company must have been negligent in supervising or training her, stating that: "[w]hile it is possible that [the driver's] alleged negligence, taken as true, can be attributed to a failure to properly train her, that mere possibility is not enough; *Twombly* demands that factual allegations be enough to raise a right to relief above the speculative level." *Id*. (internal citation and quotation omitted).

Here, the same outcome should result. Plaintiff does not allege any particular deficiencies in either TransCor's or CoreCivic's training programs, or any histories of misbehavior by the employees involved in transporting and housing Hernandez at CCCC that would suggest a failure to properly supervise them. Rather, as with her negligent hiring and retention claims, Plaintiff appears to assume that because Hernandez was injured, the employees must have been improperly trained and supervised, a proposition for which no authority exists, and which the *Linkewitz* court specifically rejected. *See Linkewitz*, 2013 WL 12138884 at *6. Again, even "adequately trained officers

occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." *City of Canton*, 489 U.S. at 391. Because Plaintiff failed to allege a basis to believe that either TransCor's or CoreCivic's training and supervision of the employees involved in the transportation and housing of Hernandez at CCCC were deficient, her claims for negligent training and supervision should be dismissed as well.

### III.   Conclusion

For the reasons stated above, Counts One, Two, Fourteen, and Sixteen should be dismissed as to TransCor and CoreCivic. Unless Plaintiff can provide a good-faith basis to believe that amending the FAC could cure the deficiencies, these claims should be dismissed with prejudice. *See Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1189 (10th Cir. 2012) ("[A] dismissal with prejudice is appropriate "where [the] complaint fails to state a claim ... and granting leave to amend would be futile.") (quoting *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006)).

Dated:  October 23, 2020

/s/ Jacob B. Lee
DANIEL P. STRUCK, AZ Bar No. 012377
JACOB B. LEE, AZ Bar No. 030371
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
Tel.: (480) 420-1600
Fax: (480) 420-1696
dstruck@strucklove.com
jlee@strucklove.com

DEBORAH D. WELLS
DEBRA J. MOULTON
KENNEDY, MOULTON & WELLS, P.C.

        2201 San Pedro NE, Bldg. 3, Suite 200
        Albuquerque, New Mexico 87110
        Tel.: (505) 884-7887
        Fax: (505) 884-7123
        ddwells@kmwpc.com
        dmoulton@kmwpc.com

        *Attorneys for Defendants TransCor America, LLC and CoreCivic Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Dale Melchert
Transgender Law Center
P.O. Box 70976
Oakland, CA 94612
Email: dale@transgenderlawcenter.org
*Attorney for Plaintiff*

Irene R Lax
Grant & Eisenhofer P.A.
485 Lexington Avenue, 29th Floor
New York, NY 10017
Email: ilax@gelaw.com
*Attorney for Plaintiff*

Kimberly A. Evans
Grant & Eisenhofer P.A.
123 S. Justison Street, 7th Floor
Wilmington, DE 19801
Email: kevans@gelaw.com
*Attorney for Plaintiff*

Lynly Egyes
Transgender Law Center
P.O. Box 70976
Oakland, CA 94612
Email: lynly@transgenderlawcenter.org
*Attorney for Plaintiff*

R. Andrew Free
P.O. Box 90568
Nashville, TN 37209
Email: andrew@immigrantcivilrights.com
*Attorney for Plaintiff*

Daniel Yohalem
Daniel Yohalem Attorney at Law
1121 Paseo de Peralta
Santa Fe, NM 87501
Email: daniel.yohalem@gmail.com
*Attorney for Plaintiff*

Adam D. Rafkin
Adam D. Rafkin, PC
PO Box 1912
Ruidoso, NM 88355
Email: rr@rafkinlaw.com
*Attorney for Defendants*
*LaSalle Corrections Transport LLC,*
*LaSalle Management Company LLC,*
*LaSalle Corrections West LLC*

/s/Jacob B. Lee