## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**Joleen K. Youngers**,
as the Personal Representative of the Wrongful
Death Estate of Roxsana Hernandez,

        Plaintiff,

  v.

                                        **Civil Action No. 20-cv-00465-JAP-CG**

**Management & Training Corporation,**
**LaSalle Corrections Transport LLC,**
**LaSalle Corrections West LLC,**
**LaSalle Management Company LLC,**
**Global Precision Systems LLC,**
**TransCor America LLC,**
**CoreCivic, Inc.,**

        Defendants.

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS LASALLE CORRECTIONS TRANSPORT LLC, LASALLE CORRECTIONS WEST LLC, AND LASALLE MANAGEMENT COMPANY LLC'S JOINT MOTION TO DISMISS

        Plaintiff Joleen K. Youngers, as the Personal Representative of the Wrongful Death Estate of Roxsana Hernandez ("Roxsana"), by and through her attorneys, hereby submits this Response in Opposition to Defendants LaSalle Corrections Transport LLC ("LaSalle Transport"), LaSalle Corrections West LLC ("LaSalle West") and LaSalle Management Company LLC's ("LaSalle Management") (collectively, "LaSalle Defendants" or "Defendants") joint Motion to Dismiss (the "Motion"), and in support thereof, provide the following.

## I.    RELEVANT BACKGROUND

        On May 13, 2020, Plaintiff filed a complaint seeking redress for the wrongful death of Roxsana, who died on May 25, 2018 as a result of gross mistreatment while in Defendants' care and custody (the "Complaint"). The Complaint, brought by the personal representative of Roxsana's wrongful death estate, alleged that LaSalle Transport and four other defendants who

are unrelated to LaSalle violated her rights under §504 of the Rehabilitation Act, 29 U.S.C. § 794, and committed numerous torts against her while in their care and custody.  *See generally* Doc. 1.

On July 22, 2020, Plaintiff mailed the Complaint, a copy of the docket, and a service waiver request pursuant to Federal Rule of Civil Procedure 4(d)(1) to both: (1) the corporate headquarters of LaSalle Transport, and (2) National Registered Agents, the registered agent listed with the New Mexico Secretary of State for LaSalle West.  *See* Doc. 44 at A1-A4.[1]  LaSalle West's registered agent received and signed for the mailing on July 25, 2020, as evidenced by the signed and returned certified mailing receipt.  *Id.* at A2.  LaSalle Transport's corporate headquarters received the mailing on July 25, 2020, as evidenced by United States Postal Service ("USPS") tracking.  *Id.* at A4.  On August 13, 2020, Plaintiff filed a First Amended Complaint ("FAC") which added two new Defendants, LaSalle West and LaSalle Management.  Doc. 9.  As explained in the FAC, on information and belief, LaSalle West is a wholly-owned subsidiary of LaSalle Management, and LaSalle Management is the parent company of both LaSalle West and LaSalle Transport.  *Id.* at ¶¶25-34.  Plaintiff added LaSalle West and LaSalle Management as defendants upon discovery that these entities were related to LaSalle Transport (the original named Defendant), all three entities were likely involved in the detention and transport of Roxsana, and that, upon information and belief, all three entities appear to be arms of one larger entity controlled by the same two principals.[2]  *Id.*  On August 24, 2020, Plaintiff mailed the FAC naming all three LaSalle Defendants, a service waiver request, and the docket sheet to: (1) an address representing both LaSalle Transport's corporate headquarters and LaSalle West's principal place of business; and

---

[1] Plaintiff experienced difficulty identifying and locating the LaSalle defendants involved in transporting and injuring Roxsana.  See Note 4, below.  This caused a brief delay in serving the Complaint after filing.

[2] *See* Note 6, below.

(2) William K. McConnell, the registered agent of LaSalle Management.[3] *See* Doc. 44 at A5-A7. These mailings were delivered on August 28, 2020 and August 27, 2020, respectively, as evidenced by returned signed certified mailing receipts. *Id.* at A6, A8. On August 27, 2020, Plaintiff mailed the FAC, a service waiver request, and a copy of the docket to two different registered agents of LaSalle West: David Rivas and National Registered Agents. *Id.* at A9-A11. These mailings were received on September 3 and 7, 2020, respectively, as evidenced by the signed and returned certified mailing receipts. *Id.* at A10, A12. On August 27, 2020, Plaintiff also made several attempts to fax these documents to David Rivas, the registered agent of LaSalle West, but these fax attempts failed to successfully transmit. *Id.* at A13. On September 21, 2020, counsel for all three LaSalle entities filed a notice of appearance and waived personal service pursuant to Rule 4. *See* Doc. 15.

## II.   ARGUMENT

### A.   STANDARD OF REVIEW

"A pleading 'must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Hurd v. Novartis Pharmaceuticals Corp.*, 2020 WL 3101019, at *2 (D.N.M. June 11, 2020) (quoting Fed. R. Civ. P. 8(a)). When reviewing Defendants' Motion pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must determine whether the complaint sufficiently alleges facts supporting the elements necessary to establish an entitlement to relief under the legal theory proposed. *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). All well-pleaded factual allegations should be taken as true and should be viewed in the light most favorable to the plaintiff. *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002); *Hurd*, 2020 WL 3101019, at *2 (same). "The issue in reviewing the sufficiency of a

---

[3] Mr. McConnell is also a member and manager of other LaSalle Defendants. *See* Note 6, below.

complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support [her] claims." *Ruiz,* 299 F.3d at 1181. Allegations must "state a claim to relief that is plausible on its face." *Hurd*, 2020 WL 3101019 at *2 (quoting *Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' The factual allegations must 'raise a right to relief above the speculative level.'" *Id.* (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2018); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### B.   PLAINTIFF TIMELY FILED THE COMPLAINT AND THE FAC AGAINST ALL LASALLE DEFENDANTS

Defendants admit that Plaintiff's original Complaint (Doc. 1) was filed on May 13, 2020, which was less than two years after Roxsana's death on May 25, 2018. Motion at 5. Defendants also admit that the Complaint was timely filed as to LaSalle Transport, the originally named LaSalle Defendant. *Id.* But, erroneously relying on Arizona's two-year statute of limitations rather than New Mexico's three-year statute of limitations, and incorrectly applying Rule 15's relation back provision, Defendants wrongly contend that the FAC was not timely filed as to LaSalle West and LaSalle Management, the two LaSalle Defendants added in the FAC. *Id.* at 2-4, 9.

