IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**Joleen K. Youngers**, as the Personal Representative of the Wrongful Death Estate of Roxsana Hernandez,

    Plaintiff,

vs.

**Management & Training Corporation,
LaSalle Corrections Transport LLC,
LaSalle Corrections West LLC,
LaSalle Management Company LLC,
Global Precision Systems LLC,
TransCor America LLC,
CoreCivic, Inc.,**

    Defendants.

NO. 20-cv-00465-JAP-JHR

**DEFENDANTS TRANSCOR'S AND CORECIVIC'S
REPLY IN SUPPORT OF MOTION FOR PARTIAL DISMISSAL**

    Plaintiff's Opposition to Defendants TransCor America, LLC's ("TransCor") and CoreCivic, Inc.'s ("CoreCivic") Motion for Partial Dismissal fails to show that the allegations in Counts One (violation of § 504 of the Rehabilitation Act), Two (negligence per se), and Fourteen and Sixteen (negligent hiring, retention, training, and supervision) are sufficient to state claims against TransCor and CoreCivic. The Court should therefore dismiss these claims for failure to state a claim. Because Plaintiff has failed to put forward additional or alternative allegations that would cure the identified deficiencies, these claims should be dismissed with prejudice.

/ / /

/ / /

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     Legal Argument**

    **A.     Plaintiff Fails to State a Claim for Violation of the Rehabilitation Act.**

Plaintiff does not dispute that the term "Federal financial assistance," as used in § 504 of the Rehabilitation Act, *see* 29 U.S.C. § 794(a), does not include "government procurement contracts—i.e., contracts in which goods or services are sold or purchased by the government at fair market value." *Jacobson v. Delta Airlines, Inc.*, 742 F.2d 1202, 1209–10 (9th Cir. 1984) (citing 45 C.F.R. § 84.3(h)). Nor does Plaintiff dispute that "[c]ourts … have consistently construed 'Federal financial assistance' to mean the federal government's provision of a subsidy to an entity, not the federal government's compensation of an entity for services provided." *Abdus-Sabur v. Hope Village, Inc.*, 221 F. Supp. 3d 3, 9–11 (D. D.C. 2016) (quoting *Lee v. Corr. Corp. of Am.*,[1] 61 F. Supp. 3d 139, 144 (D.D.C. 2014)); *Shotz v. Am. Airlines, Inc.*, 420 F.3d 1332, 1335 (11th Cir. 2005) ("Generally, 'to determine the applicability of [the Rehabilitation Act], [a court] must determine whether the government intended to give [the defendant] a subsidy,' as opposed to compensation.") (quoting *DeVargas v. Mason & Hanger–Silas Mason Co.*, 911 F.2d 1377, 1382 (10th Cir. 1990)).

Instead, Plaintiff argues that the question of whether TransCor and CoreCivic receive federal financial assistance is a fact issue that cannot be resolved on a motion to dismiss. Plaintiff is incorrect. Plaintiff's First Amended Complaint ("FAC") alleges that TransCor contracted with, and was paid by, ICE to transport Roxsana Hernandez ("Hernandez") from Albuquerque to Cibola County Correctional Center ("CCCC"). (Doc. 9 at ¶¶ 41–42.) The FAC similarly alleges that CoreCivic contracted with, and was paid by, ICE to detain Hernandez at CCCC. (Doc. 9 at ¶¶ 45–46.) The FAC further

---

[1] CoreCivic was formerly Corrections Corporation of America.

3804470

alleges that "all Defendants," including TransCor and CoreCivic, contracted with ICE "for secure transportation and/or detention of [Hernandez]," and were paid for their services. (Doc. 9 at ¶¶ 178–179.) Plaintiff has not alleged that TransCor and CoreCivic did so at anything other than fair market value. *See Jacobson*, 742 F.2d at 1209–10.

