## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

JOLEEN K. YOUNGERS, as the Personal
Representative of the Wrongful Death
Estate of Roxsana Hernandez,

      Plaintiff,

      vs.                                       Civ. No. 20-465 JAP/JHR

MANAGEMENT & TRAINING
CORPORATION *et al.*,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

On October 16, 2020, Defendants LaSalle Corrections Transport LLC, LaSalle Corrections West LLC, and LaSalle Management Company LLC (collectively "LaSalle Defendants") filed a MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FRCP RULE 12(b)(6) AND MEMORANDUM IN SUPPORT (Doc.23) ("Motion").[1] Specifically, Defendants LaSalle Corrections West and LaSalle Management move to dismiss with prejudice Counts I (Rehabilitation Act), II (negligence per se), VII (negligence under Arizona law), VIII (negligent hiring, retention, training, and supervision under Arizona law), and IX (intentional infliction of emotional distress under Arizona law) on statute of limitations grounds. Similarly, Defendant LaSalle Transport also moves to dismiss these counts, but instead argues that Plaintiff failed to effectuate service in accordance with Federal Rule

---

[1] The Motion is fully briefed. *See* PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS LASALLE CORRECTIONS TRANSPORT LLC, LASALLE CORRECTIONS WEST LLC, AND LASALLE MANAGEMENT COMPANY LLC'S JOINT MOTION TO DISMISS (Doc. 45) ("Response"); DEFENDANTS LASALLE'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS LASALLE'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FRCP RULE 12(b)(6) AND MEMORANDUM IN SUPPORT (Doc.49) ("Reply").

of Civil Procedure 4.  On a more substantive level, LaSalle Defendants move to dismiss with prejudice Count II (negligence per se), asserting that the alleged violations of governmental policies and procedure cannot provide a basis for this claim.  Lastly, LaSalle Defendants move to dismiss with prejudice Plaintiff's claim for punitive damages under Count I and all requested non-economic damages under Counts II, VII, VIII, and IX.  The Court will GRANT IN PART and DENY IN PART the Motion for the following reasons.

## I.    FACTUAL BACKGROUND[2]

The Court includes only the relevant fact assertions necessary to resolve the legal disputes at issue in the instant Motion.

On May 9, 2018, Roxsana Hernandez ("Hernandez"), a Honduran citizen seeking asylum, crossed into the United States at the San Ysidro Port-of-Entry in San Ysidro, California.  FIRST AMENDED COMPLAINT ¶ 1(Doc. 9) ("FAC"). [3]  Hernandez suffered from HIV and exhibited symptoms of distress from the illness.  *Id*. ¶ 47.  Nonetheless, on May 14, 2018, non-movant Defendant Management & Training Corporation transported Hernandez via bus from California to San Luis Regional Detention Center ("SLRDC") in San Luis, Arizona, at which point LaSalle Defendants, as operators of that facility, took custody of Hernandez.  *Id*. ¶ 73.  On May 15, 2018, LaSalle Defendants bussed Hernandez from SLRDC to an airport in Mesa, Arizona, where she boarded a flight bound for El Paso, Texas.  *Id*. ¶ 82.  Shortly after arriving in El Paso, non-movant

---

[2] The Court accepts as true the factual allegations in the FAC for the purposes of deciding a motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court does not, however, accept as true any legal conclusions within the FAC.  *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

[3] "On January 15, 2019, the First Judicial District Court of New Mexico appointed Plaintiff the Personal Representative of the Wrongful Death Estate of Roxsana Hernandez pursuant to 1978 NMSA, § 41-2-3. *In the Matter of the Wrongful Death Action on Behalf of the Survivors of Roxsana Hernandez, Deceased*, No. D-101-CV-2019-00075."  FAC ¶ 18.

Defendant Global Precision Systems LLC transported Hernandez, again via bus, to an ICE Criminal Alien Program facility in Albuquerque, New Mexico. *Id.* ¶ 93. Non-movant Defendant TransCor America LLC then transported Hernandez to Cibola County Detention Center ("CCDC") in Milan, New Mexico, a facility operated by non-movant Defendant CoreCivic, Inc. *Id.* ¶¶ 111, 118. Shortly after being booked into CCDC, Hernandez was transported by ambulance to Cibola General Hospital. *Id.* ¶ 134. After performing various physical examinations, Cibola General Hospital determined that it could not provide the necessary level of care and transferred Hernandez via air ambulance to Lovelace Medical Center in Albuquerque, New Mexico, where Hernandez died seven days later. *Id.* ¶¶ 136–151.

