# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JOLEEN K. YOUNGERS,
as the Personal Representative of the
Wrongful Death Estate of Roxsana Hernandez,

    Plaintiff,

v.                                                                                      Case No. 20-cv-00465-WJ-JHR

MANAGEMENT & TRAINING CORPORATION,
LASALLE CORRECTIONS TRANSPORT LLC,
LASALLE CORRECTIONS WEST LLC,
LASALLE MANAGEMENT COMPANY LLC,
GLOBAL PRECISION SYSTEMS LLC,
TRANSCOR AMERICA LLC, and
CORECIVIC, INC.,

    Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR RECONSIDERATION OF APRIL 19, 2021 COURT ORDER AND FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND TO JOIN DEFENDANT UNITED STATES TO ACTION**

THIS MATTER comes before the Court upon Plaintiff's Motion for Reconsideration of April 19, 2021 Court Order and for Leave to File Second Amended Complaint and to Join Defendant United States to Action ("Motion"), filed May 12, 2021 (Doc. 65). Defendants TransCor America, LLC ("TransCor") and CoreCivic, Inc. ("CoreCivic") oppose reconsideration and amendment but take no position on the addition of the United States as a defendant. (Doc. 77). Defendant Global Precision Systems, LLC ("GPS") opposes Plaintiff's "attempts to revive her claims pursuant to Section 504 of the Rehabilitation Act" but takes no position on Plaintiff's other claims or on the addition of the United States as a defendant. (Doc. 76). Having reviewed the parties' submissions and the applicable law, the Court finds that Plaintiff's Motion is not well-

taken as to reconsideration. As to amendment, the Motion is well-taken in part. Accordingly, the Court hereby **GRANTS IN PART AND DENIES IN PART** the Motion as described in more detail below.

## BACKGROUND

After the death of HIV-positive transgender asylum seeker Roxsana Hernandez, Plaintiff, in her capacity as Personal Representative of the Estate of Roxana Hernandez, filed suit on May 13, 2020 against several government contractors[1] allegedly involved in Ms. Hernandez's transport and detention. Three months later, on August 13, 2020, Plaintiff filed her First Amended Complaint (Doc. 9), which added LaSalle Management Company LLC and LaSalle Corrections West LLC as defendants.[2] The New Mexico Defendants filed a 12(b)(6) motion for partial dismissal (Doc. 32), which Senior U.S. District Judge James A. Parker granted in part (Doc. 58). This order dismissed Counts One, Two, Fourteen (partially), and Sixteen against the New Mexico Defendants in the First Amended Complaint, and it did so with prejudice based on Plaintiff's failure to request leave to amend her complaint if the New Mexico Defendants' Motion was granted. (Doc. 58 at 11, 16).

Plaintiff's current Motion seeks partial reconsideration of this order—specifically, that the dismissal with prejudice of Counts One (in whole) and Sixteen (in part, as it relates to negligent training and supervision by CoreCivic) be changed to a dismissal *without* prejudice so that Plaintiff may re-plead these counts with additional facts to cure the deficiencies the Court identified.[3]

---

[1] Management and Training Corporation ("MTC"), LaSalle Corrections Transport LLC, Global Precision Systems LLC ("GPS"), TransCor America LLC ("TransCor"), and CoreCivic, Inc. ("CoreCivic"). Plaintiff and MTC stipulated to dismiss MTC without prejudice after MTC submitted a declaration "stating under oath that it ha[d] no record or knowledge that it ever transported, detained, or had custody of Roxsana Hernandez during the time period covered by Plaintiff's First Amended Complaint." (Doc. 74 at 1). The Court therefore dismissed MTC without prejudice on June 1, 2021. (Doc. 75).
[2] These two defendants, together with LaSalle Corrections Transport LLC, comprise the "LaSalle Defendants."
[3] As to the other dismissed counts (Count Two, the partial dismissal of Count Fourteen, and the negligent hiring and retention claims in Count Sixteen), Plaintiff does not seek reconsideration. (Doc. 65 at 3).

