# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JOLEEN K. YOUNGERS, as the Personal
Representative of the Wrongful Death
Estate of Roxana Hernandez,

    Plaintiff,

v.                                                         Case No. 1:20-cv-00465-WJ-JHR

LASALLE CORRECTIONS TRANSPORT LLC,
LASALLE CORRECTIONS WEST LLC,
LASALLE MANAGEMENT COMPANY LLC,
GLOBAL PRECISION SYSTEMS LLC,
TRANSCOR AMERICA LLC,
CORECIVIC, INC., and
THE UNITED STATES OF AMERICA,

    Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART LASALLE DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT [Doc. 123]**

THIS MATTER comes before the Court upon motion by Defendants LaSalle Corrections Transport LLC, LaSalle Corrections West LLC, and LaSalle Management Company LLC (together, the "LaSalle Defendants"). The LaSalle Defendants filed their Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 111) for Failure to State a Claim Upon Which Relief Can Be Granted Pursuant to FRCP Rule 12(b)(6) and Memorandum in Support ("Motion") on January 31, 2022 (Doc. 123). Having carefully reviewed the parties' submissions and the applicable law, the Court GRANTS IN PART AND DENIES IN PART the Motion.

## BACKGROUND

After the death of HIV-positive transgender asylum seeker Roxsana Hernandez, Plaintiff, in her capacity as Personal Representative of the Estate of Roxana Hernandez, filed suit on May

13, 2020 against several government contractors[1] allegedly involved in Ms. Hernandez's transport and detention. Three months later, on August 13, 2020, Plaintiff filed her First Amended Complaint ("FAC") (Doc. 9), which added LaSalle Management Company LLC and LaSalle Corrections West LLC as defendants.

The LaSalle Defendants moved to dismiss the FAC on October 16, 2020 (Doc. 23). Senior U.S. District Judge James A. Parker granted that motion in part on April 19, 2021 (Doc. 57). He dismissed the request for punitive damages in Count I (Rehabilitation Act), the requests for non-economic damages in Counts II, VII, and VIII (negligence per se; negligence; and negligent hiring, retention, training, and supervision, respectively), and Count IX entirely (intentional infliction of emotional distress) against the LaSalle Defendants. *Id.*

Plaintiff moved for reconsideration of the dismissal *with* prejudice, seeking for it to be converted to a dismissal without prejudice so that she might re-plead the dismissed counts. Doc. 65. In the same motion, she sought leave to file a second amended complaint and to add the United States as a defendant or, subsequently, consolidate the separate suit she had filed against the United States based on statute of limitation concerns. *See id.*; Doc. 91 at 1 n.1. The case was then transferred to Chief U.S. District Judge William P. Johnson. Doc. 95. Judge Johnson denied reconsideration but permitted filing of a second amended complaint and addition of the United States as a defendant. Doc. 109.

---

[1] Management and Training Corporation ("MTC"), LaSalle Corrections Transport LLC, Global Precision Systems LLC ("GPS"), TransCor America LLC ("TransCor"), and CoreCivic, Inc. ("CoreCivic"). Plaintiff and MTC stipulated to dismiss MTC without prejudice after MTC submitted a declaration "stating under oath that it ha[d] no record or knowledge that it ever transported, detained, or had custody of Roxsana Hernandez during the time period covered by Plaintiff's First Amended Complaint." (Doc. 74 at 1). The Court therefore dismissed MTC without prejudice on June 1, 2021. (Doc. 75).

Plaintiff filed her Second Amended Complaint ("SAC") on January 3, 2022 (Doc. 111). The LaSalle Defendants have moved to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 123).

## DISCUSSION

The Motion raises a variety of arguments. The Court will address each in turn.

### I.     Choice of Law

The LaSalle Defendants argue that Judge Parker's choice of law analysis for the FAC remains accurate. Doc. 123 at 6. This interpretation applied New Mexico procedural and Arizona substantive law. *Id.* However, the LaSalle Defendants do state that if the Court decides that Judge Parker's ruling does not represent the law of the case, they move to dismiss certain claims based on Arizona procedural law's shorter statute of limitations. *Id.* Plaintiff argues that because the SAC alleges new facts, New Mexico procedural *and substantive* law apply. Doc. 134 at 3–4.

The first matter to address in this respect is whether Judge Parker's rulings represent the "law of the case." This doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Copart, Inc. v. Admin. Review Bd., U.S. Dep't of Labor*, 495 F.3d 1197, 1200 (10th Cir. 2007) (citation omitted). The purpose of such a doctrine is to conserve judicial resources by refraining from re-litigating matters already decided. *Id.* But it does not limit the district court's power to reconsider its prior orders before entry of final judgment, and when a case is transferred, a new judge is not bound to prior rulings by the prior judge unless prejudice would befall the party seeking to apply the doctrine. *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011) (citations omitted). Here, there is a new complaint that pleads new facts, and it would not prejudice the LaSalle Defendants—who seek to apply the law of the case doctrine—to consider whether the new facts

3

change the law that applies to the claims at issue. However, while Judge Parker's analysis is not binding on this Court, it remains correct and the Court reaches the same conclusions.

A federal court exercising diversity jurisdiction[2] applies federal procedural and state substantive law. *See generally Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Choice of law rules are substantive and therefore governed by the state in which the federal court sits. *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1278 n.1 (10th Cir. 2021) (citation omitted). The parties agree with Judge Parker's assessment that New Mexico's choice of law rules apply. Doc. 123 at 3; Doc. 134 at 4. New Mexico's choice of law rules classify statutes of limitation as procedural matters governed by the law of the forum state. *Nez v. Forney*, 783 P.2d 471, 472 (N.M. 1989). Therefore, New Mexico's three-year statute of limitations applies, and Plaintiff's claims are not subject to dismissal on this ground. *See* N.M.S.A. §§ 37-1-8, 41-2-2 (three-year statute of limitations for personal injury and wrongful death). To the extent the LaSalle Defendants move to dismiss based on Arizona's statute of limitations, the motion is denied.

The substantive law is more complex, but Judge Parker's analysis again proves persuasive. For tortious wrongdoing, New Mexico applies the *lex loci delicti*, or "place of the wrong," rule: the place where the wrongdoing occurred generates the substantive law. *Torres v. State*, 894 P.2d 386, 390 (N.M. 1995). When a complaint alleges tortious conduct in multiple locations, the court relies upon the place where the last act necessary to complete the injury occurred. *Id.* Plaintiff contends that Ms. Hernandez's death in New Mexico was the last necessary act, while the LaSalle Defendants argue that all allegations of their wrongdoing for Counts 1, 3, 4, and 5 are based in

---

[2] Count I (Rehabilitation Act) involves a federal question. However, as Judge Parker noted, Section 504 of the Rehabilitation Act does not include a statute of limitations; it relies on the state law statute of limitations for personal injury actions. *See* Doc. 57 at 5 (citing *Rhodes v. Langston Univ.*, 462 F. App'x 773, 780 n.6 (10th Cir. 2011) (unpublished); *Baker v. Bd. of Regents of the State of Kan.*, 991 F.2d 628, 632 (10th Cir. 1993)).

4

Arizona with the exception of a two hour drive in California. A similar dispute occurred before Judge Parker, and he ruled that public policy considerations counseled against a rigid application of the *lex loci delicti* rule: although Ms. Hernandez died in New Mexico, the alleged wrongful actions that led to her death took place primarily in Arizona. Doc. 57 at 6–8.

The Court agrees with Judge Parker's analysis. It is true that Ms. Hernandez's death in New Mexico was the last event necessary for a wrongful death claim. However, the Court of Appeals of New Mexico provides guidance when the locations of death and wrongdoing diverge:

> *Torres* accepts the general rule that New Mexico courts will apply the tort law of the state where the wrong occurred. This makes sound policy sense, because the state where the wrong occurred ordinarily is the state with the greatest interest in having its law apply. This is particularly true when both the wrongful conduct and the injury occur in one state. In certain circumstances, however, another state may have a more significant interest in having its law apply. For example, when the misconduct and the injury are in separate states, there may be reasons for the law of the state of the misconduct to govern the question of the actor's liability.

*Estate of Gilmore*, 946 P.2d 1130, 1135 (N.M. Ct. App. 1997). Still, the *Gilmore* court emphasizes that New Mexico has not adopted the "most significant relationship" test from the Restatement (Second) of Conflict of Laws, and it therefore endorses a test which begins with a strong presumption in favor of the place of the wrong but permits, when compelling, departures for policy reasons. *Id.* at 1136. The circumstances here—in which the allegations of wrongdoing[3] center on

---

[3] To summarize and paraphrase greatly, the SAC alleges that the LaSalle Defendants transported Ms. Hernandez from San Ysidro, California, to Calexico, California (¶ 105) and that during this journey, the LaSalle Defendants refused to remove her handcuffs for her to use the restroom and instructed her to urinate on herself if need be (¶¶ 107–09). The SAC also alleges that within the state of Arizona, Ms. Hernandez's health continued to deteriorate during six hours she was detained in a LaSalle facility (¶¶ 114–23), that she was threatened by a LaSalle employee in transit (¶ 126), and that Ms. Hernandez and others sought medical help for Ms. Hernandez and were ignored (¶¶ 127–29, 133). The bulk of the allegations against the LaSalle Defendants center on conduct within the state of Arizona, with a few allegations in California. In any event, the allegations decidedly do not include wrongful conduct by the LaSalle Defendants in New Mexico.

one state while their alleged result culminates in another—are precisely the sort of scenario the Court of Appeals of New Mexico contemplated in *Gilmore*.

The cases Plaintiff cites do not change that outcome. *Terrazas v. Garland & Loman, Inc.*, 142 P.3d 374 (N.M. 2009), involved a construction accident that took place in New Mexico even though the subcontractor operating the site and its employees were Texan; the court applied New Mexico law. *Valencia v. Colo. Cas. Ins. Co.*, 560 F. Supp. 2d 1080 (D.N.M. 2007) involved a New Mexico resident driver, insured by a Colorado insurance company, who had an automobile accident in Colorado; the court applied Colorado law. *First Nat'l Bank in Albuquerque v. Benson*, 553 P.2d 1288 (N.M. Ct. App. 1976) involved an airplane crash in New Mexico that killed two Missouri residents, and the court applied New Mexico law. *State Farm Mut. Auto. Ins. Co. v. Ballard*, 54 P.3d 537 (N.M. 2002) involved an automobile accident in New Mexico with non-resident drivers traveling from California to Georgia, and the court again applied New Mexico law to the tort claims at issue. In all these cases, the wrongful action took place in the same location as the death or injury. They are therefore not analogous to the current matter, in which the alleged wrongdoing took place in a different state than the wrongful death itself.

For these reasons, the Court holds that Arizona substantive law applies to Counts 1, 3, 4, and 5 against the LaSalle Defendants. Accordingly, Arizona's substantive limitations on pain and suffering damages for deceased individuals also apply. *See Martin v. Staheli*, 457 P.3d 53, 57–58 (Ct. App. 2019) (pain and suffering claims of a decedent are not viable under Arizona's survival statute). Accordingly, the LaSalle Defendants' motion to dismiss the pain and suffering aspects of Count 1, 3, 4, and 5 is GRANTED.

**II.     Count 1: Rehabilitation Act**

An aggrieved party may wield Section 504 of the Rehabilitation Act only against a program that receives Federal financial assistance. 29 U.S.C. § 794a(a)(2); *Hollonbeck v. U.S. Olympic Committee*, 513 F.3d 1191, 1194 (10th Cir. 2008). While receipt of federal funds by procurement contract does not qualify as Federal financial assistance, receipt of a subsidy does. *See DeVargas v. Mason & Hanger-Silas Mason Co., Inc.*, 911 F.2d 1377, 1382–83 (10th Cir. 1990). The LaSalle Defendants argue that Plaintiff has not alleged that they received Federal financial assistance. Doc. 123 at 7. Plaintiff counters that a determination of Federal financial assistance is a fact-intensive question not suitable for resolution at the motion to dismiss stage. Doc. 134 at 11.

The SAC contains the following relevant allegations, repeated for each LaSalle Defendant: "[The LaSalle Defendants] received federal funds for these services pursuant to its contracts with ICE. Upon information and belief, [the LaSalle Defendants] also received federal subsidies to support the conduct described herein and engaged in a 'program or activity conducted by [an] Executive agency' within the meaning of Section 504(a)." Doc. 111 ¶¶ 27, 33, 35.

Pleading upon information and belief is appropriate when "the facts are peculiarly within the possession and control of the defendant" or "the belief is based on factual information that makes the inference of culpability plausible." *Walker v. THI of N.M. at Hobbs Center*, 803 F. Supp. 2d 1287, 1333–34 (D.N.M. 2011). Here, whether the LaSalle Defendants received a federal subsidy is information solely within the LaSalle Defendants' control; as Plaintiff points out in her response brief, she requires discovery of the relevant contracts to learn this information herself. Doc. 134 at 11 n.14. Therefore, pleading subsidies upon information and belief is a permissible mechanism by which to bring her allegations.

Notably, Judge Parker addressed the Federal financial assistance issue with respect to Defendants TransCor and CoreCivic when considering the FAC and found that the failure to plead

7

Federal financial assistance was fatal to Plaintiff's claims against these defendants. Doc. 58. This Court rejected Plaintiff's attempts to amend her Complaint to address these flaws because amendment would be futile. Doc. 109. At first blush, it may seem contradictory to allow a similar argument by a different set of defendants to go forward, so an explanation is warranted here.

The FAC did not plead subsidies upon information and belief. *See generally* Doc. 9; *see also* Doc. 58 at 6 (listing claims in the FAC relevant to Federal financial assistance for TransCor and CoreCivic). Its pleadings covered only procurement contracts, which do not qualify as Federal financial assistance. *Id.*; *DeVargas*, 911 F.2d at 1382–83. Judge Parker correctly dismissed the Section 504 claims against TransCor and CoreCivic due to this fatal error. Doc. 58. The LaSalle Defendants did not make this argument at the time, so the Section 504 claims against them were not dismissed along with TransCor and CoreCivic. *See* Doc. 123 at 7 (admitting that the LaSalle Defendants did not raise this issue in their Motion to Dismiss the FAC).

Subsequently, Plaintiff sought to amend her complaint to remedy these deficiencies. Doc. 65. She argued that she had collected additional facts about waivers that TransCor and CoreCivic received from ICE. *Id.* at 7. She claimed that these waivers qualified as subsidies, and therefore, as Federal financial assistance. *Id.* at 7–8. The Court rejected her waiver argument, finding that waivers were not subsidies, and therefore did not permit her to amend her complaint based on the newly discovered facts about the waivers because it would be futile. Doc. 109 at 8–10.

The procedural posture of the present matter is different. The SAC alleges broadly, upon information and belief, that the LaSalle Defendants received subsidies. Plaintiff may plead the issue upon information and belief—*not* based on her facts about the waivers, which remain insufficient, but because the information is solely in the hands of the LaSalle Defendants. *See Walker*, 803 F. Supp. 2d at 1333–34 (explaining the two justifications for allegations upon

8

information and belief). If, after discovery, it turns out that the only subsidies are the waivers in question, Plaintiff's Section 504 claim against the LaSalle Defendants will fail. But the different procedural posture and pleading language of this question gives Plaintiff the opportunity to investigate the matter.[4]

Finally, the Court notes a scrivener's error in the SAC. Plaintiff seeks punitive damages, but all parties agree that Section 504 does not permit this remedy. Doc. 123 at 10; Doc. 134 at 9 n.9. Therefore, the portion of the claim seeking punitive damages is dismissed.

### III. Count 2: Failure to Summon Medical Aid

California law imposes a duty on public entities and employees to seek medical aid for prisoners in their custody. Cal. Gov. Code § 845.6 ("Section 845.6"). The LaSalle Defendants argue that they are not public entities under the statute because they are private corporations who have contracted with public entities to provide services. Doc. 123 at 11–12. Plaintiff contends that other case law has held private actors who provide essential public services to qualify as government entities. Doc. 134 at 15. Plaintiff cites *West v. Atkins*, 487 U.S. 42 (1988), which held an independent contractor who provided medical services in a prison liable for failure to provide adequate medical care in violation of 42 U.S.C. § 1983.

Section 845.6 specifically defines public entities as, "the state, the Regents of the University of California, the Trustees of the California State University and the California State University, a county, city, district, public authority, public agency, and any other political

---

[4] Plaintiff also argues that the Court "wrongly decided" the question of whether, by operating a federal program (ICE's Streamlined Transfer Program), the various contractor defendants could be held liable under Section 504 notwithstanding the lack of Federal financial assistance. Doc. 134 at 13. Plaintiff brings no new facts or law to support her assertions that the Court is wrong. The Court reiterates that Plaintiff's interpretation of the law is an intriguing possibility, but it currently lacks the support of binding precedent. The Court will not follow Plaintiff onto such shaky ground without clearer guidance from the Tenth Circuit. *See* Doc. 109 at 10–12 (addressing this argument in full).

subdivision or public corporation in the State." Cal. Gov. Code § 811.2. *Lawson v. Superior Court*, 180 Cal. App. 4th 1372, 1400 (2010) held that a private community-based correctional facility that housed mothers of young children was not a public entity under Section 845.6.

Following this case, a series of unpublished cases applied the same analysis to find that private contractors providing medical services in prisons were not "public entities" subject to Section 845.6. *See Diamond v. Corizon Health, Inc.*, Case No. 16-cv-03534, 2016 WL 7034036, at *3 (N.D. Cal. Dec. 2, 2016) (Delaware corporation under contract to provide healthcare services to California county was not public entity under Section 845.6 and court rejected *West v. Atkins* argument); *Martinez v. Corizon Health, Inc.*, Case No. 16-cv-00881, 2017 WL 11506311, at *3–4 (N.D. Cal. Feb. 10, 2017) (same); *Deloney v. Cnty. of Fresno*, Case No. 1:17-cv-01336, 2018 WL 1693383, at *7 n.12 (E.D. Cal. April 6, 2018) (same); *Cardone v. Cnty. of Alameda*, Case No. 19-cv-00221, 2019 WL 7816822, at *2–3 (N.D. Cal. July 30, 2019) (same). Because of the fundamental legal issues with this stance, Plaintiff's request to amend would be futile. *See* Doc. 134 (requesting to amend deficiencies); *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1189 (10th Cir. 2012) (denying leave to amend is proper when amendment would be futile).

The Court appreciates the significance of Plaintiff's policy argument and recognizes that at least one court in California has found it persuasive. *Martinez v. GEO Grp.*, Case No. EDCV 18-1125-R, 2019 WL 3758026, at *4 (C.D. Cal. Apr. 30, 2019) ("assuming" without explanation that immigration detainees qualify as prisoners, finding that private contractor with ICE could fail to provide medical care in violation of Section 845.6). However, the Court's job is to apply the law as written, not to stretch it to fix harms it was not created to remedy.

**IV.   Count 17: Bane Act**

The Tom Bane Civil Rights Act, or Bane Act (Cal. Civ. Code § 52.1), was enacted in 1987 to protect the victims of hate crimes. *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018). It allows individuals to file suit alleging that someone has interfered with their federal or state-protected rights by "threats, intimidation, or coercion." *Id.* (citation omitted). The Bane Act therefore requires proof of an underlying violation of a person's constitutional or statutory rights. *See Williamson v. City of Nat'l City*, 23 F.4th 1146, 1155 (9th Cir. 2022); *Scalia v. Cnty. of Kern*, 308 F. Supp. 3d 1064, 1084 (E.D. Cal. 2018). The LaSalle Defendants argue that the SAC does not allege how their transport of Ms. Hernandez interfered with her constitutional rights by threat, intimidation, or coercion. Doc. 123 at 16, 18.

Plaintiff argues that the SAC alleges that the LaSalle Defendants violated the Bane Act by interfering with four of Ms. Hernandez's legal rights:

> "(1) her right to protection from bodily restraint or harm secured by Cal. Civ. Code § 43 ('Section 43'), which effectively codifies causes of action for various common law torts, such as assault, battery and false imprisonment, (2) her rights afforded by Section 845.6 (by failing to summon medical care while Roxana was in Defendants' custody and control); (3) her rights afforded by Section 504 (to be provided accommodations due to disability during her transport and detention as an asylum seeker seeking to access the U.S. immigration process); and (4) her right to 'full and equal accommodations, advantages, facilities, privileges, or services' afforded by Cal. Civ. Code § 51 ('Unruh Act')."

Doc. 134 at 17–18 (footnotes omitted). The Court has already rejected Plaintiff's arguments under Section 845.6. However, her allegations under Section 504 of the Rehabilitation Act (as described above) and the Unruh Act (as described in the subsequent section) remain intact at this stage.

As for Section 43, Plaintiff claims battery—LaSalle employees refused to allow Ms. Hernandez to remove her shackles to use the restroom and forced her to urinate on herself—and false imprisonment—LaSalle employees did not have the authority to shackle and transport Ms. Hernandez because she had not yet received adequate medical clearance to travel. Doc. 134 at 19–

11

20. On reply, the LaSalle Defendants address only the "lack of authority" argument, asserting that the SAC does not allege a lack of authority to shackle and transport Ms. Hernandez. Doc. 135 at 8–9. But the SAC *does* allege this lack of authority. *See* Doc. 111 ¶¶ 95–97, 99, 112. Taking Plaintiff's allegations as true, they state that Ms. Hernandez sought to have her shackles removed but was denied, ¶ 107; that the LaSalle Defendants did not obtain the medical clearance necessary to transport Ms. Hernandez, ¶¶ 99, 112; and that the bus ride through California lasted approximately two hours, ¶ 102. *See Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1169 (9th Cir. 2011) (elements of false imprisonment under California law are 1) nonconsensual, intentional confinement, 2) without lawful privilege, and 3) for an appreciable period of time). The SAC therefore states a claim for false imprisonment.

The coercion element of a Bane Act claim may be satisfied by the same conduct inherent in an unlawful detention itself. *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1042 (9th Cir. 2018) (involving a Fourth Amendment violation as the basis for a Bane Act claim). Using the same logic in the tort context, the act of unlawfully confining and transporting Ms. Hernandez can be the foundation for both her false imprisonment claim and the coercion element of the Bane Act. While California law remains unsettled regarding whether law enforcement authority can constitute coercion under the Bane Act even in the absence of threats of violence, enough case law exists to suggest that law enforcement employees shackling and transporting Ms. Hernandez without legal authorization may suffice to establish coercion. *See Hauseur v. Clark*, No. 1:14-cv-01987, 2017 WL 427335, at *1 (E.D. Cal. Jan. 31, 2017) (collecting cases for the proposition that no actual threat of violence is necessary for Bane Act coercion as long as the exercise of rights was interfered with by threat, intimidation, or coercion); *Cuviello v. City of Vallejo*, 2020 WL 6728796, at *8

(E.D. Cal. Nov. 16, 2020) (law enforcement officer's threat of arrest can constitute coercion); *Adjaye v. White*, 2021 WL 4353101, at *8 (same).

If the threat of arrest can be coercive, it follows that actual unlawful restraint can as well. *See Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 800 (2017) ("Much of what law enforcement officers do in settings that test the limits of their authority is 'inherently coercive.'"). The allegations against the LaSalle Defendants establish that they refused to unshackle Ms. Hernandez to let her use the restroom while she was at their mercy and control throughout the portion of the drive taking place in California.[5] Therefore, at this stage in the litigation, the Court will allow the Bane Act claim to go forward.

## V.   Unruh Act

The Unruh Act, Cal. Civ. Code § 51, grants individuals protection against discrimination in business establishments. The LaSalle Defendants argue that a detainment transportation vehicle does not qualify as a place of public accommodation because members of the public cannot board the bus. Doc. 123 at 22. Plaintiff responds that the transportation of detainees is a for-profit business enterprise providing services to the government and is therefore covered under the Unruh Act. Doc. 134 at 23–24.

*Wilkins-Jones v. County of Alameda*, 859 F. Supp. 2d 1039 (N.D. Cal. 2012) applied the Unruh Act to a for-profit private contractor providing medical services in a prison. *Id.* at 1049–50. While the correctional facility itself was not subject to the Unruh Act, the private contractor was a separate entity paid by the county to operate within the facility, which brought it under the Unruh Act's purview. *Id.* The LaSalle Defendants argue that transportation by prison bus is not analogous

---

[5] The Bane Act is a California statute. Therefore, it applies only to the LaSalle Defendants' conduct in California. Their conduct in Arizona, to which Plaintiff cites in her response brief, does not bear on whether they violated the Bane Act in California. *See* Doc. 134 at 22 (citing to portions of the SAC that took place in Arizona).

13

to provision of medical care for a fee and that the California legislature was "not likely concerned that all Californians would have equal access to transportation in a prison bus." Doc. 135 at 10. However, this argument is not persuasive. *Wilkins-Jones* stands for the proposition that the California legislature *was* likely concerned that all Californians would have equal access to prison medical care, even though prison medical care, like operation of a bus for immigration detainees, is not a service available to the general public.

Additionally, the LaSalle Defendants argue that the allegations of failing to provide restroom access for a brief drive to Arizona are insufficient and distinguishable from the lengthy lack of access detailed in *Wilkins-Jones*. Doc. 135 at 11. But the deprivations that Plaintiff alleges Ms. Hernandez endured are quite severe—she was gravely ill, yet the LaSalle Defendants required her to remained shackled and told her to urinate on herself for a two-hour bus ride. Doc. 111 ¶¶ 107, 109. The LaSalle Defendants cite no authority for the proposition that two hours is an insufficient period of time to endure discriminatory behavior under the Unruh Act. This claim therefore survives the motion to dismiss.

## CONCLUSION

In summary:

- New Mexico procedural law and Arizona substantive law apply to Counts 1, 3, 4, and 5. Under Arizona substantive law, a deceased individual may not recover pain and suffering damages. Therefore, Motion is **GRANTED** as to the pain and suffering components of Counts 1, 3, 4, and 5. This dismissal is with prejudice.

- The Motion is **DENIED** as to Count 1 (Rehabilitation Act, Section 504). However, as the parties agree, punitive damages are inappropriate under this provision. Therefore, to the

extent Count 1 seeks punitive damages, the Motion is **GRANTED** to dismiss that aspect of Count 1. This dismissal is with prejudice.

- The Motion is **GRANTED** as to Count 2 (Failure to Summon Medical Care, Section 845.6). This dismissal is with prejudice.

- The Motion is **DENIED** as to Counts 17 and 18 (Bane Act and Unruh Act, respectively).

**IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE