# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

JOLEEN K. YOUNGERS, as Personal
Representative of the Wrongful Death
Estate of Roxsana Hernandez,

                Plaintiff,

vs.

LASALLE CORRECTIONS TRANSPORT LLC,
LASALLE CORRECTIONS WEST LLC,
LASALLE MANAGEMENT COMPANY LLC,
GLOBAL PRECISION SYSTEMS LLC,
TRANSCOR AMERICA LLC,
CORECIVIC, INC., and
UNITED STATES OF AMERICA,

                Defendants.

20-cv-00465-WJ-JMR

## JOINT STIPULATION AND ORDER CONTROLLING DISCOVERY OF ELECTRONICALLY STORED INFORMATION

     Joleen K. Youngers ("Plaintiff"), and TransCor America, LLC ("TransCor") and

CoreCivic, Inc. ("CoreCivic") (collectively, "Defendants") (Plaintiff and Defendants are

referred to collectively as the "Parties" and singularly as a "Party"), stipulate and agree

that the following specifications shall govern discovery of all electronically stored

information ("ESI"), and any other materials and information produced by the Parties

during discovery in the above-captioned action. The Court therefore enters the following

Order Controlling Discovery of Electronically Stored Information.

/ / /

/ / /

1

## I.    <u>GENERAL</u>

A.    This Stipulation and Order will govern discovery of ESI in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Local Rules of Civil Procedure, General and Special Orders, and any other applicable orders issued by this Court or rules promulgated by this Court.

B.    The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the litigation consistent with the Court's Local Rules of Civil Procedure, General and Special Orders, and any other applicable orders issued by this Court or rules promulgated by this Court.

C.    To the extent reasonably possible, the production of documents shall be conducted to maximize efficient and quick access to documents and minimize related discovery costs. The terms of this Stipulation and Order shall be construed so as to ensure a just, speedy, and cost-effective exchange of information consistent with Fed. R. Civ. P. 1 and any orders promulgated by the Court.

D.    Except as specifically limited herein, this Stipulation and Order governs the production of discoverable documents by the Parties during the litigation.

E.    This Stipulation and Order shall not enlarge, reduce, or otherwise affect the scope of discovery in this litigation as imposed by the Federal Rules of Civil Procedure or the Court's orders, or imply that discovery produced under the terms of this Order is properly discoverable, relevant, or admissible in this or in any other action.

F.      All documents that are responsive to discovery requests and not designated as "privileged" shall be produced in the manner provided herein, subject to the Protective Orders that have been entered by the Court. (Dkt. 98, 241.) Nothing in this Stipulation and Order shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other privilege that may be applicable. Additionally, nothing in this Stipulation and Order shall be deemed to waive or limit any Party's right to move for an order to compel discovery pursuant to Fed. R. Civ. P. 37(a)(3). Likewise, nothing in this Stipulation and Order shall be deemed to waive or limit any Party's right to object to the production of certain ESI, or to move for an appropriate order pursuant to Fed. R. Civ. P. 26(c), on the ground that the sources are not reasonably accessible because of undue burden or cost.

G.      The Parties agree to promptly alert the other Party concerning any technical problems associated with complying with this Stipulation and Order. To the extent compliance with this Stipulation is believed to impose an undue burden with respect to any protocol, source, or search term listed herein, the Parties shall promptly confer in an effort to resolve the issue.

H.      The Parties will attempt to resolve, in writing (including e-mail), by telephone, or videoconference, disputes regarding the issues set forth herein prior to seeking relief from the Court. If the Parties are unable to resolve the dispute after a good

3

faith effort, the Parties may seek the Court's intervention in accordance with the Court's procedures and applicable Rules.

## II.   <u>LIAISONS</u>

The Parties will identify liaisons who are and will be knowledgeable about and responsible for discussing their respective ESI. Plaintiff's liaison is Irene Lax. Defendants' liaison is Michael Giardina. Each e-discovery liaison will be, or will have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The Parties' liaisons will be present during conferences about ESI, as possible, and help resolve disputes without Court intervention whenever possible.

## III.   <u>PRODUCTION FORMAT – HARDCOPY</u>

Hardcopy documents should be produced as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the following fields: "BEGBATES," "ENDBATES," "BEGATTACH," "ENDATTACH," "CUSTODIAN," "PGCOUNT," "PRODVOLUME,"        "RECORDTYPE,"        "CONFIDENTIAL",        and "EXTRACTEDTEXT"[1] as defined in the attached Appendix 1: Metadata Fields. The documents should be logically unitized (i.e., distinct documents should not be merged

---

[1]    EXTRACTEDTEXT need not be populated for handwritten documents.

into a single record, and a single document should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business. Scanned documents shall maintain the orientation of the original document. If an original document contains relevant information in color necessary to understand the meaning or content of the document, the document should be produced as single-page, 300 DPI with a minimum quality level of 75, 24-bit, color JPG images. To the extent that the Producing Party OCR's the document for its own benefit, OCR should also be provided. The OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

## IV.  **PRODUCTION FORMAT – ELECTRONICALLY STORED INFORMATION**

ESI should be produced as single-page, Group IV, 300 DPI TIFF images with the exception of source code, audio, video, and spreadsheet-type files, including, but not limited to, audio, video, Excel or other delimited data files, all of which should be produced in native format. Files which should be produced in native format include, but are not limited to, files with the following extensions: .wmv, .wav, .mpg, .mp3, xls, .xlsx, .csv, and .dat.

All ESI should be produced with a delimited, database load file that contains the metadata fields listed in Appendix 1: Metadata Fields, attached hereto, to the extent captured at the time of the collection. To the extent that metadata does not exist, is not reasonably accessible or available for any documents produced, or would be unduly

burdensome to provide, the Parties will meet and confer in good faith regarding the production, but nothing in this Stipulation and Order shall require any Party to engage in any computer or document forensics, or manual review and data entry, to extract, capture, collect, or produce such data.

The Parties agree that certain documents identified and collected as part of a targeted collection (i.e., information which is not formally collected using an ESI collection tool), specifically, files which originated as ESI, but are sent via e-mail or other means to Producing Counsel, may be produced without metadata fields, but will contain at minimum the fields identified in Section III. The Parties will meet and confer to the extent one Party disagrees with the identification of certain documents as part of a targeted collection subject to the preceding sentence. An .opt image cross-reference file should also be provided for all images.

Images should show any and all text and images which would be visible to the reader using the native software that created the document. For example, images of e-mail messages should include the BCC line. Color originals may be produced in B&W image format, but either Party may subsequently request, by Bates number(s), a replacement set of images in color only to the extent that the Requesting Party demonstrates that the loss of the color detracts from the usability or reduces the ability to understand the information imparted in the original; however, categorical or wholesale requests are deemed invalid.

Each native file should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the load file using the NATIVEPATH field. To the extent either Party believes that native files should be produced for a specific document or class of documents not required to be produced in native format pursuant to this section or to the extent records do not easily conform to native or image format (i.e., structured data), the Parties will meet and confer in good faith regarding the production.

If a document is produced in native format, a single-page Bates-stamped TIFF image slip-sheet containing the confidential designation and text stating the document has been produced in native format should also be provided. If documents requested in native format require redactions, the Producing Party may provide a redacted image of the file or may elect to provide a redacted native file where such redactions may be performed more expeditiously, such as, for example, with respect to data contained in Excel files. To the extent the Requesting Party believes that any redactions applied render a file insufficiently useable, such documents will be identified by Bates number(s), and the Parties will meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained.

V.     **PRODUCTION – NON-RESPONSIVE DOCUMENTS ATTACHED TO PRODUCTION-ELIGIBLE DOCUMENTS**

The Parties agree that non-responsive documents attached to production-eligible documents (i.e., responsive, non-privileged documents) will be produced. To the extent

the Producing Party believes there is good cause to deviate from this standard, they may withhold or redact privileged information and provide a privilege log to the opposing Party as specified in Section XII. Notwithstanding the foregoing, the Producing Party may withhold non-responsive attachments that contain information related to any detainee(s) other than those at issue in this litigation on a case-by-case basis, by producing a single-page Bates-stamped image slip-sheet containing the confidential designation and text stating the document has been withheld as non-responsive and relates to a different detainee. Likewise, the Producing Party may withhold non-responsive attachments that contain highly security-sensitive information, which is unrelated to any claim in this case, by producing a single-page Bates-stamped image slips sheet containing the confidential designation and text stating the document has been withheld as non-responsive security sensitive-information. For privileged document family members withheld, a single-page Bates-stamped image slip sheet containing the confidential designation and text stating the document has been withheld as privileged will be produced. For any document withheld in this manner, the Producing Party shall still provide the applicable metadata fields, subject to modification, as set forth in Section XII.

## VI.    <u>PRODUCTION FORMAT – STRUCTURED DATA</u>

To the extent a response to a non-objectionable discovery request requires production of discoverable electronic information contained in a database (including but

not limited to documents with the following file extensions: .accdb, .accde, .dbf, .nsf, .mdb, .sas, .sas7dbat, and .sql), the Parties will endeavor to extract such data into a single table in .xls, .cvs, or text-delimited format, with header-rows. If the Producing Party contends that such data cannot easily be exported into such a format, the Parties will meet and confer to discuss the most appropriate and cost-effective production format, which may include an export of data.

## VII.    <u>PRODUCTION FORMAT – MEDIA</u>

Documents shall be exchanged through secure file transfer protocols (e.g., FTP) or similar secure electronic transmission. In the event that files are too large for an efficient FTP transmission, they may be placed on external USB drives and sent to the Parties' respective ESI liaisons. The production media shall be labeled with the Volume Number and the Bates Number range(s), document count, and native file count of the materials should be provided in the transmittal documentation (whether by letter or e-mail) for each Volume, along with the Volume Number. Any document production that may contain "Confidential Information" (subject to any Protective Order which may be entered by the Court.); "non-public personal information" (as defined in the Gramm-Leach-Bliley Act) or "Confidential Health Information" (as defined and protected under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") Privacy Rule, 45 C.F.R., pts. 160 and 164, and/or any other applicable state or federal law or regulation concerning confidential health information) shall be produced in encrypted form and the

9

production media shall be labeled "MAY CONTAIN CONFIDENTIAL INFORMATION"; "MAY CONTAIN NON-PUBLIC PERSONAL INFORMATION"; or "MAY CONTAIN CONFIDENTIAL HEALTH INFORMATION" as applicable. If a Producing Party encrypts or "locks" the production, the Producing Party shall send, under separate cover, an explanation of how to decrypt the files.

## VIII.   PROCESSING SPECIFICATIONS

A.   <u>ESI Date and Time Processing</u>: Each Party's ESI should be processed using a consistent Time Zone for all data. The Party shall share the Time Zone selected for processing of its data with the other Party.

B.   <u>Global or Horizontal Deduplication</u>: Removal of duplicate documents should only be done on exact duplicate documents based on MD5 or SHA-1 hash values. For email, de-duplication should take place at the family-level only, that is, an email is an exact duplicate only if the entire family set of documents including each attachment to the parent email is duplicative of another email family including each attachment.

## IX.   IDENTIFICATION AND COLLECTION OF DOCUMENTS

A.   The Parties agree that responsive documents that are known to exist (as opposed to documents that would only become known to the Producing Party through an email or system search) will be produced in the format set forth in this agreement and in the normal course of discovery, (i.e., as required under Fed. R. Civ. P. 26 and 34).

B.      For documents that would only become known to the Producing Party through an email or system search, the Parties have met and conferred to create an iterative search protocol, detailing a process for identifying custodians and search terms.

C.      Nothing in this agreement shall delay the production of documents that are not subject to the searches contemplated under Section IX.B.

## X.    PRESERVATION

A.      The Parties acknowledge that they have an obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody, or control.

B.      The Parties further acknowledge that as of the entry of this Stipulation and Order, the precise scope of discovery, including possible custodians, facilities, and applicable date ranges of ESI, have not been determined. The Parties will meet and confer with each other to the extent a Party believes that limits on preservation of ESI are necessary beyond those set out below.

## XI.   PHASING

Defendants will endeavor to produce known and responsive documents pursuant to Section IX.A first. When a production in response to an ESI discovery request cannot be completed within the time specified in the request, the Parties will meet and confer to discuss prioritization of the collection, processing, and review of the production so that the ESI is produced within a reasonable period of time as required by Fed. R. Civ. P.

34(b)(2)(B). ESI so collected will be produced in phases, and the Parties will continue to meet and confer regarding the need for, and if necessary, to prioritize the subsequent order of, later waves of productions.

## XII.    PRIVILEGE AND PRIVILEGE LOGS

A.    The Parties agree that the following privileged communications or documents need not be included in a privilege log: (a) any internal law firm communications within a law firm representing any Party; and (b) any attorney-client privileged communication or attorney work product created after the date the lawsuit was filed that is in connection with filing, defending, or prosecuting the instant action and reflects a request for legal advice to, or legal advice or work product from, either Party's outside legal counsel in this litigation.

B.    All responsive, non-privileged family or other documents attached to a privileged document will be produced.

C.    The Parties agree that, for each document withheld from production on the basis of attorney-client privilege, work product doctrine, and/or any other applicable privilege, the Producing Party will prepare a summary log containing, for each document claimed as privileged, an export of all or a subset of the metadata fields listed above (as agreed upon by the Parties) to the extent such information exists and has not been suppressed or redacted for privilege. The export should include the following information from the top line email:

- BEGNO (if not produced) or BEGBATES (if produced)

- ENDNO (if not produced) or ENDBATES (if produced)

- BEGNOATTACH (if not produced) or BEGATTACH (if produced)

- ENDNOATTACH (if not produced) or ENDATTACH (if produced)

- CUSTODIAN

- FROM or AUTHOR (as applicable)

- TO

- CC

- BCC

- EMAILSUBJECT or TITLE (as applicable)

- DATESENT or DATECREATED (as applicable)

- DATERECEIVED or DATELASTMOD (as applicable)

- FILENAME

- MD5HASH

- PRIV_TYPE

To the extent the Producing Party believes any metadata field above, if provided, would reveal privileged information, that Party may edit or amend that metadata field to avoid disclosure of privileged information while ensuring that, at minimum, all information required by Fed. R. Civ. P. 26(b)(5) is included. The Producing Party must indicate where such amendment was made by counsel.

13

If the Requesting Party requires further information to assess the claim of privilege, it shall explain in writing the need for such information and identify, by Bates number or other unique identifier, each document for which it seeks this information. Within fifteen (15) calendar days of such a request, the Producing Party must either (1) provide the requested information or (2) challenge the request. If a Party challenges a request for further information, the Parties shall meet and confer to try to reach a mutually agreeable solution before any motions may be filed.

XIII. <u>**PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL**</u>

<u>No Waiver by Disclosure.</u> If information subject to a claim of attorney-client privilege, work product immunity, or any other privilege or immunity is inadvertently or mistakenly produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of privilege or immunity for such information under the law.

If a Party receives a document or information that the Receiving Party knows or has reason to believe may be subject to a claim of attorney-client privilege, work product immunity, or any other applicable privilege or immunity, the Receiving Party shall: (1) promptly notify the Producing Party (including non-parties responding to a subpoena duces tecum); (2) immediately cease reading the document; (3) upon request from the Producing Party, promptly and permanently delete all non-placeholder images, native files, and extracted text files, as well as all other copies of the documents generated by

the Receiving Party, and any metadata for which the Producing Party has provided a replacement; and (4) certify in writing to the Producing Party that the non-placeholder images, native files, extracted text, subsequently generated copies, and replaced metadata have been properly deleted and/or destroyed.

If a Party (or subpoenaed non-party) discovers that it has inadvertently produced a document or information that is subject to a claim of attorney-client privilege, work product immunity, any other applicable privilege or immunity, or which is sensitive and not relevant to any of the issues in the litigation, it shall promptly inform the Receiving Party that the document or information is privileged or otherwise should be deleted, and indicate whether or not any of the metadata contains any privileged information. Should the metadata for any such document contain privileged information, a replacement load file for that information, complying with Section XII.C., should be provided as soon as possible following, if not contemporaneously with, the notice. Upon receiving such notice, the Receiving Party shall (1) immediately cease reading the document; (2) promptly and permanently delete all non-placeholder images, native files, and extracted text files, as well as all other copies of the documents generated by the Receiving Party, and any metadata for which the Producing Party has provided a replacement; and (3) certify in writing to the Producing Party that the non-placeholder images, native files, extracted text, subsequently generated copies, and replaced metadata have been properly deleted and/or destroyed.

At any time a Party is notified that a document or information that is subject to a claim of attorney-client privilege, work product immunity, or any other applicable privilege or immunity was inadvertently produced, and the document or information is already part of a filing with the Court, the Filing Party shall either withdraw the document or information or the Parties shall agree to brief the issue for the Court pursuant to applicable law, including the Federal Rules of Civil Procedure, this Court's Local Rules of Civil Practice, General or Special Orders, and any other applicable orders issued by this Court or rules promulgated by this Court.

## XIV.   **THIRD PARTY DOCUMENTS**

A Party that issues a subpoena duces tecum to a non-party (the "Issuing Party") shall include a copy of this Stipulation and Order with the subpoena and state that the Parties to the litigation have requested that third parties produce documents in accordance with the specifications set forth herein. The Issuing Party shall produce any and all documents obtained pursuant to a non-party subpoena to the opposing Party. Nothing in this Stipulation is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or third parties to object to a subpoena. This provision shall not apply to any subpoenas duces tecum issued prior to the entry of this Stipulation and Order.

## XV.    GOOD FAITH

The Parties shall make their best efforts to comply with and resolve any differences concerning compliance with this Stipulation and Order. If a Producing Party cannot comply with any material aspect of this Stipulation and Order, such Party shall inform the Requesting Party as to why compliance with the Stipulation was unreasonable or not possible within fifteen (15) calendar days after so learning. No Party may seek relief from the Court concerning compliance with this Stipulation and Order unless it has conferred with the other affected Party to the action.

## XVI.    NO EFFECT ON DISCOVERY OR ADMISSIBILITY

This Stipulation and Order does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI. Nothing in this Stipulation and Order shall be construed to affect the admissibility of any document or data produced pursuant to it. All objections to the admissibility of any document or data are preserved and may be asserted at any time.

## XVII.    PROTECTIVE ORDER AND MODIFICATION

Nothing in this Stipulation and Order shall be deemed to limit, modify, or override any provision of any Protective Order which may be entered by the Court. Further, the burdens placed on the Parties during this litigation, including during discovery, must be proportional to the litigation itself. Northing in this Order precluded the Parties from

seeking an additional protective order, including one seeking to shift or share certain discovery costs, including vendor and attorney fees in appropriate circumstances.

This Stipulation and Order may be modified by a further Stipulation and Order of the Parties, or by the Court in the interests of justice or for public policy reasons.

Dated: January 23, 2024

/s/ Jacob B. Lee
Daniel P. Struck, AZ Bar No. 012377
Jacob B. Lee, NM Bar No. 154613
Dana M. Keene, AZ Bar No. 033619
Anne M. Orcutt, AZ Bar No. 029387
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
Tel.: (480) 420-1600
Fax: (480) 420-1696
dstruck@strucklove.com
jlee@strucklove.com
dkeene@strucklove.com
aorcutt@strucklove.com

Deborah D. Wells
Debra J. Moulton
KENNEDY, MOULTON & WELLS, P.C.
2201 San Pedro NE, Bldg. 3, Suite 200
Albuquerque, New Mexico 87110
Tel.: (505) 884-7887
Fax: (505) 884-7123
ddwells@kmwpc.com
dmoulton@kmwpc.com

*Attorneys for Defendants TransCor America, LLC and CoreCivic Inc.*

/s/ Irene R. Lax (w/Permission)
Cynthia Morgan, Pro Hac Vice

18

Grant & Eisenhofer P.A.
123 Justison Street, 7th Floor
Wilmington, DE 19801
Tel: (302) 622-7086
cmorgan@gelaw.com

Irene R. Lax, Pro Hac Vice
Grant & Eisenhofer P.A.
485 Lexington Avenue
New York, NY 10017
Tel: (646)-722-8512
ilax@gelaw.com

Dale Melchert, Pro Hac Vice
Lynly Egyes, Pro Hac Vice
Transgender Law Center
P.O. Box 70976
Oakland, CA 94612
dale@transgenderlawcenter.org
lynly@transgenderlawcenter.org

Daniel Yohalem
Attorney at Law
1121 Paseo de Peralta
Santa Fe, New Mexico 87501
Phone: 505-983-9433 Fax 505-989-4844
During Covid: 505-690-2193
Daniel.yohalem@gmail.com

*Attorneys for Plaintiff Jolene K. Youngers*
*as Personal Representative of the Wrongful*
*Death Estate of Roxsana Hernandez*


_____

JENNIFER M. ROZZONI
United States Magistrate Judge

19

# CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Irene R. Lax | ilax@gelaw.com |
| Cynthia B. Morgan | cmorgan@gelaw.com |
| Dale Melchert | dale@transgenderlawcenter.org |
| Lynly Egyes | lynly@transgenderlawcenter.org |
| Daniel Yohalem | daniel.yohalem@gmail.com |

*Attorneys for Plaintiff*

| | |
|---|---|
| Gregory D. Steinman | gds@madisonlaw.com |
| Wan Erh Chen | wc@madisonlaw.com |
| Paul M. Cash | pmc@madisonlaw.com |

*Attorneys for Defendant Global Precision Systems LLC*

| | |
|---|---|
| Adam D. Rafkin | adr@rafkinlaw.com |

*Attorney for LaSalle Defendants*

| | |
|---|---|
| Brett C. Eaton | brett.eaton@usdoj.gov |

*Attorney for Defendant United States of America*

| | |
|---|---|
| Robert F. Gentile | rgentile@guebertlaw.com |
| Clinton E. Dow | cdow@guebertlaw.com |

*Attorneys for Third-Party Defendant Asset Protection
and Security Services, L.P.*

/s/ Allen Rowley

# APPENDIX 1:  METADATA FIELDS

| FIELD NAME | EXAMPLE/FORMAT | DESCRIPTION |
|---|---|---|
| Begin Bates | ABC00000001 (Unique ID) | The Document ID Number associated with the first page of the document. |
| End Bates | ABC00000003 (Unique ID) | The Document ID Number associated with the last page of the document. |
| Begin Attach | ABC00000001 (Unique ID Parent-Child Relationships) | The Document ID Number associated with the first page of the parent document. |
| End Attach | ABD00000008 (Unique ID Parent-Child Relationships) | The Document ID Number associated with last page of the last attachment. |
| Attachment Count | 1 (Numeric) | The number of attachments to a document |
| Attachment Names | Attachment1.pdf; Attachment2.pdf | The file names of the attachments to an email. |
| Custodian | Joe Smith | The custodian of a document when first collected.  If collection is from an organizational server or third party, the name of the organization, server, or their party. |
| Duplicate Custodians | Joe Smith; Bill Jones | All duplicate custodians identified when a document is collected or processed |
| Page Count | 3 (Numeric) | The number of pages for a document |
| Volume | VOL001 | The name of an export volume, whether via FTP, CD, DVD, or HardDrive (vendor assigns) |
| File Category: | Options:  Email, Email Attachment, E-Doc; Hard Copy | The record type of a document |
| File Size | 3200 (Numeric) | The file size, in bytes, of the native document (including embedded attachments) |
| MD5 Hash (or SHA1 Hash) | CB17BCCBE4F012DE15774B1FC1DA7D0E | THE MD5 Hash or SHA-1 hash value or "de-duplication key" assigned to a document. |
| Extracted Text | D:\TEXT\ABC00000001.txt | The path to the full extracted text or OCR of the document.  There should be be a folder on the deliverable containing a separate text file per document.  These text files should be named with their corresponding bates numbers.  Even if the attachment of e-mail file does not have any extracted text during processing, should the producing party OCR the document for their own benefit, that OCR file shall be produced and identified here. |
| File Name | Document name.mg | The file name of a document |
| Native Path | D:\NATIVES\ABC00000009.xls | The relative path to a native copy of a document produced natively |
| File Type | Microsoft Outlook Message Email, Adobe Acrobat (PDF) | Type of File |
| File Extension | .xls | The file extension of a document. |

21

| FIELD NAME | EXAMPLE/FORMAT | DESCRIPTION |
|---|---|---|
| Author From | John Smith | The extracted author metadata of a non-email document.[2] |
| Date Created | MM/DD/YYYY hh:mm | The date and time the document was created.[3] |
| Date Modified | MM/DD/YYYY hh:mm | The date and time the document was last modified. |
| Last Saved By | Jsmith | The extracted metadata reflecting the last person to save the document. |
| Email From | Joe Smith <jsmith@email.com> | The display name or e-mail address of the sender of an e-mail. |
| Email To | Joe Smith <jsmith@email.com> | The display name(s) or e-mail address(es) of the recipient(s) of an e-mail. |
| Email CC | Joe Smith <jsmith@email.com> | The display name(s) or e-mail address(es) of the copyee(s) of an e-mail |
| Email BCC | Joe Smith <jsmith@email.com> | The display name(s) or e-mail address(es) of the blind copyee(s) of an e-mail. |
| Email Subject | FW: Test email | The subject line of the e-mail. |
| Email Sent | MM/DD/YYYY hh:mm | The date and time the e-mail was sent. |
| Email Priority | Normal, Low, High | E-mail Importance Flag (0 = Normal, 1 = Low Importance, 2 = High Importance). |
| Email Received | MM/DD/YYYY hh:mm | The date and time the document was received. |
| File Path | i.e. Joe Smith/E-mail/Inbox | Location of the original document.  The source should be the start of the relative path. |
| System Processing Time Zone | (UTC-08:00) Pacific Time (US & Canada) | The time zone the document was processed in. NOTE:  This should be the time zone at the location and time of the events giving rise to this action. |
| Email Conversation Index | | Index ID used to identify and tie together e-mail threads.[4] |

---

[2] While the Author From field may not actually reflect the author of the document, the producing party should include all extracted metadata which can be collected.

[3] The Requesting Party acknowledges that the Date Created fields may not actually reflect the date and time the file was created, due to the ease of change to those fields and the technical definition of the fields (e.g, the created date and time reflects the date when the file was created in that particular location on the computer or on another storage device location).

[4] The Requesting Party acknowledges that Email Conversation Index may or may not be present depending on the email client and server used to compose and transmit the message. Where values are present, they shall be produced.