IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOLEEN K. YOUNGERS,
as the Personal Representative of the
Wrongful Death Estate of Roxsana Hernandez,

        Plaintiff,

vs.                                        1:20-cv-00465-WJ-JMR

LASALLE CORRECTIONS TRANSPORT LLC,
LASALLE CORRECTIONS WEST LLC,
LASALLE MANAGEMENT COMPANY LLC,
GLOBAL PRECISION SYSTEMS LLC,
TRANSCOR AMERICA LLC,
CORECIVIC, INC., AND
UNITED STATES OF AMERICA,

        Defendants,

and

GLOBAL PRECISION SYSTEMS LLC,

        Third-Party Plaintiff,

v.

ASSET PROTECTION AND SECURITY SERVICES, L.P.,

        Third-Party Defendant.

**<u>ORDER SETTING AMOUNT OF ATTORNEY'S FEES</u>**

THIS MATTER comes before the Court on Plaintiff's Application for Reasonable

Attorney Fees as Awarded in the Order on Motion to Compel (Doc. 325), filed January 31, 2024.

Doc. 342. Plaintiff's application follows the Court's January 19, 2024 order granting in part

Plaintiff's Expedited Motion to Compel Discovery Against Defendant Global Precision Systems,

LLC, ("GPS") Doc. 311, and awarding Plaintiff attorney's fees associated with that motion. Doc.

325. GPS filed its response in opposition to the application on February 14, 2024. Doc. 348.

Plaintiff did not file a reply and filed a notice of completion of briefing on April 24, 2024. Doc. 381.

In her application, Plaintiff seeks $29,225.00 in attorney fees—$25,275.00 for work completed by the law firm of Grant & Eisenhofer, P.A., and $3,950.00 for work completed by the Transgender Law Center ("TLC"). Doc. 342 at 3. Plaintiff provides an accounting of 41.2 hours of attorney and paralegal work by Grant & Eisenhofer and ten hours of attorney work by TLC. Doc. 342-1 at 6.

## I.    Background

The timeline of events leading to the filing of the subject motion to compel is relevant. Plaintiff filed her Second Amended Complaint on January 3, 2022. Doc. 111. On February 24, 2022, Plaintiff served her first set of interrogatories and requests for production on GPS. Doc. 311-1 at 19–20 (Exh. A); Doc. 311-2 at 22–23 (Exh. B). GPS responded to this first set of discovery requests on April 26, 2022. Doc. 141; Docs. 311-3 (Exh. C), 311-4 (Exh. D). Then, beginning on June 10, 2022, and over the course of the next *eighteen* months, Plaintiff and GPS met and conferred and exchanged correspondence and/or supplemental discovery responses in Plaintiff's attempt to have GPS fully answer her original discovery requests. Doc. 311-5 (Exh. E) through Doc.311-17 (Exh. Q). Notably, as early as the fall of 2022, Plaintiff and GPS appear to have agreed on many categories of additional information GPS would be willing to produce. Doc. 311-14 at 4 (Exh. N). On May 23, 2023, counsel for GPS again acknowledged this agreement given this Court's rulings on Plaintiff's separate motions to compel against Defendants CoreCivic, Transcor, and the United States (Docs. 171, 172, 220, 231, 237, and 238). Doc. 311-15 at 4 (Exh. O). The agreed-upon information included electronically stored information ("ESI"). Doc. 311-16 (Exh. P).

On August 31, 2023, this Court held a discovery conference related to Plaintiff's discovery requests to various defendants. Doc. 292. Although not originally an issue the Court planned to address at the discovery conference, after discussion with the parties the Court also ruled on Plaintiff's February 24, 2022 discovery requests to GPS. *Id*. at 3. Specifically, the Court ordered that any outstanding discovery that had been "previously discussed" by Plaintiff and GPS, meaning discovery that GPS had previously agreed to produce, be produced to Plaintiff on or before September 29, 2023. *Id*. The Court also ruled that any outstanding ESI from GPS be produced to Plaintiff on or before January 19, 2024. *Id*. GPS failed to produce any additional materials on or before September 29, 2023. Doc. 311-17 (Exh. Q).

Plaintiff filed her Expedited Motion to Compel Discovery against GPS, Doc. 311, on December 6, 2023. GPS filed its response on December 27, 2023, Doc. 314, and Plaintiff filed her reply on January 10, 2024, Doc. 323. On January 17, 2024, the Court held a hearing on Plaintiff's motion and granted Plaintiff's motion in part. Docs. 324, 325. As of January 17, 2024, despite being two days from the ESI deadline previously set by the Court, GPS had not produced *any* ESI and admitted at the hearing that it had not met and conferred with Plaintiff to create a protocol for an ESI search. As part of its order on Plaintiff's Expedited Motion to Compel, the Court awarded Plaintiff her reasonable attorney's fees pursuant to Federal Rule of Civil Procedure 37(a)(5). Doc. 325 at 3.

As set forth generally above, Plaintiff requests $29,225.00 in attorney's fees divided between work completed by Grant & Eisenhofer and TLC. Along with affidavits from attorneys Barbara Hart and Dale Melchert, Plaintiff provided itemized breakdowns of the hours worked and descriptions of the tasks for each of the four individuals who worked on the motion to compel. Docs. 342-1 (Exh. A) and 342-2 (Exh. B).

Grant & Eisenhofer claimed the following fees:

| Name and Title | Hourly Rate | Claimed Hours Worked | Total |
|---|---|---|---|
| Barbara Hart, director | $1,375.00 | 1.8 | $2,475.00 |
| Irene Lax, senior counsel | $700.00 | 23.4 | $16,380.00 |
| Emma Spencer, paralegal | $375.00 | 16.0 | $6,000.00 |
| | **Total:** | **41.2 hours** | **$24,855.00** |

TLC staff attorney Dale Melchert claimed the following additional fees:

| Name and Title | Hourly Rate | Claimed Hours Worked | Total |
|---|---|---|---|
| Dale Melchert, staff attorney | $395.00 | 10.0 | $2,475.00 |
| | **Total:** | **10.0** | **$2,475.00** |

## II.     Law Related to Reasonable Expenses and Fees

Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure provides that if a motion to compel is granted, "the court <u>must</u>, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to the pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." (emphasis added). Further, if the motion is granted in part and denied in part, the court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C).

In arriving at a particular award, the court must independently analyze the reasonableness of requested attorney's fees. *See King v. Fleming*, 899 F.3d 1140, 1155 (10th Cir. 2018) (reviewing an award of fees as a Rule 11 sanction); *see also Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *Miller v. Paschall Trucklines, LLC*, 20cv303 GBW-SCY, 2021 WL 919868 at *1 (D.N.M. March 10, 2021) (applying the "reasonableness" standard in the context of Rule 37(a)(5)(A)). To determine whether requested fees are reasonable in this context, the court relies on the lodestar method, multiplying the hours counsel reasonably spent working on the motion to compel by a reasonable hourly rate. *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005). The

4

burden is on the applicant, in this case the plaintiff, to "prove and establish the reasonableness of each dollar, each hour, above zero." *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995) (internal quotation marks and citation omitted). The party requesting the fees must also provide evidence that supports the hours worked and the rates claimed. *Hensley*, 461 U.S. at 432.

Particularly relevant here, when calculating reasonable fees, courts must look "to the prevailing market rates in the relevant community." *Blum v Stenson*, 465 U.S. 886, 895 (1984); *see also Miller*, 2021 WL 919868 at *2. Where there is insufficient evidence concerning the prevailing market rates for attorney's fees, the court may "in its discretion, use other relevant factors, including its own knowledge, to establish the rate." *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1257 (10th Cir. 1998). Additionally, if a litigation is so unusual or requires such specific skill that only an out-of-state attorney might possess, the court may award rates outside the prevailing market rates. *Lippoldt v. Cole*, 468 F.3d 1204, 1225 (10th Cir. 2006). The applicant should keep "meticulous, contemporaneous, time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Case*, 157 F.3d at 1250. Regardless, the setting of a reasonable attorney rates is within the court's discretion. *Hensley*, 461 U.S. at 437; *see also Carter v. Sedgwick Cnty, Kan.*, 36 F.3d 952, 956 (10th Cir. 1994).

### III.    Analysis

In its response to Plaintiff's fee application, GPS raises three general categories of objections: (1) the fee award should be apportioned because Plaintiff's motion was granted in part and denied in part; (2) Plaintiff's claimed hourly rates are unreasonable under the circumstances; (3) the number of people who worked on the motion was excessive and the

number of hours billed was equally excessive and the work was insufficiently described. Doc. 348. The Court addresses each objection in turn.

### A. Apportionment of Fees

GPS initially argues that Plaintiff's requested fees should be apportioned because "Plaintiff's motion was granted only in part." Doc. 348 at 3. First and foremost, while GPS is technically correct that the Court narrowed the time frame for some discovery production, and did not deem certain privilege objections waived, the rulings in favor of Plaintiff were significant. Doc. 325. Indeed, one of the reasons that GPS finds itself in its current predicament is because it failed again and again to timely respond to Plaintiff's discovery requests. Regardless, the Tenth Circuit has repeatedly stated that "a district court may reduce a requested lodestar as one means to compensate for partial success and defense in hours claimed." *Valdez v. Macdonald*, 66 F.4th 796, 842 (10th Cir. 2023) (citing cases). As follows, the Court *is* reducing Plaintiff's requested fees and thereby is taking into account the minimal findings in favor of GPS as to Plaintiff's Motion to Compel.

### B. Reasonableness of the Claimed Hourly Rates

In its evaluation of the reasonable fees in this case, this Court must evaluate the hourly rates of the attorneys and the paralegal who worked on the motion. In doing so, this Court agrees with GPS that Plaintiff's requested hourly rates significantly exceed the prevailing market rates in New Mexico and should be reduced. Plaintiff did not provide any information for the Court to consider about the reasonable prevailing market rates in this district. Thus, the Court will use other factors, including its own knowledge, to establish the reasonable rates for this particular case. *Case*, 157 F.3d at 1257.

### 1. Plaintiff's Claimed Rates

Plaintiff provides two declarations in support of her claimed hourly rates. First, Ms. Barbara J. Hart provides a sworn declaration related to the work of the three individuals from Grant & Eisenhofer who worked on this case. Doc. 342-1 (Exh. A). Ms. Hart is and was at the time of the motion to compel, a director at Grant & Eisenhofer, located in New York City. *Id.* at 3. Ms. Hart notes that she has practiced law for approximately thirty-four years and was first licensed in Connecticut in 1992, and then in New York a year later. *Id.* She is currently a member and in good standing of numerous federal district and circuit courts throughout the country, as well as the Supreme Court. *Id.* Ms. Hart is experienced in complex civil litigation, with a particular emphasis in the area of civil rights. *Id.* at 4. Ms. Hart was and remains the attorney primarily responsible for this litigation. *Id.* Ms. Hart's hourly rate is $1375.00 per hour. *Id.*

Ms. Hart explains in her declaration that senior counsel Irene R. Lax, who no longer works at Grant & Eisenhofer, also worked on the subject motion to compel. *Id.* Ms. Hart explains that Ms. Lax also is experienced in complex civil litigation, with an emphasis in civil rights matters. *Id.* Although not included in her declaration, a brief Google search for Ms. Lax,[1] indicates that she is licensed to practice law in Delaware, New York, New Jersey, and Pennsylvania, as well as various federal district and circuit courts. She has been practicing law for approximately twelve years and her hourly rate as set forth by Ms. Hart was $700 per hour. *Id.*

---

[1] Ms. Lax's current biography is found at https://www.blockleviton.com/team/irene-lax (last visited June 26, 2024).

Finally, Ms. Hart explains in her declaration that paralegal Emma Spencer also worked on the motion to compel. Ms. Spencer has been a paralegal for six years and her hourly rate is $375 per hour. Doc. 342-1 at 4 (Exh. A).

In addition to the sworn declaration from Ms. Hart, Plaintiff also included a second declaration from attorney Dale Melchert. Doc. 342-2 (Exh. B). Mr. Melchert is a staff attorney at TLC and is the lead attorney working on this matter with the attorneys from Grant & Eisenhofer. *Id*. at 3. Mr. Melchert has been practicing law for approximately eight-and-a-half years and has worked on complex civil rights litigation with TLC since April 2018. *Id*. Mr. Melchert's hourly rate is $395 per hour. *Id*. at 5.

### 2.  Prevailing Rates in this District and Reasonable Rates for this Matter

This Court has previously recognized that New Mexico is a relatively poor state, with some of the lowest attorney hourly rates in the country. *XTO Energy, Inc. v. ATD, LLC,* 14cv01021, 2016 WL 1730171 at *32 (D.N.M. April 1, 2016) (observing that "[a] $400.00 rate would be close to the top, if not the top of the rates that the Court has approved or seen in New Mexico[.]"). That said, this Court's review of more recent cases continues to support a top hourly rate of at least $350 to $450 an hour. *Cf. Payne v. TriState Careflight*, 278 F. Supp. 3d 1276, 1298 (D.N.M. Sept. 30, 2017) (awarding an hourly rate of $350 an hour to a litigator with over 30 years of experience); *Baity v. Brad Hall & Associates*, No. 18cv183 SCY-JHR, 2019 WL 2436262, at *2 (D.N.M. June 11, 2019) (awarding a rate of $300 an hour to a litigator with 16 years of experience); *O Centro Espirita Beneficente Uniao Do Vegetal in U.S. v. Duke*, 343 F. Supp. 3d 1050, 1084–85 (D.N.M. October 25, 2018) (awarding a rate of $350 an hour to a litigator who demonstrated "unique" skills to the Albuquerque area despite only having eleven years of experience and remarking that such a rate is ordinarily reserved to lawyers with

experience in the range of fifteen to twenty years); *Griego v. United States*, No. 16cv475 JCH-SCY, 2018 WL 6727357, at *3 (D.N.M. Dec. 21, 2018) (awarding a rate of $350 an hour to a civil rights litigator with seventeen years of experience); *Griego v. Douglas*, No. 17cv244 KBM-JHR, 2019 WL 3006993, at *2–3 (D.N.M. July 10, 2019) (awarding a rate of $310 an hour to an attorney with twenty-two years of experience and $250 an hour to an attorney with almost ten years of experience); *Daniel & Max, LLC v. BAB Holding Co.*, No. 19cv173 GJF-GBW, 2019 WL 3936865, at *2 (D.N.M. Aug. 20, 2019) (awarding $450 an hour in a breach of contract case for an attorney who had clerked on the U.S. Supreme Court and had "over thirty years of complex federal experience as a shareholder of a major New Mexico law firm"); *Pruess v. Presbyterian Health Plan*, No. 19cv629 DHU-JFR, 2022 WL 796370, at *11 (D.N.M. March 16, 2022) (awarding a blended rate of $425 an hour given the attorneys' expertise and the complex nature of the case).

Given the varying ages of these cases, it is also fair to examine the added effect of inflation on rates that this Court has previously determined to be reasonable. For instance, a $400 per hour hourly rate in April of 2016, *see XTO Energy, Inc., supra,* after accounting for inflation over the following eight years, results in an hourly rate of $525 per hour in May 2024.[2] *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983) (the hourly rate "should reflect rates in effect at the time the fee is being established by the court, rather than those in effect at the time services were performed."). Similarly, an hourly rate of $450 per hour in August of 2019, *see Daniel & Max, LLC, supra*, results in an hourly rate, after inflation, of $550 per hour in May

---

[2] *See* Consumer Price Index Inflation Calculator, https://data.bls.gov/cgi-bin/cpicalc.pl (allowing for calculations through May of 2024) (last visited June 26, 2024).

2024. Finally, an hourly rate of $425 per hour in March 2022, *see Pruess, supra*, results in an hourly rate of $464 per hour in May 2024.

Thus, using the inflation-adjusted local rates, and accounting for years of experience and areas of expertise, the Court determines that reasonable hourly rates for the attorneys and paralegal who worked on this matter are as follows:

| Name, Title, Years of Experience | Reasonable Hourly Rate |
|---|---|
| Barbara Hart, director, 32 years | $500.00 |
| Irene Lax, senior counsel, 12 years | $325.00 |
| Emma Spencer, paralegal, 6 years | $175.00 |
| Dale Melcher, staff attorney, 8.5 years | $275.00 |

In using these rates, the Court acknowledges GPS's objections and agrees that the rates applicable in New York City are not applicable in the District of New Mexico. However, reviewing the experience of the individuals who have worked on this case (which GPS does not dispute), the hourly rates awarded by this Court in previous cases, and conservatively adjusting for inflation, leads the Court to the rates above, which are at, or are only slightly above, the rates suggested by GPS. Doc. 348 at 6.

**3.   The Particular Nature of this Case Does Not Require an Increase in Rates.**

Finally, even with a top local hourly rate between $460 and $550 per hour, this Court could still increase the rate based upon the unique and/or unusual nature of claims requiring attorneys with specific skills not necessarily found in New Mexico. *Lippoldt,* 468 F.3d at 1225. GPS, however, argues higher rates should not apply here because this case is not unique and involves "standard tort claims" like negligence, violations of the Rehabilitation Act, and intentional infliction of emotional distress. Doc. 348 at 6–7. The Court agrees with GPS. While the facts of this case are dense, and there is admittedly a large amount of discovery, Plaintiff's actual claims are not particularly complex or unique. Although relatively small, there are many

members of the New Mexico bar who could and would ably handle a similar case. Thus, there is no reason for this Court to award more than the reasonable local rates here.

### C. Reasonableness of the Expended Hours

Having determined the reasonable hourly rates, this Court must also assess the reasonable number of hours spent working on and drafting the subject motion to compel. This Court again agrees with GPS that a reduction of the claimed time is necessary.  Multiple factors can be considered in assessing whether an attorney's fees are "reasonable."  *See In re Mkt. Ctr. E. Retail Prop.*, 730 F.3d 1239, 1246–47 (10th Cir. 2013) (*citing Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). Courts are encouraged to scrutinize hours billed "much as a senior partner in a private firm would review reports of subordinate attorneys when billing clients." *Ramos*, 713 F.2d at 555. Finally, "[h]aving multiple attorneys write and revise on a motion is not inherently duplicative." *City of Las Cruces v. Lofts at Alameda, LLC*, No. 17cv809 JCH-GBW, 2022 WL 2753994, at *7 (D.N.M. July 14, 2022)(citing *Fox v. Pittsburgh State Univ.*, 258 F. Supp. 3d 1243, 1257 (D. Kan. 2017) ("As most attorneys know, the drafting process and editing process for legal writing are different.")).

GPS argues that both the number of individuals who billed and worked on this motion, as well as the claimed time is excessive. Doc. 348 at 7–8. GPS further asserts that the descriptions of work are not sufficiently detailed. *Id*. The Court agrees, in part, with GPS's assessment and addresses the reasonableness of each individual's work and billed time below.

Before assessing the individual work, it is important to note that the original motion to compel was eighteen pages in length.[3] Doc. 311. It included a lengthy recitation of the events that led up to the filing of the motion, *id*. at 4–8, with references to seventeen attached exhibits

---

[3] All page lengths are exclusive of signature pages and certificates of service.

including the discovery requests and correspondence between counsel, Docs. 311-1 (Exh. A) through Doc. 311-17 (Exh. Q). The reply brief was ten pages, Doc. 323, and included one additional exhibit, Doc. 323-1 (Exh. R).

As for the work and time spent by Plaintiff on the motion, the Court begins with Ms. Hart. Ms. Hart, as lead attorney on this case matter, spent 1.8 hours related to issues briefing the motion to compel and motion practice and strategy. Doc. 342-1 at 6. The Court finds this time to be reasonable.

Next, based on the billing dates, Mr. Melchert appears to have written the first draft of the motion to compel on November 20, 2023, spending six hours between reviewing discovery (1.0 hour), legal research (1.0 hour), and actual drafting of the motion (4.0 hours). Doc. 342-2 at 7. The Court finds this time to be reasonable given the discovery at issue and the length of the written motion.

Ms. Lax, as senior counsel working on this matter, spent two tenths of an hour making a phone call related to the motion to compel on November 1, 2023 and then spent 5.1 hours on December 4, 2023, "reviewing and revising" the motion to compel that Mr. Melchert drafted. Doc. 342-1 at 6. The Court finds this time to be reasonable. Paralegal Emma Spencer spent an hour on November 10, 2023, preparing "materials" for the motion to compel and another five hours preparing additional "materials" for attorney review on December 4, 2023. The Court finds Ms. Spencer's time to be reasonable.

Indeed, through this point in time, GPS appears to agree the hours worked were relatively reasonable. Doc. 348 at 7–8. However, on December 5, 2023, Ms. Spencer spent another four hours preparing yet more "materials" for the motion to compel and on December 6, 2023, Ms. Lax spent another 5.5 hours continuing to draft the motion to compel "including related research

and coordination with co[-]counsel," Doc. 342-1 at 6. To be clear, by December 4, 2023, nearly twenty hours had been expended between the attorneys and the paralegal on the subject motion to compel. Given the amount of total time previously spent and the continued lack of specificity in Ms. Spencer's description of "preparing materials" for another four additional hours, the Court agrees with GPS and finds Ms. Spencer's additional claimed time on December 5, 2023 to be unreasonable. Further, and again in light of the significant time already spent on the motion, the Court finds only two of the 5.5 hours billed by Ms. Lax on December 6, 2023 to be reasonable.

Mr. Melchert spent an additional half hour on December 5, 2023 reviewing the final draft of the motion to compel. Doc. 342-2 at 7. The Court finds this time to be reasonable.

Finally, the Court agrees with GPS and finds that the 1.5 hours billed by Ms. Lax on December 8, 2023, to "review and revise motion to compel GPS," *id*., is unreasonable and in obvious error given the fact that the motion was filed on December 6, 2023, two days before this billing entry.

As to the reply brief, Ms. Lax spent a tenth of hour on December 21, 2023, drafting an email to counsel for GPS. *Id*. On January 5, 2024, Ms. Lax then spent two hours reviewing the response to the motion to compel from GPS and drafting the reply. *Id*. The Court finds this time to be reasonable. On January 8, 2024, Ms. Lax spent a half hour on the phone with Mr. Melchert discussing the reply, and Mr. Melchert then spent three additional hours continuing to draft the reply. *Id*. The Court finds this time reasonable. On January 9, 2024, Ms. Lax spent two more hours continuing to draft the reply, and Mr. Melchert spent a half hour finalizing the reply on January 10, 2024. *Id*. The Court finds this time to be reasonable.

Notably, Ms. Spencer spent six additional hours, nearly as much total time as both attorneys, completing a "fact and cite check" and then finalizing the reply brief. GPS takes issue

with this time, particularly because Plaintiff did not correct Plaintiff's inaccurate claim in her briefing that GPS transported Ms. Hernandez from El Paso to Albuquerque. Doc. 348 at 7. The Court finds this time excessive and reduces Ms. Spencer's six hours of work on January 10, 2024 to two hours.

Ms. Lax spent 3.5 hours preparing for the motion to compel hearing and then arguing at the hearing on January 17, 2024. Doc. 342-1 at 6. The Court finds this time to be reasonable.

Finally, the Court again agrees with GPS finding that the three hours apparently billed by Ms. Lax on January 11, 2024 to "review and revise" the reply brief, Doc. 342-1 at 6, is unreasonable and again is obviously in error given the fact that the reply brief was filed on January 10, 2024, a day before this billing entry.

Thus, with the reduced hours as stated, the Court finds the reasonable number of hours for the work on Plaintiff's motion to compel, including the initial motion and the reply brief, to be as follows:

| Name and Title | Reasonable Hours Worked |
|---|---|
| Barbara Hart, director | 1.8 |
| Irene Lax, senior counsel | 15.4 |
| Emma Spencer, paralegal | 8.0 |
| Dale Melchert | 10.0 |
| **Total:** | **35.2 hours** |

### D.    The Final Award

Having determined the reasonable hourly rates for each of the attorneys and the paralegal who worked on this matter, as well as the reasonable number of hours worked, the Court awards Plaintiff's reasonable attorney's fees as follows:

14

| Name and Title | Hourly Rate | Claimed Hours Worked | Total |
|---|---|---|---|
| Barbara Hart, director | $500.00 | 1.8 | $900.00 |
| Irene Lax, senior counsel | $325.00 | 15.4 | $5,005.00 |
| Emma Spencer, paralegal | $175.00 | 8.0 | $1,400.00 |
| Dale Melchert, staff attorney | $275.00 | 10.0 | $2,750.00 |
| | **Total:** | **35.2 hours** | **$10,055.00** |

Finally, the Court declines GPS's invitation to award Plaintiff less than $3,000.00 and comparing this matter to the circumstances in *C&J Equipment Manufacturing Corporation v. Grady*, No. 23cv99 MV-SCY, 2024 WL 112598 (D.N.M. January 10, 2024). Doc. 348 at 8–9. A brief review of *C&J* reveals a very separate and factually different set of circumstances. In *C&J* it appears that the motion to compel at issue was relatively straight forward and the prevailing party only requested $2,916.64 in fees. *C&J Equipment Manufacturing Corporation,* 2024 WL 112598 at *1. Here, the attorneys spent multiple months attempting to obtain discovery from GPS and were thereafter required to spend significant time crafting the motion to compel. *C&J* is in no way analogous to the matter before this Court and is simply not persuasive.

IT IS THEREFORE ORDERED that Plaintiff's Application for Reasonable Attorney Fees as Awarded in the Order on Motion to Compel (Doc. 325) is GRANTED IN PART. Doc. 342. The Court awards Plaintiff's reasonable attorney's fees in the sum of $10,055.00. GPS is HEREBY ORDERED to tender this sum to Plaintiff in full within forty-five (45) days of this Order.

JENNIFER M. ROZZONI
United States Magistrate Judge

15