## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

**JOLENE K. YOUNGERS, AS THE PERSONAL**
**REPRESENTATIVE OF THE WRONGFUL**
**DEATH ESTATE OF ROXSANA HERNANDEZ**,

Plaintiff,

v.

No. 1:20-CV-00465-WJ-JMR

**LASALLE CORRECTIONS TRANSPORT LLC,**
**GLOBAL PRECISION SYSTEMS LLC,**
**TRANSCOR AMERICA LLC,**
**CORECIVIC INC.,**
**LASALLE MANAGEMENT COMPANY LLC,**
**LASALLE CORRECTIONS WEST LLC,**
**UNITED STATES OF AMERICA**,

Defendants,

and

**GLOBAL PRECISION SYSTEMS LLC**,

Third-Party Plaintiff,

v.

**ASSET PROTECTION AND SECURITIES SERVICES, L.P.**,

Third-Party Defendant,

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THIRD-PARTY DEFENDANT'S MOTION TO BIFURCATE AND STAY DISCOVERY

**THIS MATTER** comes before the Court on Third-Party Defendant Asset Protection and

Security Services' ("APSS") Motion to Bifurcate and Stay Discovery. *See* **Doc. 390**. Having

considered the parties' briefing and the applicable law, the Court finds the apportionment of fault

claim is so intertwined with the principal factual and legal allegations that it cannot be bifurcated,

whereas the indemnity and contribution claim is appropriately severable. Accordingly, the Motion is **GRANTED in part** and **DENIED in part**.

**BACKGROUND**

Roxsana Hernandez, an HIV-positive[1] asylum seeker from Honduras, arrived at San Ysidro Port-of-Entry, California on May 9, 2018. **Doc 1 at ¶ 36**. Tragically, Ms. Hernandez succumbed to serious medical conditions and was pronounced dead in Lovelace Medical Center, Albuquerque, New Mexico on May 25, 2018.[2] ***Id.* at ¶¶ 36 & 120**. From May 9–May 25, 2018, Ms. Hernandez was confined subject to the civil detention authority of the Immigration and Nationality Act, 8 U.S.C. §§ 1001 *et seq.* (***Id.* at ¶ 35**). During this period, Ms. Hernandez was in the custody of Department of Homeland Security agency components and their private contractors. ***Id.* at ¶ 37**. According to Immigration and Customs Enforcement ("ICE") policy, Ms. Hernandez was transported by different contractors from San Ysidro, CA to multiple locations (***Id.* at ¶ 41**),[3] including a portion of the journey from El Paso, Texas to Albuquerque, New Mexico. ***Id.* at 11–**

---

[1] From the Complaint, it is unclear when exactly Ms. Hernandez was identified as being HIV-positive. A provider at Cibola County Correctional Center ("CCCC") diagnosed Ms. Hernandez with untreated HIV on May 17, 2018. **Doc. 1 at ¶ 110**. Cibola General Hospital diagnosed her with HIV infection later the same day (***Id.* at ¶ 115**), and Plaintiff alleges that Ms. Hernandez's initial DHS paperwork reflected "untreated HIV," presumably identified during to her entry into the United States between May 9–May 14, 2018. ***Id.* at ¶¶ 49 & 149**.

[2] Ms. Hernandez was diagnosed by multiple providers as suffering from dehydration, starvation, extreme weight loss, muscle wasting, untreated HIV, fever, cough (**Doc. 1 at ¶ 110**), septic shock, nodular pulmonary disease, lymphadenopathy, anemia, thrombocytopenia (***Id.* at ¶ 115**), low blood pressure (***Id.* at ¶ 117**), and Multi-Centric Castleman's Disease (***Id.* at ¶ 119**).

[3] Ms. Hernandez presented herself to U.S. Customs and Border Protection at San Ysidro, California on May 9, 2018 (**Doc. 1 at ¶¶ 36–37**). From May 14 to May 17, 2018, she was transported by DHS contractors (***Id.* at ¶ 41**) from San Ysidro, CA to Calexico, CA and then San Luis, AZ by MTC (***Id.* at ¶¶ 47–48**); from there to Mesa, AZ airport and then flown to El Paso, TX by LaSalle (***Id.* at ¶ 67**); once landing, from there to the El Paso Service Processing Center by ICE (***Id.* at ¶ 72**); from El Paso, TX to an ICE facility in Albuquerque, NM by GPS (***Id.* at ¶ 76**); from there to CCCC, NM by TransCor (***Id.* at ¶ 92**); from there to Cibola General Hospital, Grants, NM by CoreCivic (***Id.* at ¶¶ 113–14**); and then from Cibola General to Lovelace Medical Center in Albuquerque, NM (***Id.* at 115–17**).

2

**12**. Defendant Global Precision Systems ("GPS") was contracted by ICE for this portion of the transportation. *Id.* **at 11, ¶¶ 25–26**.

On January 15, 2019, the First Judicial District Court of New Mexico appointed Plaintiff Joleen K. Youngers the Personal Representative of the Wrongful Death Estate of Roxsana Hernandez pursuant to NMSA 1978 § 41-2-3 (2001). *Id.* **at ¶ 12**. Plaintiff alleges that Defendants ignored Ms. Hernandez's requests for reasonable accommodations to mitigate her serious medical issues, which contributed and led to her death. *Id.* **at ¶¶ 3–4**.

On May 13, 2020, Plaintiff filed a Complaint (**Doc. 1**) alleging "unconscionably negligent" conduct by numerous Defendants during transportation of Roxsana Hernandez across the Southwest United States. Two Amended Complaints (**Docs. 9 & 111**) have been subsequently filed, with a total of seven named Defendants—but the factual bases for the allegations remain the same.

Then, in April 2021, the Court granted Defendant Global Precision Systems, LLC's ("GPS") Motion for Leave to file a Third-Party Complaint, naming APSS as a Third-Party Defendant. *See* **Docs. 55,  55-1, 68, 69, 71**. GPS's claims against APSS are (1) apportionment of fault, and (2) indemnity and contribution regarding APSS's subcontracted transportation of Ms. Hernandez from El Paso, Texas, to Albuquerque, New Mexico. **Doc. 71**.

Three years later, in May 2024, APSS requested that the Court (i) bifurcate GPS's third-party claims from Plaintiff Younger's primary claims and (ii) stay discovery (**Doc. 390 at 1–2**).

Both GPS (**Doc. 400**) and Plaintiff Youngers (**Doc. 403**) filed Responses to the Motion. APSS also filed a Reply (**Doc. 409**).

After reviewing the respective filings, the Court notes that the parties are substantively in agreement. First, the parties agree to bifurcate the indemnity and contribution claim (Count 2).

They also acknowledge that the apportionment of fault claim (Count 1) is germane to the original proceedings and understand discovery must be related to the appropriate proceedings.

## LEGAL STANDARD

District courts have broad discretion in determining whether to bifurcate issues or parties for trial "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b); *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1285 (10th Cir. 1999). A trial may be bifurcated if the interests of judicial expedition and economy "favor separation of issues and the issues are clearly separable." *Angelo v. Armstrong World Indus. Inc.*, 11 F.3d 957, 964 (10th Cir. 1993). Bifurcation is often in the interest of efficiency and judicial economy when the resolution of one claim may obviate the need to adjudicate one or more other claims. *See Mandeville v. Quinstar Corp.*, 109 F. App'x 191, 194 (10th Cir. 2004) (unpublished). "Regardless of efficiency and separability, however, bifurcation is an abuse of discretion if it is unfair or prejudicial to a party." *Angelo*, 11 F.3d at 964. In sum, the Court must consider three factors when ruling on a motion to bifurcate: (1) whether bifurcation promotes "convenience and economy," (2) whether the claims to be bifurcated are truly separable, and (3) whether bifurcation would be unfair or prejudicial to one of the parties. *Id*. at 964–65.

Bifurcation under Rule 42(b) should not be ordered routinely unless it is clearly necessary. *See Angelo*, 11 F.3d at 964 (citing Fed. R. Evid. [sic] 42(b) advisory committee n.—1966 amend.); *Marshall v. Overhead Door Co.*, 131 F.R.D. 94, 98 (E.D. Pa. 1990). The party seeking bifurcation bears the burden of proving that bifurcation is proper "in light of the general principle that a single trial tends to lessen the delay, expense, and inconvenience." *Belisle v. BNSF Ry. Co.*, 697 F. Supp. 2d 1233, 1250 (D. Kan. 2010). Bifurcation under Rule 42(b) is inappropriate where evidence to be presented against the parties is inextricably linked. *Martinez v. State Farm Mut. Auto. Ins. Co.*,

No. 16-cv-01029, 2017 U.S. Dist. LEXIS 44277 at *10 (D.N.M. Mar. 27, 2017) (citing *FDIC v. Refco Grp., Ltd.*, 184 F.R.D. 623, 629 (D. Colo. 1999) (finding that bifurcation would have no effect on evidence offered at trial because claims and evidence were fundamentally intertwined)).

## DISCUSSION

### I. Third-Party Claim of Indemnity and Contribution (Count 2)

The Court first notes that both: (1) the third-parties (GPS and APSS), and (2) the original Plaintiff (Youngers) functionally agree that bifurcation is proper for Third-Party Plaintiff GPS's indemnification and contribution claim (Count 2) against Third-Party Defendant APSS.[4] Plaintiff Youngers only opposes the stay of discovery (**Doc. 403 at 3–4**). This opposition is based on a concern that evidence of APSS's transportation services and contractual relationship with GPS are "necessary to establish her claims against GPS, and joint and several liability against all Defendants." *Id.* at 4.

The Court recognizes the potential evidentiary overlap as to the apportionment of fault and indemnity/contribution subject matter. To the extent the parties disagree on admissibility of specific evidence, respective motions *in limine*, stipulations, or otherwise, there are adequate procedures to preclude any irrelevant or inadmissible evidence. The Federal Rules of Evidence will govern admission of relevant admissible evidence related to the claims at issue without prejudicing parties through over—or under—inclusion. *See* Fed. R. Evid. 103 & 105.

---

[4] Third-Party Plaintiff "GPS does not oppose bifurcation of its Indemnity and Contribution claims asserted against [APSS] under Count II . . . and a stay of discovery related to such claims." **Doc. 400 at ¶ 2**. Plaintiff Youngers "does not oppose [APSS]'s request to bifurcate . . . claims of indemnification and contribution" but does qualify concerns about the phrase "stay discovery." **Doc. 403 at 1–2, n.1**. Ultimately, Plaintiff Youngers "has no opposition to a stay of discovery related solely to GPS's and [APSS]'s contract dispute" and requests the Court allow adequate discovery into the underlying negligence claims and deposition of APSS in the same. *Id.* at 2. The Court views Plaintiff's response in agreement with staying discovery regarding the Indemnification and Contribution count.

In applying Fed. R. Civ. P. 42(b) factors to this count, the Court reasons that bifurcation is in the best interest of judicial convenience and economy, the issues are truly separable as a matter of law, and bifurcation is not unfair. Adjudication of contract and possible insurance disputes can take place after a jury has determined liability. After this aspect is concluded, then apportionment is amenable to all parties. This approach avoids concerns about prejudice from immaterial evidence while also protecting the parties from litigating moot issues.

Therefore, the Court **GRANTS** the motion to bifurcate Third-Party Plaintiff's indemnification and contribution claim in Count 2.

**II. Third-Party Claim of Apportionment of Fault (Count 1)**

GPS's Third-Party Complaint against APSS claims that "[p]ursuant to Fed. R. Civ. P. 14(a)(1), [APSS] is liable to [GPS] for all or part of the claims against GPS." **Doc. 71 at ¶ 4**.[5] GPS's apportionment of fault claim asserts that: (1) GPS subcontracted "certain services" with APSS, (2) APSS transported Ms. Hernandez pursuant to this contract, and (3) GPS's fault liability in the underlying proceedings turns on "alleged acts and omissions committed by the employees of Asset Protection." *Id.* **at ¶¶ 7–10**. APSS does not dispute "that [APSS] transported [Ms. Hernandez] from the El Paso facility to Albuquerque" (**Doc. 390 at 5**). APSS correctly states in their Reply that New Mexico's pure comparative law will apply, and therefore "Defendant GPS will only be responsible for its own independent negligence." **Doc. 409 at 4**. APSS agrees that "[i]f there is evidence presented at trial that [APSS] should share any liability for this case, [APSS] may be included on the jury verdict form." *Id*.

Given this recitation, the Court is confused about why this Count should be bifurcated? All parties recognize that APSS was physically and contractually involved during part of the events in

---

[5] "A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1).

question. Respective liability apportionment cannot be "clearly separable" with claims that are so intertwined.[6] Plaintiff Youngers asserts, "to establish liability against GPS, Plaintiff will necessarily have to introduce evidence at trial of [APSS]'s transport of [Ms. Hernandez] and [APSS]'s failures with respect to same, as well as [APSS]'s contractual relationship with GPS." **Doc. 403 at 4**. Likewise, GPS asserts that "[a]t any trial of the claims asserted by the Plaintiff in this matter ('underlying case'), GPS (and other parties) will present evidence about APSS' role in the transport of [Ms.] Hernandez." **Doc. 400 at ¶ 3**. And finally, APSS admits their "level of involvement in this matter is not at issue. It is undisputed that [APSS] transported Plaintiff from the El Paso facility to Albuquerque." **Doc. 390 at 5**.

Here, Plaintiff's entire Complaint is predicated on determining who was involved in assuming custody of Ms. Hernandez, finding the total sustained damages, and then adjudicating comparative fault attributable to associated entities. GPS decided to exercise its right to "serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). This very process requires apportionment of fault, so bifurcating or staying discovery to these ends would practically remove a whole chapter from the story at trial.

Nevertheless, APSS's Reply asks the Court to stay "discovery involving [APSS], pending resolution of Plaintiff's claims by the jury," arguing that Plaintiff should have originally named

---

[6] District courts in this Circuit have consistently used the *Angelo* standard to deny bifurcation with "intertwined" claims. *See, e.g.*, *Windsor Indus., Inc. v. Pro-Team, Inc.*, 87 F. Supp. 2d 1129, 1132 (D. Colo. 2000); *Montes v. State Farm Fire & Cas. Co.*, No. 22-cv-0536, 2023 U.S. Dist. LEXIS 26326 at *9 (D.N.M. Feb. 16, 2023); *Frazier v. GPI KS-SH, Inc.*, No. 19-cv-2020, 2020 U.S. Dist. LEXIS 166395 at *10–11 (D. Kan. Sept. 11, 2020).

them as a party and offering other procedural considerations.[7] Ultimately, APSS argues they should not be a third-party because they don't need to be. The Court disagrees.

Rule 42(b) requires the Court to consider if bifurcation supports judicial efficiency, separability of issues, and prejudice. Fed. R. Civ. P. 42(a); *Angelo*, 11 F.3d at 964–65; *cf. Palace Expl. Co. v. Petroleum Dev. Co*., 316 F.3d 1110, 1116, 1119 (10th Cir. 2003) (affirming district court ruling that bifurcation was proper when evidence of legal damages for negligence was irrelevant to original breach of contract claims, and therefore more efficiently dealt with separately). As applied here, both judicial efficiency and convenience undermine the need to bifurcate. On one hand, APSS argues that bifurcation would clarify the issues, lessen jury confusion, and "save judicial resources before, during, and after trial." **Doc. 390 at 4–6**. On the other hand, Plaintiff Youngers and GPS correctly point out that a separate trial for assessment of APSS's comparative fault is duplicative and wastes time. **Doc. 400 at ¶ 2; Doc. 403 at 4**. Under the requested scenario, much of the same key witness testimony, evidence, discovery, pretrial proceedings, and jury trials would have to occur twice. Additionally, if the first jury were to apportion some fault to APSS on the jury verdict form—acknowledged by APSS as a real possibility—a second jury could provide an inconsistent verdict and assign GPS or APSS a different or no percentage of liability. Both the known and unknown consequences of a second trial for apportionment of fault weigh heavily against bifurcation when considering judicial efficiency and convenience.

Regarding the separability of the original Complaint from GPS's Third-Party Complaint against APSS, the same question of law and fact exists: who exactly was negligent? As mentioned

---

[7] APSS notes that Plaintiff still has procedural mechanisms for discovery (subpoenas/depositions), filed their Response (**Doc. 403**) a week late in violation of local and federal rules, and that apportionment of fault is not an independent claim. **Doc. 409 at 2–4**. These considerations are noted, but respectively do not preempt the Court's discretionary authority to decide bifurcation under Fed. R. Civ. P. 42(b) factors.

above, the legal question of whether GPS was negligent will require factual investigation into the same situation that underlies the Plaintiff's case. Although a subsequent contractual or insurance dispute could be legally and factually distinct, the central question surrounding the custodial transportation of Ms. Hernandez is intertwined between GPS and APSS for purposes of apportionment of fault.

The final factor is prejudice against relevant parties. Although the parties bring up procedural discovery contentions,[8] this ultimately turns on whether a party would be stymied by bifurcating and staying discovery on APSS's liability in the matter. The Court is convinced that Plaintiff Youngers is correct (*i.e.*, that the parties in opposition to APSS would be prejudiced by bifurcating this issue). During the El Paso to Albuquerque travel, only APSS had custody of Ms. Hernandez. Both Plaintiff Youngers and GPS need to present evidence of APSS's role to respond to the original claims against GPS during this same trip. Prohibiting parties from presenting evidence about APSS would prejudice them and likely result in the failure of the original claim against GPS.

Fortunately, all parties appear to understand APSS's involvement is germane to the apportionment of fault, so there should be no surprise that the Rule 42(b) factors do not support bifurcation as to this count. Again, bifurcation here would be inefficient, non-separable, and prejudicial to parties. Therefore, the Court **DENIES** the motion to bifurcate Third-Party Plaintiff's apportionment of fault claim.

---

[8] Third-Party Defendant APSS claims no prejudice will result because APSS has not been "meaningfully engaged in discovery" since June 2023 (**Doc. 390 at 7**), and that the Plaintiff is not prejudiced because Plaintiff failed to exercise the ability to name APSS as an original co-defendant (**Doc. 409 at 3**). Regardless of this or Plaintiff's Response on the same (**Doc. 403 at 3**), the Court will not deviate from traditional discovery rights and processes simply because a party could participate more "meaningfully" in discovery. Also, Defendant has the right—under Rule 14—to name a third-party defendant for part or all of the claim against that Defendant, irrespective of who the original Plaintiff chose to sue.

\* \* \* \* \*

The Court, having found reasonable grounds to bifurcate the distinguishable indemnity and contribution claim—but not for the apportionment of fault claim—therefore **GRANTS in part** and **DENIES in part** Third-Party Defendant's Motion to Bifurcate and Stay Discovery.

   **IT IS SO ORDERED**.


/s/ _____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE