IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

Joleen K. Youngers,
as the Personal Representative of the
Wrongful Death Estate of Roxsana
Hernandez,

      Plaintiff,

vs.                                                                                         Cause No. 1:20-cv-00465-WJ-JMR

LaSalle Corrections Transport LLC,
LaSalle Corrections West LLC,
LaSalle Management Company LLC
Global Precision Systems LLC,
TransCor America LLC,
CoreCivic, Inc., and
United States of America,

      Defendants,

and

Global Precision Systems, LLC,
Third-Party Plaintiff,

vs.

Asset Protection and Security Services, L.P.,
Third-Party Defendant.

**PLAINTIFF'S MOTION *IN LIMINE* TO PRECLUDE
IMPROPER EXPERT TESTIMONY BY HARISH MOORJANI**

Pursuant to Federal Rules of Evidence 702 and 403, Plaintiff Joleen K. Youngers, as Personal Representative of the Wrongful Death Estate of Roxsana Hernandez ("Plaintiff"), respectfully moves *in limine* to preclude Harish Moorjani, M.D., from providing improper expert testimony regarding the treatment of Multicentric Castleman disease ("MCD"). In support of her motion (the "Motion"), Plaintiff states as follows:

1

## I.  RELEVANT FACTUAL BACKGROUND

This action involves the heinous and willfully negligent failures of the defendants in this case, including CoreCivic, Inc. ("CoreCivic") and TransCor America LLC ("TransCor," and with CoreCivic, "Defendants"), to provide lawful and humane care to Roxsana Hernandez ("Roxsana") while in their custody and care. Defendants' failures to comply with their obligations and duty of care needlessly delayed the urgent treatment Roxsana required—and led to her death just one week after she left CoreCivic's Cibola County Correctional Center in Milan, New Mexico ("Cibola").

The circumstances of Roxsana's entry into the United States to seek asylum and journey pursuant to the federal government's Streamline Transfer Process ("STP") are well known to this Court and will not be repeated here. As relevant to the Defendants, TransCor transported Roxsana on May 16, 2018 from an ICE facility in Albuquerque, New Mexico to Cibola, her final destination on the STP. By this point on her STP journey, she had lost so much weight that she now weighed only 89 pounds and was obviously ill, emaciated, and dehydrated. After forcing her to lay on the floor of the medical wing for many hours, CoreCivic medical personnel finally screened Roxsana 11 hours after her arrival—and only then realized her emergent medical condition. During her deposition, the treating physician at Cibola, Dr. Wendy Birdsong, cried when recalling Roxsana's severe emaciation and malnourished condition.

CoreCivic then transferred Roxsana from Cibola to Cibola General Hospital. She was now in septic shock, which forced Cibola General Hospital to airlift Roxsana 80 miles away to the Lovelace Medical Center in Albuquerque, near where TransCor first took custody of Roxsana. Roxsana died eight days later due to complications from Multicentric Castleman disease ("MCD"). CoreCivic maintained painful wrist restraints on Roxsana during her hospitalizations despite the obvious lack of flight risk.

## II. DEFENDANTS' IMPERMISSIBLY SPECULATIVE AND DUPLICATIVE EXPERT OPINIONS

Plaintiff served her Rule 26(a)(2) expert disclosures, which included, *inter alia*, the reports of Dr. David Fajgenbaum and Dr. Jeffrey Keller, on June 29, 2023. *See* Dkt. 259. As relevant here, Dr. Fajgenbaum[1] opined that Roxsana died of MCD but would have had a greater than 50% chance of survival had she received timely and adequate medical interventions during the STP.

In response to Plaintiff's expert disclosures and reports, Defendants served their Rule 26(a)(2) expert disclosures on February 2, 2024, *see* Dkt. 347, which included the report of Dr. Moorjani (the "Report," a copy of which is attached as Exhibit A). Defendants hired Moorjani "as an infectious disease expert, as well as a correctional medicine expert." Expert Disclosures (attached as Exhibit B), p. 3. Dr. Moorjani agrees with Dr. Fajgenbaum that Roxsana's "initial symptoms and her eventual cause of death were attributable to MCD, not HIV/AIDS," *see* Report at 16, but disagrees with Dr. Fajgenbaum on the treatment of MCD. Specifically, Dr. Moorjani adopts the opinion of defense expert Dr. Chad Zawitz[2] in opposition to Dr. Fajgenbaum by opining that had Roxsana "received 'timely medical care at any time after her entrance into the United States on May 9, 2018, her MCD could have been controlled with readily available and known treatment protocols, including rituximab.'" *Id*. at 17 (quoting Dr. Zawitz).

Defendants filed a supplemental disclosure with a revised report from Dr. Moorjani on March 14, 2024 (the "Revised Report," the relevant portion of which is attached as Exhibit C). *See*

---

[1] Dr. Fajgenbaum, an Assistant Professor of Medicine in Translational Medicine & Human Genetics at the University of Pennsylvania, is Plaintiff's expert on, *inter alia*, MCD and its treatment.

[2] Dr. Zawitz, an infectious diseases and internal medicine doctor, is an expert witness retained by the LaSalle defendants.

Dkt. 367. During his deposition, Dr. Moorjani conceded that he submitted the Revised Report because "it was pointed out to me … that I had made a mistake" regarding the name of a drug used to treat MCD. Moorjani dep. tr., at 29:20-21 (a copy of the transcript with the relevant pages is attached as Exhibit D). Specifically, Dr. Moorjani "had put in Rituximab instead of Biktarvy in the report." *Id*. at 29:18-19; *see also* Ex. C, at 18 n.6.

### III.   ARGUMENT

#### a.  Legal Standard

The point of expert testimony is to help jurors understand complex issues of fact through the witness's expertise and experience. This is made plain by Federal Rule of Evidence 702, which incorporates *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and its progeny in setting forth the basis for when a "witness [] is qualified as an expert by knowledge, skill, experience, training, or education …." Fed. R. Evid. 702. The factors to be considered by the Court, as set forth in Rule 702, are:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The U.S. Supreme Court has confirmed that the standards for expert testimony admissibility, as set forth in Rule 702 and *Daubert*, "appl[y] not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

A testifying expert must "employ the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. In the Tenth Circuit, the movant

4

"must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." *Truck Ins. Exchange v. MagneTek, Inc.*, 360 F.3d 1206, 1210 (10th Cir. 2004).

"To be reliable under *Daubert*, an expert's scientific testimony must be based on scientific knowledge, which 'implies a grounding in the methods and procedures of science'" based on actual knowledge, not "subjective belief or unsupported speculation.'" *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (quoting *Daubert*, 509 U.S. at 590, 113 S.Ct. 2786); *see also Wells v. Kawasaki Motors Corp.*, 854 F. App'x 242, 246 (10th Cir. 2021) (expert testimony "must have a reliable basis in the knowledge and experience of the relevant discipline and be based on actual knowledge not subjective belief or unsupported speculation"). Only by ensuring that the expert's testimony has a sound basis in scientific methods and "actual knowledge" can the court fulfill its "gatekeeper obligation to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *Dodge*, 328 F.3d at 1222 (quoting *Daubert*, 509 U.S. at 589, 113 S.Ct. 2786).

A District Court's discretion to strike expert testimony includes testimony which is duplicative of other experts. *See Nalder v. West Park Hosp.*, 254 F.3d 1168, 1174 (10th Cir. 2001) (affirming order striking two expert witnesses which would present "unnecessary duplication of expert testimony"). Excluding duplicative expert testimony is grounded in Rule 403 of the Federal Rules of Evidence, which directs courts to exclude evidence, "including expert witnesses, where there is a danger of 'unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *United States v. Hamilton*, No. 10–CV–231–J, 2014 WL 12814334, at *4 (D. Wyo. Mar. 10, 2014) (quoting Fed. R. Evid. 403).  To prevent unfair prejudice, "an expert witness can never vouch

for the credibility of another witness because this would impermissibly encroach upon the jury's vital and exclusive function to make credibility determinations and fail to assist the trier of fact as required by Rule 702." *United States v. Jones*, 74 F.4th 1065, 1068 (10th Cir. 2023) (quoting *United States v. Charley*, 189 F.3d 1251, 1267 (10th Cir. 1999) (en banc) (internal quotations omitted)).

### b. Dr. Moorjani's opinions about MCD treatment are speculative because they lack a basis in specialized knowledge

Dr. Moorjani is not qualified to provide expert testimony about MCD or its treatment. In his Report, Dr. Moorjani "adopt[s] Dr. Zawitz's opinions rebutting Dr. Fajgenbaum's opinions" about the treatment of MCD, specifically Dr. Fajgenbaum's opinion that had Roxsana "received timely medical care at any time after her entrance into the United States on May 9, 2018, her MCD could have been controlled with readily available and known treatment protocols, including rituximab." Report, at 17. Dr. Moorjani also disagrees with Dr. Fajgenbaum—again by adopting the opinion of Dr. Zawitz—that MCD is "highly treatable" and that "it is impossible to opine that had Ms. Hernandez received 'timely' care, she would have lived." *Id*. at 18. He also opines on the treatment of MCD with rituximab, stating that "[e]ven if [Roxsana] were started on rituximab prior to her death, it takes months for the immune system to rebuild itself, and there is no guarantee that treatment would have immediately been effective, no matter what date it was started." *Id*.

Dr. Moorjani's purported expert testimony about MCD is, in violation of Rule 702, not based on sufficient specialized knowledge or sufficient facts and data. During his deposition, Dr. Moorjani conceded that he has treated only three patients with MCD since his fellowship 30 years ago. Moorjani dep. tr., 42:21-23. None were treated with Rituximab. *Id*. at 135:2-5. Dr. Moorjani also opined that rituximab was not "readily available" even though it has several

indications and could have been shipped. *See* "Rituximab Injection," The Cleveland Clinic (last visited Dec. 24, 2024; available at https://my.clevelandclinic.org/health/drugs/19712-rituximab-injection) (rituximab "treats non-Hodgkin lymphoma, chronic lymphocytic leukemia, rheumatoid arthritis, granulomatosis with polyangiitis, microscopic polyangiitis and pemphigus vulgaris").

Dr. Moorjani also clarified that he submitted the Revised Report due to his own "oversight" in failing to name rituximab as a treatment for MCD (instead naming Biktarvy in his Report). *Id*. at 29:15-21. He conceded that he "stand[s] corrected on the actual immune system part that the [rituximab] works on," explaining that he's "not a hematologist." *Id*. at 133:8-11. He also confirmed that he made the correction only after "it was pointed out to me … that I had made a mistake" by legal counsel for CoreCivic and TransCor. *Id*. at 29:20-30:14.

Given Dr. Moorjani's admitted lack of experience with treating MCD patients and his evident lack of familiarity with rituximab, his expert opinions on these issues cannot be considered to be based on specialized knowledge or sufficient facts and data, and will therefore not assist the trier of fact. As such, his opinions about MCD and its treatment should be excluded as "unscientific speculation offered by a genuine scientist." *Dodge*, 328 F.3d at 1222.

### c. Dr. Moorjani's opinions about MCD are duplicative of Dr. Zawitz

In addition to lacking of specialized knowledge and sufficient facts, Dr. Moorjani's opinions about MCD and rituximab are improper expert testimony because they merely echo the opinions of Dr. Zawitz. To a startling degree, Dr. Moorjani's Report adopts wholesale the opinions of Dr. Zawitz. *See* Report at 9 ("I unequivocally agree with Dr. Zawitz's opinions …."), 10 ("I agree with Dr. Zawitz's in-depth analysis …."), 12 ("As Dr. Zawitz stated …."), 16 ("I adopt and incorporate Dr. Zawitz's rebuttal of Dr. Fajgenbaum's opinions in his expert report."); 16 (" I echo

Dr. Zawitz's observations …."), 19 ("I agree with and adopt Dr. Zawitz's opinions rebutting the opinions of Dr. Keller.").

Dr. Moorjani's repeated endorsements of Dr. Zawitz and his "in-depth" opinions impermissibly vouches for the credibility of another defense expert. *See Jones*, 74 F.4th at 1068. In fact, at no point in the Report does Dr. Moorjani disagree with Dr. Zawitz, calling into question the objectivity of his own findings. As such, Dr. Moorjani's opinions about MCD and its treatment will not assist the trier of fact because they are merely duplicative of Dr. Zawitz's opinions. *See Nalder*, 254 F.3d at 1174.

## IV.  CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Court grant Plaintiff's Motion in its entirety, prohibit Defendants from offering Dr. Moorjani to testify as an expert witness concerning MCD or its treatments, and exclude from evidence his report and revised report, consistent with the enclosed proposed Order.

Dated: December 24, 2023

Respectfully submitted,

/s/ *Ken S. Massey*

Ken Massey, *Pro Hac Vice*
Cynthia B. Morgan, *Pro Hac Vice*
Grant & Eisenhofer P.A.
123 Justison Street, 7th Floor
Wilmington, DE 19801
Phone: (302) 622-7000
kmassey@gelaw.com
Cmorgan@gelaw.com

Dale Melchert, *Pro Hac Vice*
Lynly Egyes, *Pro Hac Vice*
Transgender Law Center P.O. Box 70976 Oakland, CA 94612
dale@transgenderlawcenter.org
lynly@transgenderlawcenter.org

Daniel Yohalem
Attorney at Law
1121 Paseo de Peralta
Santa Fe, New Mexico 87501
505-690-2193
Fax 505-989-4844
daniel.yohalem@gmail.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of December, 2024, undersigned counsel on behalf of Plaintiff Joleen Youngers, filed the foregoing document through the CM/ECF system, which caused all parties of record to be served by electronic means.

*/s/ Ken. S. Massey*
Ken S. Massey