#### 1.   New Mexico's Three-Year Statute Of Limitations For Personal Injury Cases Applies To All Claims

##### (a)   Plaintiff's Section 504 Claim

Because neither Section 504 nor the Rehabilitation Act contains a statute of limitations, federal courts borrow the limitations period that applies to personal injury claims, which are the most analogous claims. *See Levy v. Kans. Dep't of Social and Rehab. Servs.*, 789 F.3d 1164, 1172 (10th Cir 2015); *see also Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 630-631 (10th Cir 1993). "The statute of limitations applicable to claims under … Section 504 of the

[Rehabilitation Act] is the statute of limitations for personal injury actions *in the state in which the trial court sits*." *Disabled in Action of Pennsylvania v. Southeastern Pennsylvania Transportation Authority*, 539 F.3d 199, 208 (3d Cir. 2008) (emphasis added); *Levy*, 789 F.3d at 1173; *see Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008) (in addressing § 1983 claims, which are analogous to § 504 claims, the Court held that "[t]he statute of limitations is drawn from the personal-injury statute of the state in which the federal district court sits.") (citing *Wilson v. Garcia*, 471 U.S. 261, 269 (1985)); *see also Century 21 Real Estate Corp. v. Meraj Int'l Inv. Corp.*, 315 F.3d 1271, 1281 (10th Cir. 2003) ("A federal court in a diversity case applies the choice of law principles of the state in which it sits.") (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)).  Here, the Court should apply New Mexico's three-year statute of limitations for personal injury claims to Plaintiff's Section 504 claims.  *See* N.M. Stat. Ann., § 37-1-8.  The FAC was filed on August 13, 2020; thus Plaintiff's Section 504 claims against LaSalle West and LaSalle Management fall within the three-year statute of limitations applicable to Defendants' conduct in May 2018.[4]

----

[4] Even if Arizona's two-year statute of limitations applied, the state's Discovery Rule prevented Plaintiff's claims from accruing until she discovered the causal link between Defendants' actions and Plaintiff's claims. *See Anson v. American Motors Corp.*, 155 Ariz. 420 (Ariz. Ct. App. 1987). Here, Plaintiff diligently sought records seeking to identify each party responsible for the decedent's pre-death care and treatment.  Plaintiff did not receive responses to her federal public records request revealing the corporate identity of LaSalle until October 2, 2019.  Because Plaintiff could not have discovered the LaSalle Defendants' involvement and liability until receipt of these documents, her claims did not accrue until October 2, 2019, the date U.S. Immigration and Customs Enforcement provided them.  *See Walk v. Ring*, 202 Ariz. 310, 316 (2002) (noting a plaintiff must have a "reason to connect the 'what' to a particular 'who' in such a way that a reasonable person would be on notice to investigate whether injury might result from fault.'"); *accord Lawhon v. L.G.J. Institutional Supply Co.*, 159 Ariz. 179, 183 (Ariz. Ct. App. 1988).

(b)     **Plaintiff's Tort Claims**

The same result is required for all tort claims Plaintiff alleged in the FAC against the two new LaSalle Defendants.  It is black-letter law that, in a diversity case, the Court applies the applicable statute of limitations ***from the forum state where the case was filed***.  *Burnham v. Humphrey Hosp. Reit Tr., Inc.*, 403 F.3d 709, 712 (10th Cir. 2005) ("Because this is a diversity case, … [a] federal court sitting in diversity applies state law for statute of limitations purposes.") (citing *Guaranty Tr. Co. of N.Y. v. York*, 326 U.S. 99, 109–110 (1945)).  New Mexico's law concerning which state's statute of limitations applies is also long-standing and clear: it is the law of the forum state.  In *Nez v. Forney*, 1989-NMSC-074, 109 N.M. 161 (N.M. 1989), the New Mexico Supreme Court held:

> In *Sierra Life Ins. Co. v. First National Life Ins. Co.*, 85 N.M. 409 (1973), plaintiff Sierra Life, a New Mexico corporation, brought an action for breach of contract or, alternatively, for specific performance, against defendant First National, an Arizona corporation, in a New Mexico district court.  First National argued to the trial court that Arizona's four-year statute of limitations was applicable, and therefore, plaintiff's claims were barred. On appeal, we ruled that under New Mexico law statutes of limitation are procedural and that the law of the forum governs matters of procedure.  *Id.* at 162.

Thus, New Mexico's three-year statute of limitations for personal injury claims applies to all tort claims asserted in the FAC, and, as explained above, all claims in the FAC were timely filed.[5]

> 2.     **Even If Arizona's Two-Year Statute Of Limitations Were To Apply, All Claims Against LaSalle West And LaSalle Management Relate Back To The Timely Filing Of The Complaint Against LaSalle Transport**

Even if Arizona's two-year statute of limitations is applicable—which it is not—Plaintiff's claims against all LaSalle Defendants are still timely.  As set forth in *Hunt v. Hamm*, 2016 WL

---

[5] This reasoning also requires that LaSalle Defendants' argument that Count 7 and Count 8 of the FAC should be dismissed on statute of limitations grounds should be rejected.  *See* Motion at 9.

10538832 (D. N.M. May 31, 2016) and *Lamendola v. Board of County Commissioners for Taos County, et al.*, 2019 WL 2371714 (D. N.M. June 5, 2019), New Mexico's Civil Procedure Rule 1-015(C) applies in this case.  This Rule provides, in relevant part:

> Rule 1-015(C). Relation back of amendments.
> (1) Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.
>
> (2) When a party files a motion to amend a pleading prior to the running of the statute of limitations, changing the party against whom a claim is asserted, a ruling granting the motion relates back to the date the motion was filed if the motion was accompanied by a proposed amended pleading naming the new party.
>
> (3) When a party files a motion to amend a pleading after the statute of limitations has run, changing the party against whom a claim is asserted, a ruling granting the motion relates back to the date of the original pleading if Paragraph (C)(1) of this rule is satisfied and, within the period provided by Rule 1-004(C)(2) NMRA for serving process, the party to be brought in by amendment
>
>> (a) has received such notice of the institution of the action that it will not be prejudiced in maintaining its defense on the merits; and
>>
>> (b) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against it.

N.M. Stat. Ann., Rule 1-015.

Because the FAC added additional LaSalle Defendants and all three LaSalle Defendants received a copy of the FAC within the period provided by N.M. Stat. Ann. Rule 1-004(C)(2) for serving process (*i.e.*, between August 27, 2020 and September 7, 2020, within 25 days after the FAC was filed), the amendment properly relates back to the timely service date of the original Complaint as to the two new Defendants, LaSalle West and LaSalle Management.  N.M. Stat. Ann. R. 1-015(C)(3); *see* Doc. 44 at A5-A12; *see also* n.4, above.  Further, the LaSalle Defendants have not claimed any prejudice in maintaining their defense, nor could they.  This case has only just started and all three LaSalle Defendants share common owners/members and addresses, such that later-added LaSalle West and LaSalle Management knew or should have known that the action

brought against LaSalle Transport, the originally named LaSalle Defendant, could and should have been brought against them.[6]  Consequently, both the Complaint and the FAC were timely filed as to all LaSalle Defendants.  Any argument to the contrary should be rejected.[7]

### C.   THE COMPLAINT AND THE FAC WERE TIMELY SERVED AS TO ALL LASALLE DEFENDANTS

Defendants also argue that Plaintiff's claims should be dismissed because: (1) Plaintiff failed to timely serve LaSalle Transport with the original Complaint (Motion at 5-7, 9-10), and (2) Plaintiff failed to timely serve LaSalle West and LaSalle Management with the FAC.[8]  *Id.* at 3-5, 9.  Defendants are incorrect as a matter of both law and fact.

### 1.   Plaintiff Timely Served LaSalle Transport With The Original Complaint

Defendants argue that "Plaintiff made no effort to serve Defendant LaSalle [Transport] within 90 days of the filing of the original Complaint."  *Id.* at 5.  That assertion is false.  On July

---

[6] *See* FAC ¶¶ 25-34.  Defendants' Notice of Disclosure states that LaSalle Transport and LaSalle West are wholly-owned by the same two corporate entities, Temple Southwest Holdings, LLC and McConnell Southwest Holdings, LLC, both located at 1999 Bryan St. (Suite 900) in Dallas, Texas.  *See* Doc. 17.  The members/directors of LaSalle Transport are WMC Enterprises, LLC ("WMC") (also the 50% owner of LaSalle Management) and KPL, LLC ("KPL"), both located at the Louisiana address identified by Defendants as the location of the co-owners of LaSalle Management. (https://mycpa.state.tx.us/coaSearchBtn).  William K. McConnell ("McConnell") is listed in the Louisiana state corporate filing as the partner, principal and managing member of LaSalle Management and he is a member and officer of WMC, a member of both LaSalle Transport and LaSalle Management.  Patrick M. Temple ("Temple") is listed as the registered agent and member of KPL in Louisiana public corporate filings accessible via its Secretary of State website.  Temple and McConnell are both listed as members/directors of LaSalle West in Texas (https://mycpa.state.tx.us/coaSearchBtn), although they are listed as registered agents and members, respectively, in Louisiana public corporate filings.  Both men list their address in both the Texas and Louisiana filings as 192 Bastille Ln. (Ste 200), Ruston, LA 71270, the address listed by Defendants for LaSalle Management's co-owners, WMC and PH Temple Family Interest, LP.

[7] Again, this same reasoning also applies to reject LaSalle Defendants' similar argument that Count 7 and Count 8 of the FAC should be dismissed.  *See* Motion at 9.

[8] Defendants bring the Motion under Fed. R. Civ. P. 12(b)(6), but their challenge to Plaintiff's service of process should more appropriately be treated as a defense under Fed. R. Civ. P. 12(b)(5).

22, 2020—well within the 90-day period required by Rule 4(m)—Plaintiff mailed the Complaint, a copy of the docket, and a service waiver request to: (1) the corporate headquarters of LaSalle Transport, and (2) the registered agent of LaSalle West.  *See* Doc. 44 at ¶¶3-4.  Both mailings were delivered on July 25, 2020, well within the 90-day period.  *Id.* at A2, A4.  LaSalle Transport has since returned the signed personal service waiver.  *See* Doc. 15.  Thus, LaSalle Transport was timely served.

### 2.    Plaintiff Timely Served LaSalle West And LaSalle Management With The FAC

Plaintiff also timely served LaSalle West and LaSalle Management.  On August 24, 2020, Plaintiff mailed the FAC, a service waiver request, and a copy of the docket to: (1) an address which represents both the corporate headquarters of LaSalle Transport and principal place of business of LaSalle West, and (2) William K. McConnell, the registered agent of LaSalle Management.  *See* Doc. 44 ¶¶5-6.[9]  The returned and signed certified mailing receipts show delivery on August 28, 2020 and August 27, 2020, respectively.  *Id.*  Also, on August 27, 2020, Plaintiff also mailed the FAC, a service waiver request, and a copy of the docket to two addresses for registered agents of LaSalle West: (1) David Rivas and (2) National Registered Agents (at a different address from the July 22, 2020 mailing).  *See id.* ¶¶7-8.  The signed and returned certified mailing receipts show receipt on September 3 and 7, 2020, respectively.  *Id.* at A10, A12.  On September 21, 2020, all LaSalle Defendants filed notices of appearance and waived personal service. *See* Doc. No. 15.  Accordingly, all three LaSalle Defendants were timely served.[10]

---

[9] See Note 6, above, for Mr. McConnell's multiple roles in various LaSalle Defendants.

[10] For the same reasoning, the Court should reject LaSalle Defendants' similar argument in support of dismissing Counts 7 and 8.  *See* Motion at 9-10.

### 3.      Alternatively, Good Cause Exists To Extend The Time To Serve All LaSalle Defendants

To the extent the Court determines that the LaSalle Defendants were not timely filed—

which it should not—Plaintiff has established good cause to extend the service deadline as to all

Defendants.  Under Federal Rule of Civil Procedure 4(m), the Court is required to extend the time

for service if a plaintiff shows good cause.  *See Espinoza v. United States*, 52 F.3d 838, 841 (10th

Cir.1995) (holding that, upon a showing of good cause, Rule 4(m)'s exception is mandatory).

"[T]he key to the good-cause exception under Tenth Circuit case law is that the plaintiff be

meticulous in their efforts to follow the rules."  *Padilla v. Walgreen Hastings Co.*, 2009 WL

2951025, at *6 (D. N.M. Aug. 11, 2009) (citing *Despain v. Salt Lake Area Metro Gang Unit*, 13

F.3d 1436, 1438 (10th Cir. 1994)).

Plaintiff has made such a showing here.  Plaintiff diligently attempted to serve the

Complaint via mail on the listed registered agent of LaSalle West and the headquarters of LaSalle

Transport within the 90 days required by Rule 4(m) and received notification that both entities

received those mailings.  Doc. 44 at A1-A4.  Plaintiff received a returned certified mailing receipt

evidencing delivery of the Complaint and service waiver request to the registered agent of LaSalle

West and USPS tracking indicates they were also delivered to LaSalle Transport.  *See* Doc. 44 at

A-2, A-4.  Also, in mid-August 2020, Plaintiff learned that LaSalle West's registered agent ***may***

have forwarded the Complaint to an entity not related to LaSalle Transport.  In response, Plaintiff

promptly began researching additional service addresses.   Within eight days, Plaintiff made

multiple calls to and left voicemails with the legal department of LaSalle Management and LaSalle

West in Ruston, Louisiana, and attempted to send the documents by facsimile.  *Id.* at A13.  Plaintiff

also mailed the FAC and service waiver request to two new addresses found for registered agents

10

of LaSalle West and an agent for LaSalle Management, William K. McConnell.  Plaintiff's efforts demonstrate a diligent, good faith attempt to comply with Rule 4.  Therefore, while Plaintiff believes service is timely, Plaintiff has also established good cause for an extension of time under Rule 4(m).

### 4. If Necessary, The Court Should Grant Plaintiff A Permissive Extension To Serve The LaSalle Defendants

To the extent the Court determines that service was not timely made and that Plaintiff has not shown good cause for an extension of time under Rule 4(m), which again, Plaintiff believes is belied by the facts, Plaintiff should be entitled to a permissive extension of time to serve the LaSalle Defendants.  "If the plaintiff fails to show good cause, the district court must still consider whether a permissible extension of time may be warranted. At that point the district court may in its discretion either dismiss the case without prejudice or extend the time for service." *Espinoza*, 52 F.3d 838 at 841; *see Sanders v. Sw. Bell Tel., L.P.*, 544 F.3d 1101, 1111 (10th Cir. 2008); *Barrett v. Philpot*, 356 F. App'x 193, 198 (10th Cir. 2009); *Oklahoma ex rel. Bd. of Regents v. Fellman*, 153 F. App'x 505, 507 (10th Cir. 2005).  Some factors courts consider in deciding whether to grant a permissive extension include: "whether the statute of limitations for claims against the unserved defendant has expired; [ ] whether plaintiff has made a good-faith effort to attempt service; [ ] whether a defendant attempted to avoid service; [ ] whether defendant had actual notice of the claims against it; and [ ] whether a defendant has shown actual prejudice caused by the delay in service." *McClellan v. Bd. of Cty. Comm'rs of Tulsa Cty.*, 261 F.R.D. 595, 604–05 (N.D. Okla. 2009) (internal citations omitted).  For example, in *Padilla v. Walgreen Hastings Co.*, 2009 WL 2951025 (D.N.M. 2009), this Court granted plaintiff a permissive extension to serve defendants 40 days after passage of the statutory deadline, despite failure to show good cause for the delay, noting plaintiff's timely attempt to serve defendants by mail.  *Id.* at *1.

Here, should the Court determine that Plaintiff's initial efforts to serve the Complaint were not sufficient, the Court should grant Plaintiff a permissive extension because any service deficiencies were immediately cured, there was no delay in timely serving the FAC on all three LaSalle Defendants, LaSalle West had actual notice of the underlying facts and claims of the instant action as of July 25, 2020,[11] and the ownership, membership, and management of the two new LaSalle Defendants are intertwined with the entity timely served with the original Complaint.[12]  Finally, the LaSalle Defendants fail to identify *any* prejudice that would result from permissive extension, weighing in favor of granting one to Plaintiff.  *See generally* Motion.

### D.    THE FAC STATES A CLAIM FOR NEGLIGENCE PER SE

In order for a negligence per se claim to survive a motion to dismiss, a complaint must sufficiently allege that "(1) there is a statute which prescribes certain actions or defines a standard of conduct; (2) the defendant violates the statute; (3) the plaintiff is in the class of persons sought to be protected by the statute; and (4) the harm or injury to the plaintiff is generally of the type that the legislature, through the statute, sought to prevent."  *Ward v. Presbyterian Healthcare Servs.*, 79 F.Supp.2d 1276, 1278 (D.N.M. 1999) (citing *Castillo v. United States*, 552 F.2d 1385, 1388 (10th Cir. 1977)); *Heath v. La Mariana Apartments*, 180 P.3d 664, 666 (N.M. 2008) (quoting *Archibeque v. Homrich*, 543 P.2d 820, 825 (N.M. 1975)).  Federal standards, directives or policies may have "the force and effect of statute" for purposes of this test where they are adopted or promulgated by federal or state law.  *See Ray v. Aztec Well Service Co.*, 748 F.2d 888, 889 (10th Cir. 1984) (holding the National Fire Prevention Association Standards had the "force and effect of statute" because they were adopted and promulgated by a state committee); *Apodaca v. AAA*

---

[11] As its registered agent and its principal place of business received the Complaint on that date.

[12] *See* Note 6, above.

*Gas Co.*, 73 P.3d 215, 233 (N.M. App. 2003), *cert. quashed* 88 P.3d 263 (N.M. 2004) (TABLE) ("Rules and regulations adopted by city ordinance have the force and effect of law" and holding the National Fire Prevention Association guidelines for fire prevention, which are not themselves a statute or regulation but were adopted by city ordinance, support a claim for negligence per se); *see also Heath*, 180 P.3d at 668 n.1 ("The question is simply whether the legislature or other enacting body has defined a standard of care such that the jury may be instructed on that standard in lieu of the common law standard.").

The FAC has sufficiently alleged the elements of a negligence per se claim here. The FAC alleges that Plaintiff's negligence per se claim is based upon Defendants' violation of various rules and regulations adopted or promulgated by federal law and statute and other standards explicitly provided by federal regulations. Doc. 9 at ¶190; *id.* at ¶¶152-167, 187-201. The FAC further alleges that Plaintiff's negligence per se claim is based on IHSC Directives, the Performance Based National Detention Standards ("PBNDS"), the applicable regulations and licensing requirements, and the terms of Defendants' contracts with U.S. Immigration and Customs Enforcement ("ICE"). FAC, Doc. 9 at ¶190 ("Each Defendant was required by IHSC Directives, [the PBNDS], the applicable regulations and licensing requirements, and the terms of its contract(s) with ICE to assess Roxsana's medical fitness for travel before she was transported."); *see, generally, id.* at ¶¶187-201. The FAC alleges, in detail, the duties and standards of care applicable to the Defendants. FAC, Doc. 9 at ¶¶152-167. Plaintiff further alleges that Roxsana was in the class of persons that was intended to be protected by these applicable duties and standards of care, that Defendants breached these duties and standards of care, and that the harm and injury to Roxsana was precisely the harm and injury intended to be prevented by these standards. FAC, Doc. 9 at ¶¶187-201. These allegations are plainly sufficient to survive a motion to dismiss.

Defendants argue that Plaintiff's negligence per se claim is without merit because "the LaSalle Defendants' purported violation of a handbook or performance standards" does not give rise to a claim. Motion at 8. Defendants are wrong. The PBNDS were codified as binding by Congress pursuant to an Appropriations Bill, which gives the PBNDS the "force and effect of statute" for purposes of the four part test. *See Ray*, 748 F.2d at 889 (holding that the National Fire Prevention Association Standards, which "were adopted by the New Mexico Construction Industries Committee pursuant to its authority to 'adopt and promulgate such rules and regulations as are necessary to carry out the purposes' of the Liquid Petroleum Gas Act" had "the force and effect of statute for purposes of the [four part] test," while also taking judicial notice of a handbook the Committee had adopted as part of its regulations) (internal citations omitted). The PBNDS require all government contracts with any private detention facilities and transport companies to adhere to these requirements. As the 2017 Department of Homeland Security Appropriations Bill, adopted on July 6, 2016, provides:

> Within 45 days after the date of enactment of this Act, ICE shall report on its progress in implementing the 2011 Prison Based National Detention Standards (PBNDS) and requirements related to the Prison Rape Elimination Act (PREA), including a list of facilities that are not yet in compliance; a schedule for bringing facilities into compliance; and current year and estimated future year costs associated with compliance. ***The Committee expects ICE to refrain from entering into new contracts or IGSAs that do not require adherence to the PREA and 2011 PBNDS standards.***"

114 H. Rpt. 668 at 35 (adopted July 6, 2016) (emphasis added). Moreover, the PBNDS incorporate applicable regulations, including Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and require private contractors retained by ICE, like the Defendants, to comply with Section 504.[13]

---

[13] *See* Department of Homeland Security, U.S. Immigration and Customs Enforcement, "Progress in Implementing 2011 PBNDS Standards and DHS PREA Requirements at Detention Facilities, Fiscal Year 2017 Report to Congress," dated March 19, 2018, *available at* https://www.dhs.gov/sites/default/files/publications/ICE%20-

Private detention facilities and transport companies that detain and transport migrants and asylum-seekers are also bound by federal regulations.  For example, 8 C.F.R. § 287.8(d) states: "[a]ll persons will be transported in a manner that ensures the safety of the persons being transported." *Id.*  Also, 8 C.F.R. § 235.3(e), entitled "Detention in non-Service facility," provides:

> Whenever a[] [non-citizen] is taken into Service custody and detained at a facility other than at a Service Processing Center, ***the public or private entities contracted to perform such service*** shall have been approved for such use by the Service's Jail Inspection Program ***or shall be performing such service under contract*** in compliance with the Standard Statement of Work for Contract Detention Facilities. Both programs are administered by the Detention and Deportation section having jurisdiction over the [non-citizen's] place of detention. ***Under no circumstances shall a[] [non-citizen] be detained in facilities not meeting the four mandatory criteria for usage. These are: (1) 24-Hour supervision, (2) Conformance with safety and emergency codes, (3) Food service, and (4) Availability of emergency medical care***.

*Id.* (emphasis added).  These subchapters apply to the LaSalle Defendants both explicitly and by contracts they entered with ICE to detain and transport Roxsana.  *See* 114 H. Rpt. 668 at 35.  The requirements of the standards Plaintiff relies upon are highly specific and must be complied with under federal law. *Heath*, 543 P.2d at 666 (holding any statute used for a negligence per se instruction must "define[] the duty with specificity."); *see* FAC at ¶¶152-167, 187-201 (explanation of duties and standards of care).

The LaSalle Defendants also falsely contend that Plaintiff cannot rely on the PBNDS and IHSC Directives in support of her negligence per se claim because "an administrative directive does not automatically give rise to a private right of action."  Motion at 8.  This argument misses the mark.  Plaintiff is not seeking relief for violations of the PBNDS or IHSC directly via claims pursuant to those standards and directives; rather, Plaintiff seeks to ***use*** those federal standards and

%20Progress%20in%20Implementing%202011%20PBNDS%20Standards%20and%20DHS%20PREA%20Requirements_0.pdf.

directives, which are adopted and promulgated pursuant to federal law and statute, in order to establish Defendants' standard of care, which arises under the tort causes of action Plaintiff specifically identifies in the FAC. *See* FAC at ¶¶152-167, 187-201.

*Suazo v. Taos Living Center, LLC*, 2018 WL 4773405 (D. N.M. Oct. 3, 2018) is informative. In *Suazo*, the defendant, in seeking removal to federal court, argued that the plaintiff's complaint, which alleged state law wrongful death and negligence claims, actually turned on the interpretation of federal law, as the plaintiff had cited various federal statutes, including the Federal Nursing Home Reform Amendments ("FNHRA"), to support a claim for negligence per se. *Id.* at **2-3. The defendants also argued that the FNHRA did not create a private right of action, such that the plaintiff could not support a negligence per se claim. *Id.* at *4. The Court disagreed, explaining that, under New Mexico law, "the violation of a federal statute—just like the violation of a state statute—can constitute negligence per se." *Id.* at *3 (quoting *BNSF Ry. Co. v. Lafarge Sw., Inc.*, 2009 WL 10665753, at *5 (D.N.M. Jan. 22, 2009)). The Court further explained that:

> Plaintiff has not stated or even hinted that his claims are brought for violations of the FNHRA or under the authority of the FNHRA. Instead, Plaintiff's claims are brought under state tort law, and Plaintiff argues that both federal and state statutes and regulations ***should be used to establish that Defendants breached the standards of care owed to [plaintiff]***.

*Id.* at *4 (emphasis added).

This is exactly the situation we have here. The FAC alleges that Defendants' violations of the IHSC Directives, the PBNDS, the applicable regulations and licensing requirements, and the terms of Defendants' contracts with ICE "should be used to establish that [the LaSalle Defendants] breached the standards of care owed" to Roxsana. FAC at ¶¶189, 190 ("Pursuant to their contracts with ICE, all six Defendants were responsible for Roxsana's custody, control and care and had a duty to ensure Roxsana was free from unreasonable risk of harm[ ]" and "[e]ach Defendant was required by IHSC Directives, [PBNDS], the applicable regulations and licensing requirements, and

the terms of its contract(s) with ICE to assess Roxsana's medical fitness for travel before she was transported."); *see also id.* at ¶¶152-167, 187-201.

The cases Defendants cite in support of their arguments also fail to move the needle. Motion at 8. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015) is inapposite, as it does not even address negligence per se (or even negligence generally), but instead concerns whether the Supremacy Clause of the U.S. Constitution grants providers of habilitation services with a private right of action to sue the Idaho Department of Health and Welfare ("DHW") and enjoin DHW from increasing its reimbursement rates under Idaho's Medicaid plan. *See generally id.* As in *Suazo*, Plaintiff here is not seeking to assert a private right of action under the various directives cited, so *Armstrong* does not apply.

Defendants also misleadingly cite a Third Circuit decision—*Marks v. Mobil Oil Corp.*, 562 F. Supp. 759, 770 (E.D. Pa. 1983), *aff'd*, 727 F.2d 1100 (3d Cir. 1984), *aff'd sub nom*, *Mobil Oil Corp. v. McCreight*, 727 F. 2d 1100 (3d Cir. 1984)—for the contention that a "company rule" cannot establish negligence per se. Motion at 8. As discussed, the federal standards and directives relied upon by Plaintiff are promulgated or adopted pursuant to federal law or regulation, while other standards are explicitly provided by federal statute, and are thus materially different and distinguishable from a "company rule." Moreover, the full quote that the LaSalle Defendants only partially cite in their Motion actually supports Plaintiff's position, as it shows that rules and regulations not promulgated by statute or law are still significant in the determination of whether defendant was negligent:

> Failure to comply with a company rule does not constitute negligence per se, as would the violation of a state's safety statute, and this Court so instructed the jury. However, a company's safe driving rules are relevant in a negligence action when, as the jury was told, the plaintiff contends that the accident was caused by a violation of the rules. The jury is entitled to consider such rules in making its determination as to whether the defendant was negligent. *Id.* at *770.

Because the FAC sufficiently alleges all elements of a negligence per se claim, the Motion should be denied.

### E.   PLAINTIFF MAY RECOVER FOR INJURIES SUFFERED BY ROXSANA PRIOR TO HER DEATH

Defendants assert that Plaintiff's claims for non-economic damages in Counts Two, Seven, Eight, and Nine of the FAC, relating to the pain and suffering and emotional distress suffered by Roxsana prior to her death, as well as for the lost chance for Roxsana's condition to improve and for her to survive, should be dismissed because they are not supported by Arizona's survival statute.[14]   Motion at 10-12.   This argument should be rejected.   Non-economic damages are recoverable in this wrongful death action because New Mexico choice of law rules dictate the application of New Mexico law, not Arizona law, and under New Mexico law these damages may be asserted by Plaintiff, as the representative of Roxsana's wrongful death estate.

### 1.   The Court Must Conduct A Choice-Of-Law Analysis

Plaintiff has invoked the Court's diversity jurisdiction to hear its state law tort claims against Defendants.   *See* FAC, Doc. 9 at ¶15.   As such, the Court must conduct a choice-of-law analysis to determine what state law applies to Plaintiff's claims to recover for Roxsana's pre-death non-economic injuries in this wrongful death action.   "In making choice of law determinations," the Tenth Circuit has stated, "a federal court sitting in diversity must apply the choice of law provisions of the forum state in which it is sitting."   *Shearson Lehman Bros. v. M & L Invs.*, 10 F.3d 1510, 1514 (10th Cir. 1993); *see also Estate of Anderson v. Denny's Inc*., 987 F. Supp. 2d 1113, 1145-46 (D.N.M. 2013) ("Because the Court has diversity jurisdiction over this

---

[14] Plaintiff agrees that punitive damages are not recoverable in a claim brought under the Rehabilitation Act § 504, 29 U.S.C. § 794, per the Supreme Court's decision in *Barnes v. Gorman*, 536 U.S. 181 (2002). *See* Motion at 7.

case, it must apply the New Mexico choice-of-law rules to determine what substantive law applies."); *Coffey v. United States*, 870 F. Supp. 2d 1202, 1230 (D.N.M. 2012) (engaging in analysis to decide choice-of-law issues).  This analysis dictates that New Mexico law applies.

In addition, on a motion to dismiss, the Court must only consider the FAC's "well-pleaded factual allegations" and not any inadvertent, erroneous, or conclusory assertions of law in the FAC. *Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").  Here, Plaintiff erroneously cited Arizona law in the headings to Counts Seven, Eight, and Nine—but not in the heading to Count Two, which Defendants nevertheless treat as "sound[ing] in Arizona tort law."  Motion at 10; *see State v. Roybal*, 132 P.3d 598 (stating that "it is the substance of the [pleading], and not its form or label, that controls" the question of jurisdiction); *State v. Daniel P.*, 2019 WL 6173401, at *2 (N.M. App. Oct. 7, 2019) (same).  The body of the FAC also makes passing reference to Arizona law in paragraphs 254 and 266 under Counts Seven and Eight, respectively; however, the well-pleaded factual allegations in those paragraphs support the application of New Mexico law.  Thus, those references are not dispositive and should be ignored.[15]

### 2.    New Mexico's Choice Of Law Approach Requires Application Of New Mexico Law To The Wrongful Death Damages Question Presented Here

Because this Court sits in the state of New Mexico, New Mexico's choice of law approach must be followed.  *See Shearson Lehman Bros.*, 10 F.3d at 1514.  The choice of law analysis in

---

[15] If necessary and with leave of this Court, Plaintiff will amend the FAC to remove the state law references in these headings and paragraphs.

New Mexico "is a two-step process." *World Fuel Servs. v. Nambe Pueblo Dev. Corp.*, 362 F.

Supp. 3d 1021, 1080 (D.N.M. 2019).  First, the Court "characterize[s] the area of substantive law—

e.g., torts, contracts, domestic relations—to which the law of the forum assigns a particular claim

or issue," and then the Court "appl[ies] New Mexico's choice-of-law rule." *Id.* (quoting *Mosley*

*v. Titus*, 762 F. Supp. 2d 1298, 1314 (D.N.M. 2010)) (internal quotations omitted).

Here, the issue is whether a decedent's noneconomic damages are recoverable in a

wrongful death action asserting negligence per se (Count Two); negligence (Count Seven);

negligent hiring, retention, training, and supervision (Count Eight); and intentional infliction of

emotional distress ("IIED") (Count Nine).[16]  "A claim for wrongful death is a tort cause of action,"

for which New Mexico courts apply the law of the "place of the wrong." *In re Estate of Gilmore*,

946 P.2d 1130, 1133 (N.M. Ct. App. 1997).  The "place of the wrong is the location of the last act

necessary to complete the injury." *Id*. at 1133 (quoting *Wittkowski v. State*, 710 P.2d 93, 95 (N.M.

Ct. App. 1985)).  "Where the elements of the underlying claim include harm, the place of the

wrong is the place where the harm occurred." *Mosley*, 762 F. Supp. 2d at 1314 (citing *First Nat'l*

*Bank v. Benson*, 553 P.2d 1288, 1289 (N.M. Ct. App. 1976)).

A cause of action for wrongful death does not accrue until a death occurs, meaning that

death is a necessary—and more importantly, the ***final***—element of a wrongful death action.  *See*

N.M. Stat. Ann. § 41-2-1 ("Whenever the ***death of a person*** shall be caused by the wrongful act,

neglect or default of another, …").  Consequently, death comprises "the last act necessary to

complete the injury," and thus, to complete the wrong.  *See Gilmore*, 946 P.2d at 1137 (applying

---

[16] Plaintiff reiterates that it is pursuing these tort claims in a representative capacity as the Personal Representative of the Wrongful Death Estate of Roxsana Hernandez. Plaintiff was appointed to this position pursuant to N.M. Stat. Ann. § 41-2-3. FAC, Doc. 9 at ¶18 (citing *In the Matter of the Wrongful Death Action on Behalf of the Survivors of Roxsana Hernandez, Deceased*, No. D-101-CV-2019-00075); *see also id.* at ¶19.

law of Texas, as the place of the wrong, to govern distribution of wrongful death proceeds where the death and tortious conduct occurred in Texas).  Here, Roxsana died in New Mexico due to Defendants' tortious conduct; therefore, New Mexico is the place of the wrong and New Mexico's substantive law on wrongful death damages governs.  *See* FAC, Doc. 9 at ¶¶ 137, 140.  Plaintiff's specific counts for negligence per se, negligence, and negligent hiring in this wrongful death action expressly allege death as the ultimate resulting harm.  FAC, Doc. 9 at ¶¶ 207, 256, 267.  While Count Nine alleging IIED does not expressly allege death, this count is asserted in the context of Plaintiff's action for wrongful death, and the issue before the Court is whether non-economic damages, including IIED damages, are recoverable in a wrongful death action.  Given this context and liberal pleading standards on a motion to dismiss, the Court should treat New Mexico, where Roxsana died, as the place of the wrong for all counts alleged in the FAC.

The fact that Roxsana sustained other injuries that took place in Arizona is distinguishable from the fact that the ***final*** injury and harm—required to complete the wrong—occurred in New Mexico and does not prevent the application of New Mexico law.  This Court's prior decision in *Coffey v. United States*, 870 F. Supp. 2d 1202 (D.N.M. 2012), involved a similar fact pattern and supports the application of New Mexico law.  *Id.*  In *Coffey*, an estate brought negligence claims in a wrongful death action pursuant to the Federal Tort Claims Act ("FTCA"), alleging that federal authorities negligently failed to screen the decedent's medical condition when he was received into custody in Nevada and negligently transferred him to New Mexico penal authorities while in Arizona.  *Id.* at 1209-11, 1227-28.  The decedent died in New Mexico.  *Id.* at 1211.  The Court held that, although tortious ***conduct*** occurred in Nevada and Arizona, "the ***ultimate injury*** occurred in New Mexico."  *Id.* at 1227 (emphasis added).  In determining that New Mexico law ultimately applied, the *Coffey* Court first applied the FTCA's choice of law framework to

21

determine that the choice of law rules of Nevada and Arizona governed which state's substantive law would apply to the wrongful-death negligence claims. *Id.* at 1227-28. Unlike New Mexico, both Nevada and Arizona follow the Restatement (Second) of Conflict of Laws for tort cases, under which the law of the place of the wrong (*i.e.*, where the injury occurred) presumptively applies unless the application of various factors finds that a different state has a more significant relationship to the claim at issue. *Id.* at 1228-29 (citations omitted). The court held that under this approach, both Nevada and Arizona would apply New Mexico law to the negligence claims. *Id.* at 1229-31. New Mexico was the presumptive choice because the death (*i.e.*, the ultimate injury) occurred there, and application of the Second Restatement factors failed to overcome this presumption—despite the tortious conduct not occurring in New Mexico. *Id.*

That the New Mexico Supreme Court has declined to adopt the Second Restatement for torts-related choice of law reinforces the conclusion that this Court should apply New Mexico law to the claims at issue. *See Gilmore*, 946 P.2d at 1136; *see also Terrazas v. Garland & Loman, Inc.*, 142 P.3d 374, 378 (N.M. Ct. App. 2006) ("New Mexico courts have steadfastly applied the [place of wrong] rule in tort cases even when the connection between the lawsuit and New Mexico was largely fortuitous."). Unlike New Mexico's approach, the Second Restatement's factor-based approach provides a clear escape route from applying the law of the place of the wrong. Yet even under this more flexible approach, the Court in *Coffey* nevertheless concluded that the law of the place of the wrong should apply to an estate's negligence claims in a wrongful death suit when faced with facts similar to ours. The Court should therefore apply New Mexico wrongful death law here, as the law of the place where Roxsana died. *See also Louis v. United States*, 54 F. Supp. 2d 1207, 1211 (D.N.M. 1999) (using New Mexico choice of law to apply New Mexico's

22

substantive law to wrongful death claim where medical negligence occurred on tribal land but decedent died on state territory).[17]

### 3.   Plaintiff Can Recover For Roxsana's Pre-Death Non-Economic Damages Under New Mexico Law

In Counts Two, Seven, Eight, and Nine, Plaintiff seeks compensation for, *inter alia*, the "severe physical and emotional pain and suffering and mental anguish," the lost chance of Roxsana's survival, and related non-economic injuries inflicted upon Roxsana prior to her death. FAC, Doc. 9 at ¶ 275; *id.* at ¶¶ 207, 256, 275.  New Mexico's Wrongful Death Act, N.M. Stat. Ann. § 41-2-1 *et seq.*, governs the damages recoverable in a wrongful death suit such as this,[18] and has been consistently interpreted by New Mexico courts to allow recovery of the non-economic damages that Plaintiff seeks.  *See, e.g.*, *Romero v. Byers*, 872 P.2d 840, 846 (N.M. 1994) ("In our opinion, the Act goes beyond the loss of decedent's wages, and encompasses all damages that are fair and just."); *Stang v. Hertz Corp.*, 467 P.2d 14, 17 (N.M. 1970) ("The statutory language, while it does not say so specifically, nevertheless authorizes recovery for pain and suffering, and for medical and related care, between the time of injury and death, the same as could have been recovered by an injured party where death does not ensue."); *Kilkenny v. Kenney*, 361 P.2d 149, 152 (N.M. 1961) (superseded by statute on other grounds) (holding that the Act "warrants the allowance to the administrator of the decedent's damages prior to death"); *Mackey v. Burke*, 694 P.2d 1359, (N.M. Ct. App. 1984) ("Recovery for [pain and suffering and for medical and related care] may be had in a case involving wrongful death from malpractice between the time of the

---

[17] This conclusion is further bolstered by New Mexico's doctrine that allows the recovery of damages for the lost chance for Roxsana's condition to improve and for her to survive, asserted against the LaSalle Defendants at para. 256 of the FAC.  *See Baer v. Regents of the Univ. of Cal.*, 972 P.2d 9, 13 (N.M. Ct. App. 1998).  In recognizing the lost chance doctrine, New Mexico law strongly links the LaSalle Defendants' conduct in Arizona with her death in New Mexico.

[18] *See* Note 16, above.

malpractice and death."), *overruled on other grounds by Chavez v. Regents of Univ. of N.M.*, 711 P.2d 883 (N.M. 1985).

> As summarized by the New Mexico Court of Appeals:

> In *Stang*, our Supreme Court [sic] cited *Hogsett*, among other cases, determining that the personal representative could recover for the injury to the decedent, namely, pain and suffering occurring before death regardless of there being no injury to the beneficiaries. [*Stang*, 463 P.2d at 55.] Our Supreme Court has further held that, in addition to pecuniary loss to the beneficiaries, a wrongful death representative may recover for the decedent's pain and suffering, which "devolves from (1) that which the victim must newly endure and (2) that which the victim may no longer enjoy." [*Romero*, 872 P.2d at 846.]

*Estate of Krahmer ex rel. Peck v. Laurel Healthcare Providers*, 2014 -NMCA- 001, ¶8, 315 P.3d 298, 300-01 (N.M. Ct. App. 2013).  In a decision last year, this Court entered judgment for a wrongful-death plaintiff and applied New Mexico law to allow her to recover noneconomic damages for the decedent's pain and suffering and lost enjoyment of life.  *Nev v. United States*, 367 F. Supp. 3d 1245, 1271-72 (D.N.M. 2019).  For these reasons, Defendants' Motion with respect to Counts Two, Seven, Eight, and Nine should be rejected.

## III.     CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Court:

  1.   DENY the LaSalle Defendants' joint Motion to Dismiss in its entirety;

  2.   Grant such further relief as this Court deems just and reasonable.

Dated:  November 16, 2020                              Respectfully submitted,

                                                      */s/ Daniel Yohalem*
                                                      Daniel Yohalem
                                                      Attorney at Law
                                                      1121 Paseo de Peralta
                                                      Santa Fe, New Mexico 87501
                                                      Phone: (505) 983-9433
                                                      Fax: (505) 989-4844
                                                      During Covid-19:  505-690-2193
                                                      daniel.yohalem@gmail.com

Katherine Murray
Attorney at Law
P.O. Box 5266
Sante Fe, New Mexico 87502
Phone: (505) 670-3943
kemurraylaw@gmail.com

Dale Melchert, *Admitted Pro Hac Vice*
Lynly Egyes, *Admitted Pro Hac Vice*
Transgender Law Center
P.O. Box 70976
Oakland, CA 94612
dale@transgenderlawcenter.org
lynly@transgenderlawcenter.org

R. Andrew Free, *Admitted Pro Hac Vice*
Law Office of R. Andrew Free
P.O. Box 90568
Nashville, TN 37209
Phone: (844) 321-3221
Fax: (615) 829-8959
andrew@immigrantcivilrights.com

Kimberly A. Evans, *Admitted Pro Hac Vice*
Grant & Eisenhofer P.A.
123 Justison Street
Wilmington, DE 19801
Phone: (302) 622-7086
Fax: (302) 622-7100
kevans@gelaw.com

Irene R. Lax, *Admitted Pro Hac Vice*
Grant & Eisenhofer P.A.
485 Lexington Avenue
New York, NY 10017
Phone: (656) 722-8512
Fax: (646) 722-8501
ilax@gelaw.com

*Counsel for the Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT on the 16th day of November, 2020, I filed the foregoing electronically through the CM/ECF system, which caused the following parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Adam D. Rafkin, Esq.
Adam D. Rafkin, P.C.
P.O. Box 1912
Ruidoso, New Mexico 88355
Phone: (575) 257-0129
Fax: (575) 257-0113
adr@rafkinlaw.com

*Attorney for Defendants LaSalle
Corrections Transport LLC, LaSalle
Corrections West LLC, and LaSalle
Management Company LLC*

Gregory D. Steinman, Esq.
Celina C. Hoffman, Esq.
Madison, Mroz, Steinman, Kenny &
    Olexy, P.A.
P.O. Box 25467
Albuquerque, New Mexico 87125
Phone: (505) 242-2177
Fax: (505) 242-7184
gds@madisonlaw.com
cch@madisonlaw.com

*Attorneys for Defendant Global Precision
Systems, LLC*

Christina Muscarella Gooch, Esq.
Alison K. Goodwin, Esq.
Sutin, Thayer & Browne, P.C.
P.O. Box 1945
Albuquerque, New Mexico 87103
(505) 883-2500
TMG@sutinfirm.com
AKG@sutinfirm.com

*Attorneys for Defendant Management &
Training Corporation*

Daniel P. Struck, Esq.
Jacob B. Lee, Esq.
Struck Love Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
Phone: (480) 420-1600
Fax: (480) 420-1696
dstruck@strucklove.com
jlee@strucklove.com

Deborah D. Wells, Esq.
Debra J. Moulton, Esq.
Kennedy, Moulton & Wells, P.C.
2201 San Pedro NE, Bldg. 3, Ste. 200
Albuquerque, New Mexico 87110
Phone: (505) 884-7887
Fax: (505) 884-7123
ddwells@kmwpc.com
dmoulton@kmwpc.com

*Attorneys for Defendants Transcor America
LLC & CoreCivic, Inc.*

/s/_____
     Daniel Yohalem