These allegations demonstrate that TransCor's and CoreCivic's contracts with ICE are procurement contracts that do not fall under the Rehabilitation Act. *Id.* Other courts have come to the same conclusion. *See Lee*, 61 F. Supp. 3d at 144 ("Although [CoreCivic] receives federal funding through its contracts with the Bureau of Prisons and U.S. Marshals Service, it does not receive 'Federal financial assistance' within the meaning of the Rehabilitation Act."); *Logan v. Corr. Corp. of Am.*, 2012 WL 2160276, at *7 (M.D. Tenn. June 12, 2012) (dismissing the plaintiff's Rehabilitation Act claim where the plaintiff failed to demonstrate that CoreCivic received federal financial assistance); *Phillips v. Tiona*, 2011 WL 2198493, at *2 (D. Colo. June 7, 2011) (dismissing the plaintiff's Rehabilitation Act claim for failing to allege CoreCivic received federal funds for a program or activity). Plaintiff has failed to distinguish these cases, or to cite to any other cases in which courts have found that TransCor and/or CoreCivic's contracts with the federal government constitute federal financial assistance under § 504.[2]

The cases Plaintiff cites in support of her argument that discovery is needed to resolve the "fact-intensive inquiry" of whether TransCor and CoreCivic receive federal

---

[2] In support of her argument against dismissal of her negligence per se claim, Plaintiff cites a March 19, 2018 report by DHS titled "Progress in Implementing 2011 PBNDS Standards and DHS PREA Requirements at Detention Facilities." (*See* https://www.dhs.gov/sites/default/files/publications/ICE%20-%20Progress%20in%20Implementing%202011%20PBNDS%20Standards%20and%20DHS%20PREA%20Requirements_0.pdf, last accessed January 22, 2021.) The report provides strong evidence that TransCor's and CoreCivic's contracts with ICE are procurement contracts, as it repeatedly states that the PBNDS were incorporated into ICE contracts with detention services providers following negotiations and bilateral contract modifications with the providers. (Id. at pp. 2–3, 7–8.)

financial assistance are distinguishable and inapplicable. In *PAS Comm'n, Inc. v. U.S. Sprint, Inc.*, 112 F. Supp. 2d 1106, 1110 (D. Kan. 2000), for example, the plaintiff specifically alleged that the defendant received government subsidies. It was in this context that the court noted that resolution of the issue would benefit from discovery. *Id*. In *Gazouski v. City of Belvidere*, No. 93–C–20157, 1993 WL 515858, at *3–*4 (N.D. Ill. Dec. 13, 1993), although the district court noted that discovery would help resolve the question of whether the defendant received federal financial assistance, it went on to grant the defendant's motion to dismiss the Rehabilitation Act claim because the plaintiff did not allege sufficient facts that, if true, would show that the defendant received such assistance. Similarly, in *Bellamy v. Roadway Exp., Inc.*, 668 F. Supp. 615, 618 (N.D. Ohio 1987), although the district court noted that discovery would help resolve the federal financial assistance issue, it then granted the defendant's motion for judgment on the pleadings where the plaintiff alleged, and the defendant admitted, that the defendant was a federal government contractor, "which means only that [the defendant] is a procurement contractor for the federal government," and not necessarily "that [the defendant] receives 'federal financial assistance' as defined in § 794."[3]

---

[3] The other cases Plaintiff cites are similarly distinguishable and inapplicable. *See Moreno v. Consolidated Rail Corp.*, 99 F.3d 782, 788 (6th Cir. 1996) (affirming judgment against the defendant following a jury trial where the defendant received federal funding to offset the costs of improvements it otherwise would have had to pay for itself); *Boswell v. SkyWest Airlines, Inc.*, 217 F. Supp. 2d 1212, 1214, 1216–19 (D. Utah 2002) (granting summary judgment for the defendant where the defendant did not receive federal financial assistance for the institution as a whole, but only for specific routes that were not at issue); *Shepherd v. U.S. Olympic Committee*, 94 F. Supp. 2d 1136, 1146–47 (D. Colo. 2000) (involving evidence on a motion for summary judgment that the defendant leased a former U.S. Air Force base for $1/year and was permitted to use other military property and equipment for less than fair market value in support of its programs); *Communities for Equity v. Mich. High School Athletic Ass'n*, 26 F. Supp. 2d 1001, 1008 (W.D. Mich. 1998) (involving conflicting evidence on a motion for summary judgment as to whether the defendant received federal funding for its programs); *Bowers*

3804470

Here, Plaintiff has not alleged that TransCor and CoreCivic received government subsidies, or that they were paid more than fair market value for their services, but specifically alleged—and TransCor and CoreCivic admitted—that these Defendants received compensation for services they provided under their contracts with ICE. (Doc. 9 and 28 at ¶¶ 41–42, 45–46, 178–179.) These allegations show that the government intended only to compensate TransCor and CoreCivic, and not to subsidize them. *See DeVargas*, 911 F.2d at 1382; *see also Jacobson*, 742 F.2d at 1209 ("[A] party is receiving Federal financial assistance only if it is benefiting in its dealings with the government to a greater extent than if it were dealing with another party.").

8 U.S.C. § 1103(a)(11)(A) authorizes DHS to enter into such contracts "for … the housing, care, and security of persons detained by the Service." Although § 1103(a)(11)(B) also mentions "cooperative agreements," Plaintiff has not alleged that ICE entered into such agreements with either TransCor or CoreCivic. Nor can she, as 31 U.S.C. § 6305 defines a cooperative agreement as one in which "the principal purpose of the relationship is to transfer a thing of value to the … recipient to carry out a public purpose of support or stimulation authorized by a law of the United States instead of acquiring (by purchase, lease, or barter) property or services for the direct benefit or use

---

*v. Nat'l Collegiate Athletic Ass'n*, 9 F. Supp. 2d 460, 467–68 (D.N.J. 1998) (involving allegations that one defendant received federal funds for its youth sports program, and that another received federal research grants in connection with a standardized educational assessment service); *Squire v. United Airlines, Inc.*, 973 F. Supp. 1004, 1009 (D. Colo. 1997) (noting, at summary judgment, that the plaintiffs had failed to show that the defendant was subsidized by federal funds, and granting summary judgment on other grounds even though the plaintiffs' argument that they should be allowed to conduct discovery on the issue of federal financial assistance was "sound"); *Gonzalez v. Development Assistance Corp.*, No. 88–0191–LFO, 1989 WL 205634, at *3 (D.D.C. June 21, 1989) (stating, without discussion or analysis, on motions to dismiss and for summary judgment that the plaintiff was entitled to discovery as to whether one defendant was a recipient of federal financial assistance).

of the United States Government." Again, Plaintiff here has alleged, and TransCor and CoreCivic have admitted, that they were compensated for services provided to ICE for the benefit of ICE, making their relationships with ICE procurement contracts, not cooperative agreements.

The fact that TransCor and CoreCivic were contractually obligated to follow certain standards and directives does not change this. In *Marks v. Colo. Dept. of Corr.*, 976 F.3d 1087 (10th Cir. 2020), the Tenth Circuit did not, as Plaintiff implies, base its decision on a "term in [the] community corrections program contract" with the county and state. Although it mentioned that the "CDCJ contract specified that any subcontractors had to adhere to CDCJ's standards," the Tenth Circuit reversed summary judgment for the state defendants because the district court did not look at whether the government defendants received federal financial assistance. *Id.* at 1095–96. In *Moreno*, the Sixth Circuit was able to consider the contract and the expert testimony that had been provided because that matter went to the Sixth Circuit from a jury verdict; the Sixth Circuit did not hold, or even suggest, that such evidence is necessary before a court can rule on the issue of federal financial assistance. 99 F.3d at 784–85. *See also DeVargas*, 911 F.2d at 1382 (considering the contract and expert testimony that were presented on summary judgment); *Mullen v. S. Denver Rehab., LLC*, No. 18-cv-01552-MEH, 2020 WL 2557501, at *10–*11, *14 (D. Colo. May 20, 2020) (considering the contract on summary judgment); *Tanberg v. Weld Co. Sheriff*, 787 F. Supp. 970, 974 (D. Colo. 1992) (considering financial reports on summary judgment and finding the federal government was subsidizing the county sheriff's department with grants, "not purchasing law enforcement services from the Department").

The allegations in the FAC fail to state a claim for violation of § 504 of the Rehabilitation Act. Because Plaintiff has also failed to argue that she could further amend

3804470

the FAC to correct these deficiencies, Count One should be dismissed with prejudice. *See Phillips*, 2011 WL 2198493 at *2 (dismissing the plaintiff's Rehabilitation Act claim with prejudice for failing to argue that the deficiency could be cured by amendment).

### B.     Plaintiff Fails to State a Claim for Negligence Per Se.

Plaintiff argues that the various policies, standards, and directives cited in the FAC have "the force and effect of statute" such that they may properly form the basis for a claim of negligence per se. *See Archibeque v. Homrich*, 543 P.2d 820, 825 (N.M. 1975) (negligence per se requires: (1) the existence of a statute or regulation that prescribes certain actions or defines a standard of conduct, either explicitly or implicitly; (2) that the defendant violated the statute or regulation; (3) that the plaintiff was in the class of persons sought to be protected by the statute or regulation; and (4) that the harm or injury to the plaintiff was generally of the type the legislature sought to prevent by passing the statute or regulation). As with her Rehabilitation Act claim, however, Plaintiff fails to support her position with proper authority.

In *Ray v. Aztec Well Service Co.*, 748 F.2d 888, 889 (10th Cir. 1984), the standards that were alleged to form the basis of the plaintiff's negligence per se claim "were adopted by the New Mexico Construction Industries Committee pursuant to its authority to 'adopt and promulgate … rules and regulations …, and thus have the force and effect of statute for purposes of the *Archibeque* test." Similarly, in *Apodaca v. AAA Gas Co.*, 73 P.3d 215, 233 (N.M. App. 2003), there was no dispute that the standards at issue were adopted by the City of Albuquerque, and "there [was] no challenge to the validity of that ordinance." The same cannot be said here.

Plaintiff argues that her negligence per se claim "is based on IHSC Directives, the PBNDS, the applicable regulations and licensing requirements, and the terms of Defendants' contracts with ICE." Plaintiff only attempts to show two such items have

3804470

7

"the force and effect of statute," however—the PBNDS and two federal regulations (although neither regulation is cited in the FAC). As such, the Court should find that the IHSC Directives, any other "applicable regulations and licensing requirements," and TransCor's and Defendants' contracts with ICE are insufficient to state a claim for negligence per se and dismiss Count Two with respect to those items. *See, e.g., Grassie v. Roswell Hosp. Corp.*, 258 P.3d 1075, 1093 (N.M. App. 2010) ("We doubt that the [contract] by itself can or should be used to set the definitive standard of conduct against which the [defendant's] action must be measured.") (citing cases).

The only "authority" Plaintiff cites for the proposition that the PBNDS is the equivalent of a statute for purposes of her claim is an alleged Congressional mandate made "pursuant to an Appropriations Bill." Close inspection of this "mandate" shows the flaws in Plaintiff's reasoning. The "mandate" comes from a report authored by the House Committee on Appropriations that accompanied H.R. 5634, an appropriations bill for DHS for the fiscal year ending September 30, 2017. (*See* https://www.congress.gov/114/crpt/hrpt668/CRPT-114hrpt668.pdf and https://www.congress.gov/114/bills/hr5634/BILLS-114hr5634rh.pdf, last accessed January 22, 2021.) Although the appropriations bill was eventually enacted as Pub. L. 115-31, the language Plaintiff quotes is nowhere to be found in the act. Indeed, neither the bill nor the act mentions the PBNDS at all. The committee report is not a statute or regulation enacted by a legislative body, nor is it a policy or standard adopted by a legislative body, and Plaintiff has cited no authority to the contrary. The Court should therefore find that the PBNDS is also insufficient to state a claim for negligence per se and dismiss Count Two with respect to it.

Even if the committee report had the force and effect of statute, such that it could potentially give a set of standards like the PBNDS the same force and effect, the language Plaintiff quotes merely directs ICE to incorporate the PBNDS into its new and existing

3804470

contracts. It does not, as Plaintiff claims, "adopt" the PBNDS such that the PBNDS may properly form the basis of a negligence per se claim.

This is borne out by the DHS report Plaintiff cites. (*See* n.2, above.) In that report, DHS noted that "[d]etention standards apply to a facility through the contract period, following negotiation between ICE and the contractor or locality operating the facility." (Report at p. 2.) DHS further stated that "ICE requested adoption of the revisions for detention facilities covered by PBNDS 2011 through a bilateral contract modification of the facility's contract," and that "application of new detention standards at any given detention facility requires negotiation with the contractor or locality operating the facility, and execution of a separate contract modification incorporating the standards into the facility's agreement with ICE." (Id. at pp. 3, 7.) Finally, DHS stated that "[t]he initial rollout of PBNDS required extensive discussions with detention facility operators regarding the new provisions prior to the contract modifications being finalized." (Id. at pp. 7–8.) Far from a federal statute or regulation that must be followed by all, these statements make it clear that the PBNDS governs contractors like TransCor and CoreCivic only to the extent they have adopted it by contract, which, as set forth above and in the underlying Motion to Dismiss, is insufficient to state a claim for negligence per se. *See Grassie*, 258 P.3d at 1093.

The federal regulations Plaintiff cites are similarly deficient. 8 C.F.R. § 287.8(d) requires that immigration detainees be "transported in a manner that ensures the safety of the persons being transported." The regulation therefore states a duty "defined only in abstract or general terms" and "do[es] no more than restate the common law standard of ordinary care," which is insufficient for a claim of negligence per se. *See Heath v. La Mariana Apartments*, 180 P.3d 664, 666–67, 669–70 (N.M. 2008) (holding such standards will not support a negligence per se instruction at trial "because they simply

3804470

9

require the jury to determine whether the defendant acted 'reasonably' or 'negligently'"). 8 C.F.R. § 235.3(e) requires that immigration detainees be housed in a facility "under contract in compliance with the Standard Statement of Work for Contract Detention Facilities." But again, contractual duties do not support a claim for negligence per se. *See Grassie*, 258 P.3d at 1093.

The allegations in the FAC fail to state a claim for negligence per se. Because Plaintiff has also failed to argue that she could further amend the FAC to correct these deficiencies, Count Two should be dismissed with prejudice. *See Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1189 (10th Cir. 2012) ("[A] dismissal with prejudice is appropriate where [the] complaint fails to state a claim ... and granting leave to amend would be futile.") (internal citations and quotations omitted).

    **C.**    **Plaintiff Fails to State Claims for Negligent Hiring, Retention, Training, and Supervision.**

In arguing against dismissal of her claims for negligent hiring, retention, training, and supervision, Plaintiff conflates those claims with her standard negligence claims (Counts Thirteen and Fifteen), which TransCor and CoreCivic have not moved to dismiss. Plaintiff also spends a significant portion of her brief arguing that TransCor and CoreCivic owed Hernandez a duty of care and knew or should have known about Hernandez's underling medication conditions, which TransCor and CoreCivic did not argue in their Motion to Dismiss. Plaintiff fails to show, however, that she has sufficiently alleged claims for negligent hiring, retention, training, and supervision against TransCor and CoreCivic.

It is irrelevant to the question currently before the Court whether Plaintiff sufficiently plead a claim for negligence. To state a claim for negligent hiring or retention, Plaintiff must allege "that the employee was unfit, considering the nature of the employment and the risk he posed to those with whom he would foreseeably associate,

and that the employer knew or should have known that the employee was unfit." *Lessard v. Coronado Paint & Decorating Center, Inc.*, 168 P.3d 155, 165 (N.M. App. 2007) (internal citations and quotations omitted). Plaintiff, however, fails to identify any allegations that show the employees involved in Hernandez's transport from Albuquerque to CCCC, and in maintaining physical custody over her after she arrived at CCCC, were unfit for their employment, and that TransCor and CoreCivic knew or should have known as much. Instead, she cites only vague and conclusory allegations that these Defendants negligently hired and retained the involved employees. But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court should therefore dismiss Plaintiff's claims for negligent hiring and retention.

To state a claim for negligent training or supervision, Plaintiff must allege that the harm to Hernandez "was caused by the [employer's] negligence in … training, … supervising, or otherwise controlling the [employee]." *Lessard*, 168 P.3d at 165 (quoting Restatement (Third) of Agency § 7.05(1) (2006)). "The proper standard for determining whether an employer should be held liable for negligent supervision or retention of an employee [is] ... whether the employer knew or reasonably should have known that some harm might be caused by the acts or omissions of the employee who is entrusted with such position." *Cain v. Champion Window Co. of Albuquerque*, 164 P.3d 90, 96 (N.M. Ap.. 2007) (internal citations and quotations omitted). Plaintiff again, however, fails to identify any allegations that show the employees involved in Hernandez's transport from Albuquerque to CCCC, and in maintaining physical custody over her after she arrived at CCCC, were negligently trained, or that or that TransCor and CoreCivic knew or should

3804470

11

have known that those employees might cause harm to Hernandez. Instead, she cites only vague and conclusory allegations that these Defendants negligently trained and supervised the involved employees, which is insufficient to state a claim. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570; *see also Linkewitz v. Robert Heath Trucking, Inc.*, No. CV 13-0420 WPL/RHS, 2013 WL 12138884, at *6 (D.N.M. Aug. 13, 2013) (finding that the plaintiff's conclusory statements that the defendant trucking company failed to properly train, monitor, and supervise the defendant truck driver "cannot suffice on their own to state a claim") (citing *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 555).[4]

The allegations Plaintiff discusses at length with regard to her claims for negligent hiring, retention, training, and supervision are relevant only to her claims for negligence and intentional infliction of emotional distress, for which TransCor and CoreCivic may potentially be vicariously liable for the actions of their employees. But "[t]he torts of negligent [hiring, retention, training, and supervision] of an employee are based on the act or omission of the employer." *F&T Co. v. Woods*, 594 P.2d 745, 747 (N.M. 1979). Plaintiff's allegations address only the actions of TransCor's and CoreCivic's employees. They say nothing about TransCor's and CoreCivic's actions with regard to the employees' hiring, retention, training, and supervision beyond conclusory allegations that do no more than restate the elements of the claims, and therefore fail to state claims.

---

[4] Rather than address *Linkewitz* head-on, Plaintiff argues that "this Court has previously rejected a similar argument made by CoreCivic, where it relied on *Linkewitz* to support the same incorrect interpretation the company advances here." CoreCivic, however, did not make identical arguments here to those it made in *Lucero v. CoreCivic*, 2019 WL 4918780, at *2 (D.N.M. Oct. 4, 2019). In *Lucero*, CoreCivic emphasized the number of incidents alleged in the complaint. Here, TransCor and CoreCivic argue that Plaintiff failed to allege any facts that would have put TransCor and CoreCivic on notice that their employees were unfit to hire and retain, and failed to assert anything more than conclusory allegations that these Defendants failed to properly train and supervise their employees.

Because Plaintiff has also failed to argue that she could further amend the FAC to correct these deficiencies, Counts Fourteen and Sixteen should be dismissed with prejudice. *See Rosenfield*, 681 F.3d at 1189.

## II.   Conclusion

For the reasons stated above and in the underlying Motion to Dismiss, Counts One, Two, Fourteen, and Sixteen should be dismissed as to TransCor and CoreCivic. Because Plaintiff has failed to provide a good-faith basis to believe that amending the FAC could cure the deficiencies, these claims should be dismissed with prejudice.

Dated:  January 22, 2021

/s/ Jacob B. Lee
Daniel P. Struck, AZ Bar No. 012377
Jacob B. Lee, AZ Bar No. 030371
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
Tel.: (480) 420-1600
Fax: (480) 420-1696
dstruck@strucklove.com
jlee@strucklove.com

Deborah D. Wells
Debra J. Moulton
KENNEDY, MOULTON & WELLS, P.C.
2201 San Pedro NE, Bldg. 3, Suite 200
Albuquerque, New Mexico 87110
Tel.: (505) 884-7887
Fax: (505) 884-7123
ddwells@kmwpc.com
dmoulton@kmwpc.com

*Attorneys for Defendants TransCor America, LLC and CoreCivic Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that on January 22, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Dale Melchert | dale@transgenderlawcenter.org |
| Irene R. Lax | ilax@gelaw.com |
| Kimberly A. Evans | kevans@gelaw.com |
| Lynly Egyes | lynly@transgenderlawcenter.org |
| R. Andrew Free | andrew@immigrantcivilrights.com |
| Daniel Yohalem | daniel.yohalem@gmail.com |
| Alison Kitchel Goodwin | akg@sutinfirm.com |
| Christina Muscarella Gooch | tmg@sutinfirm.com |
| Celina Hoffman | cch@madisonlaw.com |
| Gregory D. Steinman | gds@madisonlaw.com |
| Adam D. Rafkin | rr@rafkinlaw.com |

                                  /s/ Jacob B. Lee