## II.   LEGAL STANDARD

A Rule 12(b)(6) motion "tests the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). In considering a Rule 12(b)(6) motion a court must "accept as true all well-pleaded factual allegations in a complaint and view [those] allegations in the light most favorable to the [non-moving party]." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). The allegations must "state a claim to relief that is plausible on its face." *Id.* (quoting *Ridge at Red Hawk L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)). "The claim is plausible only if it contains sufficient factual allegations to allow the court to reasonably infer liability." *Moya v. Garcia*, 895 F.3d 1229, 1232 (10th Cir. 2018) (citing *Iqbal*, 556 U.S. 662, 678 (2009)). The term "plausible" does not mean "likely to be true." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The factual allegations must "raise a right to relief

above the speculative level," *Twombly*, 550 U.S. at 555—i.e., "that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007). A mere "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## III.   ANALYSIS

As an initial matter, LaSalle Defendants withdraw several arguments proffered in their Motion and Plaintiff concedes another. First, Defendant LaSalle Corrections Transport abandons its request to dismiss under Federal Rule of Civil Procedure 4 Counts I, VII, and VIII, admitting that "appropriate efforts were taken to effect service." Reply 7. LaSalle Defendants also withdraw at this juncture their argument that pertinent policies and procedures cannot provide a basis for liability under Count II (negligence per se), asserting that "discovery needs to be conducted on this issue to flesh out the salient details." *Id*. For her part, "Plaintiff agrees that punitive damages are not recoverable in a claim brought under the Rehabilitation Act § 504, 29 U.S.C. § 794, per the Supreme Court's decision in *Barnes v. Gorman*, 536 U.S. 181 (2002)." Resp. 18 n.14.

With those housekeeping matters now resolved, only two issues remain: (1) whether Counts I, II, VII, VIII, and IX as brought against Defendants LaSalle West and LaSalle Management Company are barred by the applicable statute of limitations and (2) whether the applicable state law allows for recovery of non-economic damages.

### A.  Statute of Limitations

Here, the main skirmish centers around which state's limitations period applies, New Mexico's or Arizona's. Defendants LaSalle West and LaSalle Management Company maintain that Arizona's two-year limit on personal injury claims bars Counts I, II, VII, VIII, and IX, which were first pleaded against them on August 13, 2020, more than two years after Hernandez's death.

Mot. 3 (citing Ariz. Rev. Stat. Ann. § 12-542).  Plaintiff argues that New Mexico's three-year time bar governs her claims.  Resp. 4.  To reach their respective conclusions, both parties employ a conflict of law analysis.  The Court will do the same.

Because section 504 of Rehabilitation Act does not "set forth a statute of limitations, the [state] statute of limitations applies."  *See e.g., Rhodes v. Langston University*, 462 F. App'x 773, 780 n.6 (10th Cir. 2011) (unpublished).  That is, a § 504 claim "must be brought within the period prescribed by state law for personal injury actions."  *Baker v. Bd. of Regents of the State of Kan.*, 991 F.2d 628, 632 (10th Cir. 1993) (citation omitted).  Consequently, the Court's conflict of law inquiry into the statute of limitations applies both to Plaintiff's state law negligence claims and the federal claim under the Rehabilitation Act.

"When a federal court exercises subject-matter jurisdiction based on 28 U.S.C. § 1332, it applies the substantive law of the state in which it sits, including that state's choice-of-law principles."  *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1279 n.1 (10th Cir. 2021) (citing *Pepsi-Cola Bottling Co. of Pittsburg, Inc., v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005)).  Under New Mexico's choice of law rules, statutes of limitation are *procedural*, and therefore governed by the law of the forum state.  *Nez v. Forney*, 783 P.2d 471, 472 (N.M. 1989) (holding that statutes of limitation are procedural for choice of law purposes).  In New Mexico, "Actions must be brought . . . for an injury to the person or reputation of any person, within three years."  N. M. Stat. Ann. § 37–1–8; *see also id*. § 41–2–2 ("Every action instituted by virtue of the provisions of [the Wrongful Death Act] and the preceding section must be brought within three years after the cause of action accrues. The cause of action accrues as of the date of death.").

Now, turning to the FAC, which was filed on August 13, 2020, Plaintiff alleges that Hernandez died on May 25, 2018.  FAC ¶ 142.  The claims therefore accrued for approximately

twenty-seven months, well within New Mexico's three-year limitations period.  For this reason, the Court will deny Defendants LaSalle West and LaSalle Management Company's request to dismiss Counts I, II, VII, VIII, and IX on statute of limitations grounds.

### B. Non-economic Damages

However, the application of New Mexico's statute of limitations has no bearing on which state's substantive law governs. LaSalle Defendants' argument that Arizona tort law applies to Counts II, VII, VIII, and IX gains more traction here. Again, the parties agree that the Court must conduct a conflicts analysis to determine which state substantive law governs whether non-economic damages are available in this wrongful death action.  And both parties agree that, when, as here, the underlying claim is categorized as a tort, "New Mexico courts [generally] follow the doctrine of *lex loci delicti commissi*—that is, the substantive rights of the parties are governed by the law of the place where the wrong occurred."  *Terrazas v. Garland & Loman, Inc.*, 142 P.3d 374, 377 (N.M. Ct. App. 2006).  But the parties disagree on where the wrong occurred.  Plaintiff argues that the place of death, New Mexico, is where the wrong occurred.  Resp. 18–23. LaSalle Defendants counter that the wrong took place in Arizona because all of their alleged conduct occurred within its borders.  Reply 1–4.

Generally, under the *lex loci delicti* rule, the state where the wrong occurred is "the state where the last event necessary to make an actor liable for an alleged tort takes place."  *Zamora v. Smalley*, 358 P.2d 362, 363 (M.M 1961).  Where the elements of the underlying claim include harm, the place of the wrong is the place where the harm occurred.  *Torres v. State*, 894 P.2d 386, 390 (N.M. 1995) (observing that the place of the wrong is the location of the last act necessary to complete the injury).

A mechanical application of this rule leads to New Mexico law, because Hernandez died

within the state.  On the other hand, a more pragmatic approach leads to the application of Arizona law, considering that all of LaSalle Defendants' acts, i.e., the alleged wrongs, occurred within that state.  Or put another way, wrongful death is, at bottom, derivative of a negligence cause of action, and all the alleged conduct needed to establish Lasalle Defendants' liability for that common law tort occurred in Arizona.  Fortunately, two New Mexico cases provide a public policy solution for what appears to be an inoperable rule when multiple states are in play, here some as far away as California, and the decedent, who is not a domiciliary and has no ties to the forum state, dies in the forum state.

On several occasions New Mexico courts have declined to apply the place-of-the-wrong rule when public policy considerations counsel against its application.  For example, in *Torres*, a gunman killed three people in an Albuquerque bagel shop, then, the next day, boarded a bus to Los Angeles, California, where he killed two security guards at Universal Studios with the same weapon.  894 P.2d at 389.  The security guards' fathers brought a wrongful death action in New Mexico against the Albuquerque Police Department ("APD"), arguing that APD's failure to properly investigate the Albuquerque murders proximately caused the deaths of their sons in California.  *Id*.  In departing from the *lex loci delicti* rule,  the Supreme Court of New Mexico first observed the nature of the action—i.e., wrongful death "against various defendants for failure to investigate a crime in New Mexico and for failure to exercise ordinary care to prevent [the shooter] from leaving New Mexico" and not an "action against [the shooter] for the [California] murder[s]." *Id*. at 90.  Accordingly, the Supreme Court of New Mexico reasoned that "[p]ublic policy dictates that New Mexico law determine the existence of duties and immunities on the part of New Mexico officials."  *Id*. (quotation and citation omitted) (brackets in original).

Two years later, in *Estate of Gilmore*, 946 P.2d 1130, 1132 (N.M. Ct. App. 1197), the Court of Appeals of New Mexico addressed a wrongful death action stemming from a fatal motorcycle accident in Texas. The contention centered around which state's law governed beneficiary distributions: New Mexico (the decedent and his widow's domicile); Texas (the place of the wrong); Washington (domicile of decedent's children) and Idaho (domicile of decedent's mother). As with here, the *Gilmore* court had reservations about applying the *lex loci delicti* rule. In this respect, the court turned to *Torres* for guidance:

> *Torres* accepts the general rule that New Mexico courts will apply the tort law of the state where the wrong occurred. This makes sound policy sense, because the state where the wrong occurred ordinarily is the state with the greatest interest in having its law apply. This is particularly true when both the wrongful conduct and the injury occur in one state. In certain circumstances, however, another state may have a more significant interest in having its law apply. For example, when the misconduct and the injury are in separate states, there may be reasons for the law of the state of the misconduct to govern the question of the actor's liability. . . . The determining factor [in *Torres*] was that the police officers involved were New Mexico officers acting in New Mexico, so that New Mexico had a particular interest in the standard of conduct imposed on the officers.

*Id*. at 1135-36.

In sum, the *Gilmore* court interpreted "New Mexico conflict-of-law doctrine as reflecting a desire for the greater certainty presumably provided by more traditional approaches to conflict-of-laws problems, tempered by recognition that important policy considerations cannot be ignored." *Id*. at 1136. Significantly, although the *Gilmore* court ultimately applied Texas law, it "beg[an] with a strong presumption in favor of application of the place-of-the-wrong rule, but [did] not close [its] eyes to compelling policy arguments for departure from the general rule in specific

8

circumstances." *Id*. *Id*. at 1138.[4]

Turning to the instant facts, unlike *Gilmore,* strong policy considerations counsel against applying the place-of-the-wrong rule, i.e., Arizona has "a more significant interest in having its law apply" and this Court cannot "close [its] eyes to compelling policy arguments for departure from the general rule." For example, similar to *Torres*, LaSalle Defendants' alleged misconduct occurred entirely within the state of Arizona: LaSalle Defendants (1) first took custody of Hernandez at SLRDC, the facility they own and operate in San Luis, Arizona, (2) transported Hernandez from that facility by bus to a Mesa, Arizona, airport, and (3) allegedly failed to provide Hernandez with medical services in Arizona. FAC ¶¶ 73–88. And as explained by *Torres*, "[p]ublic policy dictates that [Arizona] law determine the existence of duties and immunities on the part of [Arizona]" actors. 849 P.2d at 390 (quotation omitted). Or put another way, the actors "involved were [Arizona actors] acting in [Arizona]," so Arizona has a "particular interest in the standard of conduct imposed" on them.

Additionally, an application of Arizona substantive law is further supported by reviewing New Mexico's interests, which are attenuated at best. Tellingly, LaSalle Defendants are Arizona actors, Hernandez was not domiciled in New Mexico, nor any state, has no relatives in New Mexico, and was transported here solely in accordance with the federal government's refugee

---

[4] In the years since, *Torres* and *Gilmore* have twice provided the Supreme Court of New Mexico with guidance when public policy implications outweigh a mechanical application of a traditional governing rule. *See Montano v. Frezza*, 393 P.3d 700 (N.M. 2017) (in granting comity to Texas, the court noted that, like *Torres*, the case "turns upon a Texas state employee's acts or omissions that were alleged to have occurred entirely within Texas. Thus, Texas has a comparatively strong interest in determining the duties and immunities of that employee and applying a uniform standard of liability to identical conduct by Texas employees performing their duties in Texas.") (citing *Gilmore* for same proposition); *Ferrell v. Allstate Ins. Co.*, 188 P.3d 1156, 1173 n.3 (N.M. 2008) (citing *Torres* and *Gilmore* when deviating from traditional First Restatement conflicts analysis) (noting the First Restatement is "particularly ill-suited for the complexities present in multi-state class actions. It does not allow a court to consider the competing policies of the states implicated by the suite.").

policy.  Moreover, LaSalle Defendant's did not transport Hernandez to New Mexico, rather to El Paso, Texas, via a flight from Mesa, Arizona.  The only connection that New Mexico has to the claims against LaSalle Defendants is that Hernandez died in an Albuquerque hospital.   As explained in *Gilmore*, courts "presume that a state is not interested in the most favorable result for its residents, but only that each state wants the 'just' result for its residents, with justness measured by the laws of that state."  946 P.2d at 1139.   Here, in addition to policy considerations overwhelmingly weighing against applying the place-of-the-wrong rule, the just result is also the application of Arizona law.[5]

With that said, Arizona law bars Plaintiff from recovering non-economic damages against LaSalle Defendants in this suit.  *See* Ariz. Rev. Stat. Ann. § 14-3110 (in a wrongful death action "damages for pain and suffering of such injured person shall not be allowed."); *Manion v. Ameri-*

---

[5] Plaintiff relies on *Coffey v. United States*, 870 F. Supp. 2d 1202 (D.N.M. 2012) in response to LaSalle Defendants' argument that Arizona substantive law applies.  Respectfully, that case is unpersuasive, distinguishable, and not binding on this Court.  There, the plaintiff brought a wrongful death claim under the Federal Tort Claims Act, which requires a court to apply the law of the state where the acts or omissions occurred, and not the law of the place where the tort was ultimately completed, i.e., the inverse of the place-of-the-wrong rule.  *Id*. at 1224.  In that case, the acts or omissions occurred in two states, Arizona and Nevada.  Rather than mechanically applying the substantive law of those two states, the *Coffey* court applied the conflict rules of both Arizona and Nevada, reasoning that the whole substantive law of each state applied, including conflicts rules.  *Id*. at 1224–25.  This inquiry led the court to believe that Arizona and Nevada, both of which included a place-of-the-wrong presumption, would apply New Mexico law under their respective conflict rules because that presumption was not overcome.  Notably, in the *Coffey* court's analysis, it viewed the acts and omissions alleged against the defendant, Bureau of Indian Affairs, collectively rather than in isolation, meaning because multiple negligent acts occurred in both Arizona and Nevada, each state's connection could not overcome the presumption that the place-of-the-wrong rule should apply.  *Id*. at 1226–30.  This Court disagrees that such a premise can apply to these facts, which include multiple defendants acting in multiple states.  To establish liability against LaSalle Defendants, Plaintiff needs to prove that *they* breached a duty, and *their* breach proximately caused the Hernandez's death.  It would be completely misguided to cursorily say that, because other defendants also acted in other states, Arizona's interest in this action is a wash.  Arizona clearly has an interest in the acts or omissions committed within its state by actors solely operating within its state.  Furthermore, the Bureau of Indian Affairs operates in both Arizona and Nevada, which is why the court considered the BIA's acts in the entirety. Here, as alleged in the FAC, Lasalle Defendants operate only in Arizona.  Lastly, the *Coffey* court's conflicts analysis was guided by Arizona and Nevada substantive law, not New Mexico's.  Clearly, *Coffey* in inapposite to the facts of this case.

*Can Freight Sys. Inc.*, 391 F. Supp. 3d 888, 892 (D. Ariz. 2019) (recognizing Arizona's bar on damages for pain and suffering in a wrongful death action).  Consequently, the Court will grant LaSalle Defendants' request to dismiss with prejudice Plaintiff's ancillary requests for non-economic damages under Counts II, VII, and VIII.  The Court will also dismiss with prejudice Count IX (intention infliction of emotional distress) in its entirety.[6]

## IV.    CONCLUSION

Because statutes of limitation are procedural under New Mexico's choice of law rules, Plaintiff's claims against Defendants LaSalle Corrections West and LaSalle Management are not time-barred by Arizona's two-year limitations period.  Moreover, because Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, does not allow for punitive damages—a point Plaintiff concedes—the Court must dismiss with prejudice her request for that relief under Count I.  Finally, because policy considerations outweigh the place-of-the-wrong rule, a New Mexico court would apply the substantive law of Arizona to Counts II, VII, VIII, and IX, which bars Plaintiff from recovering non-economic damages on behalf of Hernandez.

IT IS ORDERED THAT

1. LaSalle Defendants' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FRCP RULE 12(b)(6) AND MEMORANDUM IN SUPPORT (Doc. 23) is GRANTED IN PART and DENIED IN PART;

2. LaSalle Defendants' Motion to Dismiss with prejudice Plaintiff's punitive damages

---

[6] Because the Court concludes that Arizona law applies to Plaintiff's claims against LaSalle Defendants, it will not address LaSalle Defendants' argument regarding judicial estoppel.  *See* Reply 8–14.  In essence, LaSalle Defendants argue that Plaintiff explicitly pleaded negligence under Arizona law (and several other states that correspond to the respective defendants), therefore she should be estopped from changing theories in briefing.  *See* Reply 8–11.

request under Count I is GRANTED;

3.  LaSalle Defendants' Motion to Dismiss with prejudice Plaintiff's non-economic damages request under Count's II, VII, and VIII is GRANTED;

4.  LaSalle Defendants' Motion to Dismiss with prejudice Count IX is GRANTED; and

5.  LaSalle Defendants' Motion is DENIED in all other respects.

SENIOR UNITED STATES DISTRICT JUDGE