Additionally, Plaintiff seeks to file a Second Amended Complaint that alleges new facts and legal theories. (Doc. 65 at 3). She also initially sought to add the United States as a defendant. *Id.* However, due to various complications with the administrative exhaustion period and statutes of limitations on different claims, Plaintiff sued the United States separately during the pendency of her motion. (Doc. 91 at 1 n.1). Therefore, instead of joining the United States, Plaintiff now seeks to consolidate this action with the action against the United States. (Doc. 103).

## DISCUSSION

### I. Motion for Reconsideration

#### A. Legal Standard

A motion to reconsider is an "interlocutory motion[s] invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment." *Fye v. Oklahoma Corp. Comm'n*, 516 F.3d 1217, 1223 n.2 (10th Cir. 2008). Federal Rule of Civil Procedure 54(b) outlines this authority and provides that "any order or other decision, however designated, that adjudicates fewer than all of the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."

When ruling on a motion for reconsideration, a district court "is not bound by the strict standards for altering or amending a judgment encompassed in Federal Rules of Civil Procedure 59(e) and 60(b)." *Fye*, 516 F.3d at 1223 n.2. However, although it is in no way required, some courts have chosen to consider those standards to guide their discretionary decisions. *See, e.g., Ankeney v. Zavaras*, 524 Fed. App'x 454, 458 (10th Cir. 2013) (court may look to Rule 59(e)); *Montano v. Chao*, Civil Action No. 07-cv-00735, 2008 WL 4427087, *5–7 (D. Colo. Sept. 28, 2008) (looking to Rule 60(b)). Under Rule 59(e), "a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Servants*

*of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). When an intervening change in controlling law has occurred, previously unavailable new evidence has arisen, or there is a "need to correct clear error or prevent manifest injustice," reconsideration is appropriate. *Id.*

    B. *Failure to Request Leave to Amend*

Plaintiff seeks reconsideration because two of her counts were dismissed with prejudice; she seeks that the counts instead be dismissed *without* prejudice. Her rationale is that the Court dismissed those counts with prejudice "solely based on Plaintiff's failure to request leave to amend in Plaintiff's Opposition Motion in the event that Defendants' Motion was granted." (Doc. 65 at 4). Plaintiff contends that her failure to plead the right to amend was "inadvertent, not substantive in nature, and did not pertain to the merits of the case." *Id.* at 5. Further, for the first time in reply (Doc. 91 at 3), Plaintiff adds that she *did* request leave to amend in Doc. 48 at 22 when she stated, "To the extent the Court finds any deficiencies in the pleadings, Plaintiff respectively seeks leave to amend the FAC in order to address any such deficiencies." The Court's Order states that Plaintiff did not request leave to amend. (Doc. 58 at 11).

As a preliminary matter, arguments made for the first time in a reply brief are waived. *Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016). However, even if Plaintiff had argued from the outset that her general request for leave to amend was sufficient to warrant dismissal of her claims *without* prejudice, the law does not support her argument. In *Glenn v. First National Bank in Grand Junction*, the defendants filed a motion to dismiss, and the plaintiffs argued in their response that defendants should be made to "answer, or, in the alternative," that the court grant the plaintiffs leave to amend their complaint to address the failings the court identified. 868 F.2d 368, 370 (10th Cir. 1989). The Tenth Circuit found that such a request was not a motion for leave to amend, that it did not state with particularity the grounds for the request as required by Federal

4

Rule of Civil Procedure 7(b), and that plaintiffs had fired a "mere 'shot in the dark.'" *Id.; see also Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1283 (10th Cir. 2021) (citing *Glenn* positively for this holding). This precedent supports a finding that Judge Parker did not commit clear error in dismissing Counts One and Sixteen against the New Mexico Defendants with prejudice based upon failure to request leave to amend.

### C. New, Previously Unavailable Evidence

The advisory Rule 59(e) standard also permits reconsideration based on a change in the law or the discovery of previously unavailable facts. Plaintiff mentions no change in the law. Regarding previously unavailable new evidence, Plaintiff asserts that she has collected additional facts to support the dismissed counts. (Doc. 65 at 5). Of these additional facts, not all were unavailable at the time of her First Amended Complaint. Only the newly discovered facts have bearing upon a motion to reconsider. Relevant here is Plaintiff's discovery that ICE granted waivers[4] to Defendants, which Plaintiff only learned in April of 2021. (Doc. 91 at 6). Plaintiff argues that these waivers are subsidies for the purposes of the Rehabilitation Act.[5] *Id.* at 8.

The issue of whether waiving ICE requirements for a private contractor constitutes a subsidy by way of the saved cost of compliance is a novel one. No party has brought forth a case directly on point. The Court considers the argument on the merits for other defendants below, but reconsideration of the claims against the New Mexico Defendants turns on the timing of this information. Plaintiff has not made it clear that the information about ICE waivers was *unavailable* before April of 2021; she states only that she did not learn about the waivers until then. *See* Doc. 91 at 6. Plaintiff, as the proponent of the motion, bears the burden of demonstrating that

---

[4] ICE has a waiver program which allows its contractors to apply for waivers from the Performance Based National Detention Standards (PBNDS), which would otherwise apply to the contractors' operations. (Doc. 65 at 7–8).
[5] The issue of waivers relates only to the Rehabilitation Act, that is, Count One. No new, previously unavailable evidence is on the table regarding Count Sixteen.

reconsideration is proper. *See Kruskal v. Martinez*, 429 F. Supp. 3d 1012, 1026 (D.N.M. 2019). She has identified delays in obtaining pertinent information through the Freedom of Information Act (FOIA) process (Doc. 65 at 14 n.8), but she does not specify whether the FOIA issues pertained to the ICE waivers. Accordingly, Plaintiff has not met her burden on the motion to reconsider by definitively bringing new, previously unavailable evidence to light.

    D. *Manifest Injustice*

Finally, Plaintiff highlights the issue of manifest injustice. Plaintiff argues that the "gravity of the dismissal of Plaintiff's claims" weighed against "the prejudice caused by Plaintiff's inadvertent failure to plead the right to amend" warrants reconsideration. (Doc. 65 at 4). Plaintiff explains that the case involves a "horrific" death under "dehumanizing, degrading, cruel, and torturous" conditions which, essentially, dwarfs the necessity for perfect procedural compliance by Plaintiff's counsel. (Doc. 91 at 3–4).

The bleak facts alleged in this case draw the Court's sympathy. Certainly, in common parlance, the tragic loss of life is always a manifest injustice. However, the Court bases its decision upon the legal definition of "manifest injustice."[6] While the Tenth Circuit has not yet defined this term as it pertains to a motion for reconsideration, courts in this circuit have used the standard of a "direct, obvious, and observable error in a trial court," *Petrie v. GoSmith, Inc.*, Civil Action No. 18-cv-01528, 2019 WL 3215983, at *4 (D. Colo. July 17, 2019), a bar over which the moving party may only prevail "if it demonstrates that the injustice from the case is apparent to the point of being indisputable," *id.*, and a record "so patently unfair and tainted that the error is manifestly clear to all who view it," *Navarette v. Corizon LLC*, No. 18-cv-0057, 2020 WL 209317, at *2

---

[6] The Court notes that Defendants TransCor and CoreCivic, too, appear to consider only the plain-language definition of "manifest injustice" rather than the legal definition. *See* Doc. 77 at 5. Defendants cite no authority to support the proposition that the dismissal of certain claims may not constitute manifest injustice simply because other claims remain intact.

(D.N.M. Jan. 14, 2020) (ruling on a Rule 59(e) motion). Given that Plaintiff has been represented by counsel throughout the litigation and had notice that Defendants sought dismissal with prejudice, she knew what the stakes would be if she did not prevail. That those consequences came to be, while it may certainly sting, is not an "injustice . . . apparent to the point of being indisputable." *Petrie*, 2019 WL at *4.

    *E.  General Discretion and Conclusion*

As discussed above, the standards of Rule 59(e) merely guide the Court in this decision, not bind it. *Fye*, 516 F.3d at 1223 n.2. The Court retains general discretionary authority to reconsider orders before the entry of final judgment. *Id.* Nevertheless, the standards of Rule 59(e) serve a valuable advisory purpose, and the Court will follow them here. Because Plaintiff's request for leave to amend was insufficiently specific, no newly discovered facts have arisen related to Counts One or Sixteen, and no manifest injustice will result following the dismissal with prejudice, Plaintiff's Motion to Reconsider is **DENIED**.

    **II.**    **Motion to File Second Amended Complaint**

A plaintiff may amend her complaint once as a matter of course, after which the plaintiff must seek consent from the opposing party or leave of the court. Fed. R. Civ. P. 15(a). "The court should freely give leave when justice so requires." *Id.* The motivation underlying this rule is to "provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quotation omitted). However, a court may deny leave based on reasons such as undue delay, bad faith, undue prejudice to the opposing party, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim." *Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999).

The district court's decision is discretionary. *See Cohen v. Longshore*, 621 F.3d 1311, 1314 (10th Cir. 2010) (court of appeals generally reviews "for abuse of discretion a district court's denial of leave to amend a complaint").

Plaintiff here seeks to amend in a variety of ways—to correct deficiencies in Count One, to correct deficiencies in Count Sixteen, and to add claims against the United States.

 A.  *Count One*

As described above, the Court has declined to reconsider its dismissal of Count One against the New Mexico Defendants. Accordingly, any amendment of Count One as to these defendants would be futile. However, Count One remains intact against Defendant GPS and the LaSalle Defendants.[7] Plaintiff's original argument was that these defendants were subject to the Rehabilitation Act because they received Federal financial assistance, *see* Doc. 58 at 5 (order addressing this issue and noting subsidy requirement), and she now seeks to bring new facts to support this claim. Plaintiff also, separately, seeks to bring two new legal arguments under the Rehabilitation Act.

 1.  *Plaintiff's Federal Financial Assistance Argument*

Regarding her existing legal theory—that the Contractor Defendants received Federal financial assistance, thereby bringing them within the purview of the Rehabilitation Act—Plaintiff seeks to allege "that the Contractor Defendants received federal subsidies for participating in the STP program." (Doc. 65 at 7). Plaintiff asserts that ICE waived certain Performance Based National Detention Standards (PBNDS) for the San Luis Regional Detention Center and the El

---

[7] Defendant GPS has moved to dismiss Count One (Doc. 63), but GPS and Plaintiff have agreed to extend the timeline for briefing on this motion until after the Court rules on the present Motion to Reconsider. (Doc. 83). Against the LaSalle Defendants, Count One persists, but Plaintiff has conceded that punitive damages are not recoverable under the Rehabilitation Act pursuant to *Barnes v. Gorman*, 536 U.S. 181 (2002). (Doc. 57 at 4, 11–12). Defendant MTC has been dismissed from the action without prejudice. (Doc. 75).

Paso Service Processing Center—facilities that LaSalle and GPS ran at the time Ms. Hernandez was detained there. *Id.* at 8 n.4. Plaintiff characterizes these waivers as a subsidy, and therefore Federal financial assistance under Section 504 of the Rehabilitation Act, because they relieve the contractors of the obligation to pay the costs of complying with these conditions. *Id.* at 8.

Plaintiff's argument is novel; the parties have not identified, and the Court has not found, any case directly on point. Plaintiff cites to one case involving a waiver of minimum wage requirements at a detention facility that allowed the defendant contractor to profit as a result of decreased labor costs. *See Romero-Garcia v. CoreCivic, Inc.*, Case No. 4:20-cv-00158, 2021 WL 2910571, at *4 (M.D. Ga. June 25, 2021) (plaintiff's assertion that Defendant CoreCivic was authorized to employ detainees "at wages far, far below market rates" resulted in "a significant financial benefit" to Defendant and, along with direct payments from the United States, constituted a sufficient allegation of Federal financial assistance).

The test for Federal financial assistance under the Rehabilitation Act is "whether the government intended to give . . . a subsidy." *DeVargas v. Mason & Hanger-Silas Mason Co., Inc.*, 911 F.2d 1377, 1382 (10th Cir. 1990). ICE's waivers do not clearly demonstrate an intent to subsidize. The waiver at San Luis Regional Detention Center is simply labeled "Dental Screening," and the ones at El Paso Service Processing Center are "Does Not Have Floor Drains in the Hold Room," "Hold Rooms," and "Medical Records," respectively. *See ERO Custody Management Division Inspection Waiver Master File*, U.S. Immigration and Customs Enforcement Facility Inspections (2019), https://www.ice.gov/doclib/facilityInspections/2019waivers.xlsx. Allowing contractors to refrain from spending the money it takes to comply with these requirements is not the same thing as intending to *give* the contractors an affirmative subsidy.

To be sure, PBNDS waivers likely allow contractors to save on costs. But the key difference between Federal financial assistance and the cost savings associated with a waiver is whose money the private contractor pockets at the end of the day. Federal financial assistance, or a subsidy, involves the payment of federal money. The Rehabilitation Act does not allow the recipients of this federal money to discriminate against people with disabilities. *See U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 605 (1986) (Section 504 coverage is "a form of contractual cost of the recipient's agreement to *accept the federal funds*.") (emphasis added); *Consol. Rail Corp. v. Darrone*, 465 U.S. 624, 633 (1984) (referring to Section 504's "prohibition against discrimination in employment by programs *assisted with federal funds*") (emphasis added). A waiver is different; it frees up how a private contractor may spend *its own* money.

Furthermore, *Romero-Garcia* is distinguishable. There, in addition to a waiver of minimum wage requirements, the United States paid the contractor defendant "a stipend of $1.00 per day for each detainee who participate[d] in the Voluntary Work Program"—an affirmative payment of federal money beyond mere compensation under a procurement contract. 2021 WL at *4. This payment separates the facts in *Romero-Garcia* from a pure waiver of obligations regarding the conditions of the facility.

Respectful of these distinctions, the Court declines to allow an amendment to include this argument because it would be subject to dismissal.

2. *Plaintiff's Executive Agency Argument*

Plaintiff also makes a novel argument supported by a law review article. *See* Margo Schlanger, *Narrowing the Remedial Gap: Damages for Disability Discrimination in Outsourced Federal Programs*, The University of Chicago Law Review Online (2021), https://lawreviewblog.uchicago.edu/2021/03/05/Schlanger-Detention/ (last visited Nov. 2, 2021).

The argument, in short, is that the Contractor Defendants worked together with ICE to conduct the Streamlined Transfer Program. Since this program was "conducted" by ICE, an Executive agency, it fits under the plain language of Section 504's coverage, which forbids discrimination "under any program or activity conducted by any Executive agency." While the Executive agencies themselves are shielded from suits for damages by sovereign immunity, *Lane v. Pena*, 518 U.S. 187 (1996), the private contractors who perpetrate discrimination under these programs have no such protection. *See* Doc. 91 at 11.

This engaging argument is almost[8] completely untested. However, the Court must take a step back and consider an underlying issue first: the text of the Rehabilitation Act's remedies provision. 29 U.S.C. § 794a(a)(2) grants a private right of action to "any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 504 of this Act." This language does not expressly include any cause of action or remedy at all for those aggrieved under programs conducted by an Executive agency, the prong Plaintiffs seek to use. This fundamental question—whether *any* right of action exists under this prong, even against the agencies themselves—must be addressed before considering Plaintiff's argument about adding private contractors into the mix.

The Supreme Court has addressed this issue only obliquely. *Lane* found that this language was not enough to abrogate the federal government's sovereign immunity—essentially assuming without deciding that a cause of action existed under this prong and skipping right to the sovereign immunity question. 518 U.S. at 197; *see Cooke v. U.S. Bureau of Prisons*, 926 F. Supp. 2d 720, 731 (E.D.N.C. 2013). As a result of the Supreme Court's ambiguous approach, courts are split

---

[8] The Court knows of only one case—unpublished and from a district outside of this circuit—that has discussed this legal theory. *See Mathis v. GEO Group, Inc.*, No. 2:08-CT-21-D, 2009 U.S. Dist. LEXIS 132301 (E.D.N.C. Nov. 9, 2009).

regarding whether any private right of action exists under the Executive agency prong, even in suits against the agencies themselves. Some courts argue that no such private right of action exists, while others argue in favor of the possibility since *Lane* dealt only with federal sovereign immunity from damages and may have left open a private right of action for other kinds of relief. *See De Dandrade v. U.S. Dep't of Homeland Sec.*, 367 F. Supp. 3d 174, 190 (S.D.N.Y. 2019) (collecting cases). The Tenth Circuit has not yet ruled on the issue. *See Bacote v. Fed. Bureau of Prisons*, No. 17-cv-03111, 2021 WL 248808, at *9 (D. Colo. Jan. 26, 2021).

In the absence of Tenth Circuit guidance, this Court is inclined to follow the plain text of the remedial provision, which makes no mention of a private right of action or remedy based on discrimination under the Executive agency prong. The Court therefore does not reach the novel question of whether the Executive agency prong covers private contractors who conduct federal programs alongside an Executive agency. It is a thought-provoking argument, but to consider it without solid precedential footing on the right of action issue puts the cart before the horse.

3. *Plaintiff's Argument Regarding Perception of Disability*

Plaintiff also seeks to amend her legal theory behind Count One by asserting that not only did the Contractor Defendants discriminate against Ms. Hernandez based on her positive HIV status—a known disability—but they also did so based on their perception that her transgender status constituted a disability. (Doc. 65 at 10). If Plaintiff's remaining Count One claims survive the Federal financial assistance hurdle, this argument is not futile. The Rehabilitation Act permits suits based on perception of disability. 29 U.S.C. § 705(9)(B) (defining "disability" using 42 U.S.C. § 12102 for the purposes of Subchapter V, in which Section 504 of the Rehabilitation Act is located); 42 U.S.C. § 12102(1) (including within the definition of disability having "a physical

or mental impairment that substantially limits one or more major life activities of such individual" as well as "being regarded as having such an impairment").

Nor is the addition of this new legal theory unduly prejudicial. Courts have found prejudice, and therefore denied leave to amend, when an amendment adds an "entirely new and different claim" arising out of separate facts. *Minter*, 451 U.S. at 1208 (citation omitted). However, when plaintiffs have amended to add new legal theories under the same set of facts, or even new claims based on the same facts as existing claims, undue prejudice may be less of a concern. *See id.* (allowing an alteration product liability claim added by amendment because it was closely related to facts of existing negligence claim). Plaintiff's perception-of-disability theory comes under a claim already pled, is related to the facts already alleged, and does not result in an unfair surprise to Defendants. Therefore, Plaintiff may amend to include this argument.

### B. Count Sixteen

The Court denied Plaintiff's Motion to Reconsider with respect to Count Sixteen. This Count was issued only against CoreCivic, so the original dismissal eliminated the claim completely, and the Court has declined to revive it. Therefore, an amendment to bolster Count Sixteen with additional facts would be futile.

### C. Claims Against the United States

Due to issues regarding administrative exhaustion and conflicting statutes of limitation, Plaintiff filed a separate lawsuit against the United States alleging the relevant claims in her proposed Second Amended Complaint. (Doc. 91 at 1 n.1). Because the Court has granted her motion to consolidate with *Youngers v. United States*, Case No. 1:21-cv-00620-WJ-JFR (D.N.M.), Plaintiff may include her claims against the United States in her Second Amended Complaint.

## CONCLUSION

In summary:

Plaintiff's Motion to Reconsider is denied.

Plaintiff's Motion to Amend is granted in part. Count One applies only against the LaSalle Defendants and GPS. Plaintiff may add information related to the legal theory that employees of those defendants discriminated against Ms. Hernandez based on their perception that she had a disability due to her transgender status. In addition, because this Court granted the Motion to Consolidate in the companion case, Plaintiff may add her claims against the United States.

The other amendments would be futile. Specifically, Plaintiff may not add facts pertaining to the PBNDS waivers because they are insufficient to establish Federal financial assistance, nor may she add information about GPS's minority-owned business status as a potential source of subsidy. She may not add the new legal theory regarding the Executive agency prong of Section 504 due to insufficient Tenth Circuit support for a private right of action under that prong. She may not add the new facts supporting Count Sixteen because that Count remains dismissed with prejudice.

Plaintiff shall file a Second Amended Complaint that comports with the Court's ruling within THREE WEEKS of the entry of this order.

**IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE